GAL001901

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

United States Courts
Southern ... ... ... as
FiLED

**NOV 0 4 2013**

David J. Bradley, Clerk of Court

PATRICIA SUE ADKINS,

JENNIFER GALINDO, and

FABRIENNE ENGLISH,

on behalf of themselves and all others

similarly situated,

    **Plaintiffs**

v.

APPLE, INC.,

APPLECARE SERVICE COMPANY, INC.,

and APPLE CSC, INC.

    **Defendants**

NO. 3:13CV402

## PLAINTIFF'S ORIGINAL COMPLAINT
## <u>AND ORIGINAL CLASS ACTION COMPLAINT</u>

**TO THE HONORABLE DISTRICT COURT:**

    COME NOW the plaintiffs, PATRICIA SUE ADKINS (hereinafter "Adkins"), JENNIFER GALINDO (hereinafter "Galindo"), and FABRIENNE ENGLISH (hereinafter "English") individually and as representative plaintiffs for

1

a class consisting of themselves and all others similarly situated, and pray for any and all relief authorized by law for themselves and for all others similarly situated, for reasons set forth herein.

## I.  NATURE OF ACTION

1.      The Defendants in this cause, Apple, Inc. (hereinafter "Apple"), and Apple subsidiaries or affiliated companies, doing business as APPLECARE SERVICE COMPANY, INC., and APPLE CSC, INC., engaged in a fraudulent and unlawful scheme to sell electronic devices, including, but not limited to, computers, cellular telephones, iPod devices and iPad devices, and to sell warranties for those devices, by selling said devices and warranties without revealing to consumers, such as plaintiffs Adkins, Galindo, and English, prior to the sale of the devices and the warranties, that Apple's warranty plans permit Apple to make repairs to malfunctioning or damaged devices with used or reconditioned parts, or to replace new devices with used or reconditioned devices, and that it was the consistent policy of Apple and the other Defendants to utilize used or refurbished devices and parts for those purposes. The Defendants, through their management, agents and employees, knew that many consumers, such as Adkins, Galindo, and English, would be more likely to purchase an electronic device if the consumer could purchase an Apple warranty which would provide a replacement unit or replacement parts which were new, not used or refurbished.

2.     As a result of the aforesaid scheme,  plaintiffs Adkins, Galindo, and English, and similarly situated consumers in the United States, purchased Apple devices and warranties, rather than purchasing competing devices and warranties or foregoing such purchases, unjustly enriching the named defendants, impairing the competitive marketplace, and causing economic harm to the purchasers through unfair competition. Adkins, Galindo, and English were individually harmed by economic loss, and the Defendants were unjustly enriched at the expense of Adkins, Galindo, and English, when they were induced by the Defendants to purchase goods, namely electronic devices, and when they were induced to purchase a service, namely warranties sold and administered by the Defendants, which they otherwise would not have purchased, if the true circumstances of how the Defendants would administer warranty service had been revealed. Furthermore, plaintiff English was provided with a replacement electronic device pursuant to a warranty which was neither new nor the functionally equivalent of a new device, despite affirmative representations by Apple and its agents to the contrary, and suffered economic loss by receiving an inferior replacement device.

3.     The fraudulent and unlawful scheme devised and carried out by the Defendants, as described above, was carried out as a routine practice, affecting numerous consumers.  These consumers, within the Southern District of Texas and elsewhere, are  similarly  situated  to  Adkins,  Galindo,  and  English.     These

consumers were harmed in the same manner that Adkins, Galindo, and English were harmed, as described in Paragraph 2.

## II. JURISDICTION AND VENUE

4.   This cause is an individual action by the named plaintiffs and a class action.   This Court has subject matter jurisdiction under 28 U.S.C. §1332(d), because at least one member of the class is a citizen of a different State than defendants APPLECARE SERVICE COMPANY, INC., and APPLE CSC, INC., while defendant APPLE CSC, INC. is a wholly owned and controlled alter ego of APPLECARE SERVICE COMPANY, INC., there are 100 or more class members, and the aggregate amount in controversy exceeds $75,000.

5.   Venue is proper under 28 U.S.C. §1391(a)(2).

## III. PARTIES

6.   Plaintiff PATRICIA SUE ADKINS resides in Alvin, Texas and is a citizen of the State of Texas.   Plaintiff Adkins resides within the territorial jurisdiction of the United States District Court for the Southern District of Texas, Galveston Division.   Plaintiff Adkins is representative of the class of consumers aggrieved by the conduct of the Defendants under the criteria for a federal class action set forth in FED. R. CIV. PROC. 23.

7.     Plaintiff JENNIFER GALINDO resides in The Woodlands, Texas and is a citizen of the State of Texas. Plaintiff Galindo is representative of the class of consumers aggrieved by the conduct of the Defendants under the criteria for a federal class action set forth in FED. R. CIV. PROC. 23.

8.     Plaintiff FABRIENNE ENGLISH resides in Dallas, Texas and is a citizen of the State of Texas. Plaintiff English is representative of the class of consumers aggrieved by the conduct of the Defendants under the criteria for a federal class action set forth in FED. R. CIV. PROC. 23.

9.     Defendant APPLE, INC. is a California corporation, with its headquarters and principal place of business located at 1 Infinite Loop, Cupertino, California. At all relevant times, Apple manufactured, distributed and sold electronic devices and sold warranties for said devices in the United States, including within the Southern District of Texas.

10.     Defendant APPLECARE SERVICE COMPANY, INC. is a subsidiary of Defendant APPLE, INC., which lists its registered office as: "c/o CT Corporation System, 2394 East Camelback Road, Phoenix, Arizona 85016." The records of the Arizona Secretary of State indicate that the actual address for the principal place of business of APPLECARE SERVICE COMPANY, INC. is 1Infinite Loop, Cupertino, CA 95014, and the address listed for the registered

office as "c/o CT Corporation System, 2390 East Camelback Road, Phoenix, Arizona 85016," which is a slight variation from what is listed in Apple's own published materials.

11.     Defendant APPLE CSC, INC. is a DBA entity for APPLECARE SERVICE COMPANY, INC., registered with the Texas Secretary of State, used for products and services sold in Texas.

12.     Service of process on Defendant APPLE, INC. may be made by serving its registered agent for service:

CT Corporation System
818 West 7th Street
Los Angeles, CA 90017

13.     Service of process on Defendant APPLE SERVICE COMPANY, INC.,  may be made by serving its registered agent for service, according to the records of the Arizona Secretary of State:

CT Corporation System
2390 East Camelback Road
Phoenix, Arizona 85016

Note that the address listed by APPLE SERVICE COMPANY, INC. (as published in the "AppleCare+ for iPhone, iPad, and iPod Terms and Conditions" booklet), is not the same as the address provided to the Arizona Secretary of State, but it is similar.

14.    Service of process on defendant APPLE CSC, INC. may be made by serving its registered agent for service, according to the records of the Texas Secretary of State:

CT Corporation System
350 N. St. Paul Street, Suite 2900
Dallas, TX 75201

## IV.  FACTUAL ALLEGATIONS

15.    Apple designs, manufactures, packages, distributes, and sells various electronic devices, which are sold to retail consumers, in the United States and elsewhere.  Those devices include, but are not limited to devices in three categories: (a) cellular telephones, known as iPhones, (b) devices for listening to recorded music or information, known as iPods, and (c) tablet computers known as iPads  and other configurations of computers. Over time Apple has produced and marketed a series of models in each of those categories.

16.     As to each of the categories of electronic devices mentioned in Paragraph 15 above, Apple offers warranty plans, known as AppleCare and AppleCare+.

17.     At least since November 4, 2009, Apple has distributed (and continues to distribute) the electronic devices mentioned in Paragraph 15 above through three channels of commerce: (1) retail outlets owned and operated by Apple, known as Apple Stores, (2) wholesale distribution to other retailers, such as AT&T and other vendors of cellular phone services, and (3) sales via the Internet, either directly or through third-party resellers.

18.     The devices mentioned in Paragraph 15 are sold in competition with similar products produced and marketed by other manufacturers and vendors. The marketplace for cellular telephones is large and highly competitive, with multiple manufacturers and vendors actively competing.   The market for handheld devices such as the iPod is competitive, not only between manufacturers but also in the competition between stand-alone devices and "smart" cellular phones which may incorporate functions similar to those of the stand-alone devices. The market for tablet computers similarly is characterized not only by competition between tablet manufacturers and sellers, but competition between tablets and other configurations of personal computers, such as desktop computers and laptop

computers. Advertising by Apple and its competitors is a major factor in the marketing of all of these categories of electronic devices.

19. In order to induce consumers to purchase Apple's electronic devices, Apple created and marketed warranty plans known as AppleCare and AppleCare+. Apple operated (and continues to operate) the administration of the warranty programs in the United States through APPLECARE SERVICE COMPANY, INC., which uses the DBA name of APPLE CSC, INC. for business done in the State of Texas. The legally convoluted use of multiple business entities obscures but does not change the fact that, as a practical matter, defendant Apple is in charge and in control of the warranty programs. Page 21 of the "AppleCare+ for iPhone, iPad, and iPod Terms and Conditions" booklet states in pertinent part:

> (xii) ... The obligations of all Plans sold in the United States are backed by the full faith and credit of the provider, AppleCare Service Company, Inc. ...

> (xiii) The Administrator is Apple Inc. (the "Administrator" TDLR License #300), a California corporation with its registered office at 1 Infinite Loop, Cupertino, California 95014. The Administrator is responsible for the collection and transfer to AppleCare Service Company, Inc. of the purchase price for the Plan and for the administration of claims under the Plan.

See **Exhibit A** ("AppleCare+ for iPhone, iPad, and iPod Terms and Conditions" booklet, pp. 1-33, English language terms and conditions).

20.   In some instances other vendors of Apple electronic devices have been permitted by Apple to offer their own warranty plans for Apple devices, in competition with AppleCare and AppleCare+ warranties.   In some instances other vendors of Apple devices, in stores or over the Internet, have been permitted by Apple to sell AppleCare or AppleCare+ warranties, for which Apple would stand accountable to service the devices covered by warranties.

21.   As an experienced producer and seller of electronic devices, Apple knew that many potential purchasers of electronic devices would prefer to buy a device covered by a warranty, especially if the device was relatively expensive. Typically Apple electronic devices sell at retail for prices in excess of $100, often substantially in excess of $100.

22.   As an experienced producer and seller of electronic devices, Apple knew that many consumers would prefer to purchase a device for which the available warranty offered a new device, rather than a used or reconditioned device, as a replacement in the event that the originally purchased device was defective or damaged to the degree that it needed to be replaced.

23.   As an experienced producer and seller of electronic devices, Apple knew that many consumers would prefer to purchase a device for which the available warranty assured the use of new parts, rather than used or reconditioned

parts, in the event that the originally purchased device was defective or damaged to the degree that it needed to be repaired.

24.    Apple published information concerning the terms and conditions of its warranties which stated, directly and indirectly, that Apple would fulfill its warranty obligations by providing new replacement devices, or replacement devices which were functionally equivalent to new devices. See **Exhibit A**, p. 5; **Exhibit B** (AppleCare terms and conditions, one-page summary). Apple published information concerning the terms and conditions of its warranties which stated, directly and indirectly, that Apple would fulfill its warranty obligations for repairs by making repairs using new parts, or parts which were functionally equivalent to new parts. See **Exhibit A**, p. 5; **Exhibit B**.

25.    The AppleCare and AppleCare+ warranties state in pertinent part that, with respect to a defect in materials or workmanship in devices purchased from Apple, that Apple " will either (a) repair the defect at no charge, using new parts or parts that are equivalent to new in performance and reliability, or (b) exchange the Covered Equipment, with a replacement product that is new or equivalent to new in performance and reliability. All replacement products provided under this Plan will at a minimum be functionally equivalent to the original product." See **Exhibit A,** p. 5; **Exhibit B**.

26.    On repair orders -- which by definition are issued only after a device has been purchased and is in need repair -- Apple states a significantly different position.  Under the terms and conditions of AppleCare warranties, as indicated in Paragraph 4 of the AppleCare REPAIR TERMS AND CONDITIONS (attached as **Exhibit C**) states in pertinent part:

> If repairing your product under your product's warranty or extended service contract, Apple may use new, used or reconditioned parts.

At this juncture, when the customer already has been locked into the purchase of a device and warranty, Apple does not pledge to limit its use of used or reconditioned parts to those which are functionally equivalent to new parts.

27.    Paragraph 5 of the AppleCare REPAIR TERMS AND CONDITIONS (**Exhibit C**) states in pertinent part:

> If a defect exists in a replacement part during the part's warranty period, at its option, Apple will (1) repair the part, using new, used or reconditioned replacement parts, (2) replace the part with a new, used or reconditioned equivalent part, or (3) refund the fair market value of the part, as determined by Apple. THIS WARRANTY AND REMEDY ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, REMEDIES, AND CONDITIONS, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, WITH RESPECT TO THE REPAIR PARTS.  APPLE SPECIFICALLY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES WITH RESPECT TO SUCH PARTS, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  IF APPLE CANNOT LAWFULLY DISCLAIM IMPLIED WARRANTIES UNDER THIS LIMITED WARRANTY, ALL SUCH WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A

PARTICULAR PURPOSE, ARE LIMITED IN DURATION TO THE DURATION OF THE EXPRESS LIMITED WARRANTY.

The average consumer, including members of the Class represented by Adkins, Galindo, and English, would understand the word "new" in the ordinary sense of that word. Consumers ordinarily do not consider a "new" item and a "used" or "reconditioned" or "refurbished" item to be the same in quality, function, or durability.

28. In fact, Apple has consistently exercised its discretion to provide replacement devices which are used or reconditioned, and are neither new nor functionally equivalent to new devices. Apple has consistently exercised its discretion to make repairs using parts which are used or reconditioned, and are neither new nor functionally equivalent to new parts.

29. Apple does not conspicuously advertise -- in print, radio, or Internet advertising, or through conspicuous displays in its Apple Stores or in the stores of authorized third-party vendors -- the fact that the purchaser of an Apple device and Apple warranty probably would not receive a new replacement device or a used device which was functionally equivalent to a new one under the warranty.

30. Apple does not conspicuously advertise -- in print, radio, or Internet advertising, or through conspicuous displays in its Apple Stores or in the stores of authorized third-party vendors -- the fact that the purchaser of an Apple device and

Apple warranty probably would not have any repairs made with new parts or with used or reconditioned parts that were functionally equivalent to new parts.

31.     Apple does not regularly distribute copies of the "AppleCare+ for iPhone, iPad, and iPod Terms and Conditions" booklet or similar material revealing that used or reconditioned devices and parts are utilized prior to selling devices to consumers.  Instead consumers are likely to learn this only in the unhappy event that a replacement or repair is needed, after already paying for a device and a warranty.

32.     Apple does not regularly distribute copies of the "AppleCare+ for iPhone, iPad, and iPod Terms and Conditions" booklet or similar material revealing that used or reconditioned devices and parts are utilized prior to selling warranties to consumers.

33.     Plaintiff  PATRICIA SUE ADKINS purchased an iPod Touch electronic device at an Apple Store on  October 30, 2013 in Webster, Texas. Adkins paid $229 for the device.

34.     At the Apple Store where Adkins made her purchase, there was no written information, conspicuously posted within public view, indicating that the Apple warranties available for an iPod Touch would authorize Apple, at its discretion, to replace the device with a used or reconditioned device, rather than a

new one, and would authorize Apple, at its discretion, to make repairs using new or reconditioned parts, rather than new parts.

35. No sales representative verbally revealed to Adkins, either in discussing Adkins' purchase of the iPod Touch device or discussing Adkins' purchase of a warranty, that the Apple warranties available for an iPod Touch would authorize Apple, at its discretion, to replace the device with a used or refurbished device, rather than a new one, and would authorize Apple, at its discretion, to make repairs using new or reconditioned parts, rather than new parts.

36. At the time of Adkins' purchase, the packaging of the iPod Touch contained no indication that, under Apple's warranty plan, a used or reconditioned device or used or reconditioned parts (whether or not functionally equivalent to a new device or new parts) could be used for warranty service.

37. Relying on the discussion with the sales representative, and uninformed as to the true character of the warranty, Adkins paid $69 for a two-year warranty for the iPod Touch she purchased.

38. If Adkins had been told that, under the warranty, Apple would not provide a replacement device which was new, and Apple would not use new parts in the event Adkins' iPod Touch needed to be repaired, Adkins would not have purchased the warranty. The cost of the warranty was over 25% of the original

purchase price. Adkins would have chosen to forego the warranty if she had been informed that, under the warranty, Apple actually would fulfill any replacement obligation with a device which was neither new nor the functional equivalent of new, and Apple actually would fulfill any repair obligation with parts which were neither new nor the functional equivalent of new.

39.     On October 30, 2013 plaintiff Jennifer Galindo purchased an iPhone 5 cellular phone, manufactured by Apple, at an Apple Store in The Woodlands, Texas . Galindo already had cellular telephone service but desired to acquire an additional service line, which also required the acquisition of another cellular telephone. Of the money paid for the additional service line by Galindo, approximately $99 was attributed to the cost of the iPhone 5. What additional compensation, if any, may have been paid to Apple by the cellular service provider out of recurrent monthly payments to the provider is not known by plaintiff Galindo.

40.     At the Apple Store where Galindo made her purchase, there was no written information, conspicuously posted within public view, indicating that the Apple warranties available for an iPhone 5 would authorize Apple, at its discretion, to replace the device with a used or reconditioned device, rather than a new one, and would authorize Apple, at its discretion, to make repairs using new or reconditioned parts, rather than new parts.

41.   No sales representative verbally revealed to Galindo, either in discussing Galindo's purchase of the iPhone5 or discussing Galindo's purchase of a warranty, that the Apple warranties available for an iPhone 5 would authorize Apple, at its discretion, to replace the device with a used or refurbished device, rather than a new one, and would authorize Apple, at its discretion, to make repairs using new or reconditioned parts, rather than new parts.

42.   At the time of Galindo's purchase, the packaging of the iPhone 5 contained no indication that, under Apple's warranty plan, a used or reconditioned device or used or refurbished parts (whether or not functionally equivalent to a new device or new parts) could be used for warranty service.

43.   Galindo already owned a Samsung phone, which had been purchased from Best Buy.  She had had a warranty on that phone and had utilized the warranty on that phone for service.  Best Buy provided Galindo a new phone under the warranty.  Based on her experience with the Best Buy warranty and on her understanding of the word "new," Galindo believed a pledge to provide a "new" phone or use "new" parts would not mean used or reconditioned phones or parts.

44.   Relying on the discussion with the sales representative, and uninformed as to the true  character of the warranty, Galindo paid $99  for a two-year warranty for the iPhone 5 she purchased.

45.   If Galindo had been told that, under the warranty, Apple would not provide a replacement device which was new, and Apple would not use new parts in the event Galindo's iPhone 5 needed to be repaired, Galindo would not have purchased the warranty.   The cost of the warranty was 100% of the amount attributed to the phone in the transaction for a second service line. Galindo would have chosen to forego the warranty if she had been informed that, under the warranty, Apple actually would fulfill any replacement obligation with a device which was neither new nor the functional equivalent of new, and Apple actually would fulfill any repair obligation with parts which were neither new nor the functional equivalent of new.

46.   On September 25, 2012 plaintiff Fabrienne English purchased an AppleCare+ warranty for an iPhone 4 at an Apple Store in Dallas County, Texas. English had purchased the iPhone 4 previously via the Internet from Sprint Online, in conjunction with signing up for Sprint wireless service. The iPhone 4 purportedly was "free" with the purchase of a two-year service contract.  Patently Apple did not manufacture and deliver the iPhone 4 to Sprint for free, so compensation to Apple must have been a component of the recurring payments for the cellular service contract, but English does not know what compensation, if any, may have been paid to Apple by the cellular service provider.

47.     At the Apple Store where English made her purchase, there was no written information, conspicuously posted within public view, indicating that the AppleCare+ warranty would authorize Apple, at its discretion, to replace the device with a used or reconditioned device, rather than a new one, and would authorize Apple, at its discretion, to make repairs using new or reconditioned parts, rather than new parts.  English was not given a copy of Exhibit A or any other printed material containing the same information.

48.     No sales representative verbally revealed to English that the AppleCare+ warranty would authorize Apple, at its discretion, to replace her the device with a used or reconditioned device, rather than a new one, and would authorize Apple, at its discretion, to make repairs using new or refurbished parts, rather than new parts.  On the contrary, a sales representative affirmatively told English that a replacement device would be new.

49.     Relying on the discussion with the sales representative, and uninformed as to the true  character of the warranty, English purchased a two-year warranty for her iPhone 4 for $99.

50.     The true character of the warranty was revealed to English only through the bad experience of needing to replace her iPhone 4.  On February 16, 2013 English was given a replacement phone at an Apple Store.  The replacement phone

did not function adequately, as it had a cracked screen, would freeze up, and would "close" unexpectedly.   It was a used phone, and was not the functional equivalent of a new phone.

51.     On July 23, 2013 English took that replacement phone to the Apple Store and was given a second replacement phone.   That phone, too, did not function adequately, as it too would freeze up, and the phone had water damage.  It was a used phone, and was not the functional equivalent of a new phone.

52.     The replacement device delivered to English on February 16, 2013 was not packaged in a box or other container bearing any label or other writing indicating that the replacement device was used or refurbished and was not new.

53.     The replacement device delivered to English on July 23, 2013 was not packaged in a box or other container bearing any label or other writing indicating that the replacement device was used or refurbished and was not new.

54.     If English had been told that, under the warranty, Apple would not provide a replacement device which was new, and Apple would not use new parts in the event English's iPhone 4 needed to be repaired, English would not have purchased the warranty.  English would have chosen to forego the warranty if he had been informed that, under the warranty, Apple actually would fulfill any replacement obligation with a device which was neither new nor the functional

20

equivalent of new, and Apple actually would fulfill any repair obligation with parts

which were neither new nor the functional equivalent of new.

## V.  CLASS ACTION ALLEGATIONS

55.    Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring

this action on behalf of themselves and a Class defined as:

> All individual persons in the United States who, for purposes other than
> resale, purchased and/or paid for (a) electronic devices manufactured by
> Apple and/or warranties sold by Apple and/or by AppleCare Service
> Company, Inc. (whether operating under the DBA name of APPLE CSC,
> INC. or otherwise), on or after November 4, 2009.

56.    Excluded from the Class are Defendants and any entity in which any

Defendant has a controlling interest, and their legal representatives, officers,

directors, assignees and successors.  Also excluded from the Class are any judicial

officers to whom this action is assigned, together with any relative of such judicial

officers within the third degree of relationship, and the spouse of any such person.

Also excluded are any and all persons who allegedly suffered physical and/or

psychological injuries as a result of their use of any Apple electronic device or who

allegedly suffered physical and/or psychological injuries as the result of the use of

any Apple electronic devices by others.

57.    Based upon information and belief, the Class consists of large numbers

of individuals dispersed throughout the United States, making individual joinder

impractical, as required by Rule 23(a)(1). The disposition of the claims of the members of the Class and its Subclasses in a single class action will provide substantial benefits to all parties and to the Court.

58. The claims of the named Plaintiffs are typical of the claims of the Class they seek to represent, as required by Rule 23(a)(3), in that the representative Plaintiffs are persons who, like all members of the Class, purchased an Apple electronic device and a warranty, having been led to erroneously believe that replacements and repairs would be made using new devices, or devices functionally equivalent to new devices, and new parts, or parts functionally equivalent to new parts.

59. The factual and legal bases of the misconduct by the Defendants are common to all members of the Class and represent a unifying and common plan of fraud and other misconduct resulting to injury to Plaintiffs and to all members of the Class.

60. Numerous questions of law and fact exist that are common to the Plaintiffs and the Class. Those common questions predominate over any questions that may affect individual members of the Class, within the meaning of Rule 23(a)(2) and 23(b)(3). Common questions of law and fact included, but are not limited to, the following:

a.   Whether Defendants concealed material information from the Plaintiffs, members of the Class, and the general public concerning the actual goods and services to be provided under AppleCare and AppleCare+ warranties;

b.   Whether Defendants concealed material information from the Plaintiffs, members of the Class, and the general public as part of a general scheme of deception;

c.   Whether Defendants engaged in a fraudulent, unlawful and/or deceptive scheme of marketing and selling electronic devices and warranties;

d.    Whether Defendants engaged in unfair competitive practices in the marketing and selling of electronic devices and warranties;

e.   Whether Defendants violated labeling requirements of the law applicable to the sale of used or refurbished merchandise;

f.    Whether Defendants are liable to members of the Class for damages;

g.    Whether Defendants unjustly enriched themselves at the expense of members of the Class; and

h.    Whether members of the Class are entitled to compensatory damages and, if so, the nature and extent of such damages.

61.     The Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, as required by Rule 23(a)(4). The Plaintiffs have retained counsel who is familiar with the factual and legal bases for the prosecution of this class action and has the resources to prosecute this action. The Plaintiffs and their counsel are committed to the vigorous prosecution of this action on behalf of the Class. Neither the Plaintiffs nor their counsel have any interests adverse to those of the Class.

62.     The Plaintiffs and members of the Class have suffered, and will continue to suffer, economic harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3). Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and would thus have no effective access to the courts or remedy at law. Given that many members of the Class own devices which are still subject to an AppleCare or AppleCare+ warranty, those members would run the risk of retaliation, in the form of deliberately inferior warranty service and otherwise, if they were to serve as named plaintiffs in individual suits against these Defendants. The class treatment of common questions of law and fact also is superior to multiple individual actions or piecemeal litigation in that it conserves

the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

63. The Plaintiffs seek nationwide certification. The Plaintiffs allege that nationwide class certification is superior to all other available methods for the fair and efficient adjudication of this action, particularly in light of marketing of Apple devices over the Internet.

64. This case presents common issues of fact and law that are appropriate for issues of class certification under Rule 23(c)(4); and the management of this action may be facilitated through the certification of additional subclasses under Rule 23(c)(5), if necessary and appropriate.

## COUNT I
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION
## LAW IN THE SALE OF WARRANTIES

65. The Plaintiffs incorporate by reference the previous allegations as if they were fully set forth herein.

66. This Count is brought pursuant to the Unfair Competition Law ("the UCL"), CALIFORNIA BUSINESS & PROFESSIONS CODE §17200 *et seq.*

67. This claim is asserted by the Plaintiffs on their own behalf and on

behalf of all other similarly situated members of the Class and against all Defendants.

68.    California law applies under the explicit language of the Terms and Conditions of the warranty provided by Apple, Inc., which provides: "These Terms and Conditions are governed by the laws of the State of California (without giving effect to its conflict of law provisions)." See **Exhibit A**, p. 21, part (xiv); **Exhibit B**.

69.    The UCL provides that "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice," including acts of intentional misrepresentation or concealment of material facts.   Unlawful acts under the UCL include any act that is unlawful and that is conducted as part of business activity.  Section 17203 authorizes a private cause of action for injunctive and monetary relief against parties engaging in unfair competition.

70.    Section 17204 in the UCL specifically provides that any person may pursue representative claims or relief on behalf of others if the claimant meets the standing requirements of that section. The Plaintiffs meet said requirements, in that each of the Plaintiffs is a person who has suffered injury in fact and has lost property as a result of the unfair competition engaged in by the Defendants, as set forth herein.

71. Plaintiffs allege that Defendants APPLE, INC. and APPLECARE SERVICE COMPANY, INC., which also uses the DBA name of APPLE CSC, INC. for transactions in the State of Texas, did, on and after November 4, 2009, within the Southern District of Texas and elsewhere in the United States, engage in unfair competition through unlawful, unfair, and fraudulent business practices by selling to the named plaintiffs, PATRICIA SUE ADKINS, JENNIFER GALINDO, and FABRIENNE ENGLISH, and to other persons in the Southern District of Texas and throughout the United States, an AppleCare or AppleCare+ warranty, in violation of CAL. BUS. & PROF. CODE §17200. The Apple Care and AppleCare+ warranties state in pertinent part that, with respect to a defect in materials or workmanship in devices purchased from Apple, Apple "will either (a) repair the defect at no charge, using new parts or parts that are equivalent to new in performance and reliability, or (b) exchanged the Covered Equipment, with a replacement product that is new or equivalent to new in performance and reliability. All replacement products provided under this Plan will at a minimum be functionally equivalent to the original product." See **Exhibit A**, p. 5; **Exhibit B**. These representations are false and misleading to consumers because:

(1) It is the policy of Apple, Inc. to use parts in repairs which are used and reconditioned and which are not "equivalent to new in performance and

reliability" and which are not "at a minimum ... functionally equivalent to the original product," and

(2)    In fact Apple, Inc. rarely, if ever, provides a new device as a replacement unless an additional fee, beyond the cost of the warranty, is paid.

These unlawful, unfair, and fraudulent business practices caused the named Plaintiffs, and others, in the Southern District of Texas and throughout the United States, to purchase an AppleCare or AppleCare+ warranty plan, in lieu of purchasing warranties offered by third-party vendors in competition with Apple, Inc., or in lieu of simply foregoing the purchase of a warranty entirely. The named Plaintiffs, and other purchasers of AppleCare and AppleCare+ warranties, within the Southern District of Texas and throughout the United States, suffered economic loss as a result of the Defendants' unlawful, unfair, and fraudulent business practices, as described above.

## COUNT TWO

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW IN THE SALE OF ELECTRONIC DEVICES

72.    The Plaintiffs incorporate by reference the previous allegations as if they were fully set forth herein.

73.   This Count is brought pursuant to the Unfair Competition Law ("the UCL"), CALIFORNIA BUSINESS & PROFESSIONS CODE §17200 *et seq.* and/or the False Advertising Law, CALIFORNIA BUSINESS & PROFESSIONS CODE §17500 *et seq.*

74.   This claim is asserted by the Plaintiffs on their own behalf and on behalf of all other similarly situated members of the Class and against all Defendants.

75.   California law applies under the explicit language of the Terms and Conditions of the warranty provided by Apple, Inc., which provides: "These Terms and Conditions are governed by the laws of the State of California (without giving effect to its conflict of law provisions)." See **Exhibit A**, p. 21, part (xiv); **Exhibit B**.

76.   The Plaintiffs allege that Defendants APPLE, INC. and APPLECARE SERVICE COMPANY, INC., which also uses the DBA name of APPLE CSC, INC. for transactions in the State of Texas, did, on and after November 4, 2010, within the Southern District of Texas and elsewhere in the United States, engage in unfair competition through an unlawful, unfair, and fraudulent business practices by selling to the named plaintiffs, PATRICIA SUE ADKINS, JENNIFER GALINDO, and FABRIENNE ENGLISH, and to others, in the Southern District

of Texas and throughout the United States, electronic devices, in conjunction with the offer to sell an AppleCare+ warranty for said electronic devices, without adequately disclosing that it was the policy of Apple, Inc. in making repairs to said electronic devices or replacing said electronic devices under the AppleCare and AppleCare+ warranty programs, to only provide replacement devices or replacement parts which were used or reconditioned, rather than providing new replacement devices or new replacement parts, in violation of CAL. BUS. & PROF. CODE §17200. These unlawful, unfair, and fraudulent business practices caused the named Plaintiffs and others, in the Southern District of Texas and throughout the United States, to purchase electronic devices and to purchase warranty plans for those devices, at a substantial combined cost to each purchaser for an electronic device and warranty plan, in lieu of purchasing electronic devices and warranties offered by competitors of Apple, Inc.  The named Plaintiffs, and other purchasers of Apple electronic devices and Apple warranties, within the Southern District of Texas and throughout the United States, suffered economic loss as a result of the Defendants' unlawful, unfair, and fraudulent business practices, as described above.

## COUNT THREE

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

77.     The Plaintiffs incorporate by reference the previous allegations as if they were fully set forth herein.

78.     This Count is brought pursuant to the False Advertising Law, CALIFORNIA BUSINESS & PROFESSIONS CODE §17500 *et seq.*

79.     This claim is asserted by the Plaintiffs on their own behalf and on behalf of all other similarly situated members of the Class and against all Defendants.

80.     California law applies under the explicit language of the Terms and Conditions of the warranty provided by Apple, Inc., which provides: "These Terms and Conditions are governed by the laws of the State of California (without giving effect to its conflict of law provisions)." See **Exhibit A**, p. 21, part (xiv); **Exhibit B**.

81.     The Plaintiffs allege that Defendants APPLE, INC. and APPLECARE SERVICE COMPANY, INC., which also uses the DBA name of APPLE CSC, INC. for transactions in the State of Texas, did, on and after November 4, 2009, within the Southern District of Texas and elsewhere in the United States, cause to be made and disseminated untrue and misleading statements concerning personal property, namely electronic devices, and concerning services, namely fulfillment of warranties, which statements were known by the Defendants to be untrue and

misleading, with the intent not to sell the personal property and services as advertised. The Defendants caused this making and dissemination of untrue and misleading statements through advertising, statements of warranty terms, and through direct contact with consumers, and by omitting material information in such advertising, statements of warranty terms, and direct contact with consumers,

including the named Plaintiffs and other purchasers of Apple electronic devices and Apple warranties, within the Southern District of Texas and throughout the United States. Affirmative statements which were untrue and misleading included, but were not limited to, statements that new devices would be provided, or that used or reconditioned devices which were functionally equivalent to new devices, would be used to replace devices under the Apple warranty programs, as well as statements that new parts, or used or reconditioned parts which were functionally equivalent to new parts, would be used to repair devices. In truth and in fact, new devices and new parts were rarely used for these purposes, and the used and reconditioned parts used were not functionally equivalent to new devices and new parts. Furthermore, in many instances the Defendants entirely failed to disclose, by any means likely to reach consumers, the likelihood that used or reconditioned devices and parts would be used to fulfill the terms and conditions of the Apple warranties. As a result, the named Plaintiffs and other purchasers of Apple electronic devices and Apple warranties, within the Southern District of Texas and

throughout the United States, suffered economic loss as a result of the Defendants' misrepresentations.

## COUNT FOUR

## VIOLATION OF CALIFORNIA SECONDHAND

## MERCHANDISE LABELING LAW

82.    The Plaintiffs incorporate by reference the previous allegations as if they were fully set forth herein.

83.    This Count is brought pursuant to the provisions of CALIFORNIA BUSINESS & PROFESSIONS CODE §17531, which is captioned "Secondhand, used, defective, second grade, or blemished merchandise; required statement."

84.    This claim is asserted by the Plaintiffs on their own behalf and on behalf of all other similarly situated members of the Class and against all Defendants.

85.    California law applies under the explicit language of the Terms and Conditions of the warranty provided by Apple, Inc., which provides: "These Terms and Conditions are governed by the laws of the State of California (without giving effect to its conflict of law provisions)." See **Exhibit A**, p. 21, part (xiv); **Exhibit B**.

86.   The Plaintiffs allege that Defendants APPLE, INC. and APPLECARE SERVICE COMPANY, INC., which also uses the DBA name of APPLE CSC, INC. for transactions in the State of Texas, did, on and after November 4, 2009, within the Southern District of Texas and elsewhere in the United States, unlawfully advertise, call attention to, and give publicity to the sale of secondhand, used, and defective merchandise, without conspicuously displaying directly in connection with the name and description of the merchandise a direct and unequivocal statement which would clearly indicate that the merchandise so advertised and publicized was secondhand, used, or defective. In fulfillment of warranties which were sold to the named Plaintiffs and similarly situated consumers, within the Southern District of Texas and throughout the United States,

and which warranties had the purported purpose of providing replacement devices or repairing devices, the Defendants utilized secondhand, used, and defective replacement devices and parts, without conspicuously displaying a label or other notice on the replacement devices and parts, or on boxes or other containers for said replacement devices and part, indicating that the replacement devices and parts were secondhand, used, or defective. If such notice had been provided, it is likely that consumers would have insisted on knowing the actual condition of the replacement merchandise or parts before accepting the merchandise or parts in fulfillment of a warranty. As a result, the named Plaintiffs and other purchasers of

Apple electronic devices and Apple warranties, within the Southern District of Texas and throughout the United States, suffered economic loss as a result of the Defendants' failure to provide such notice.

**COUNT FIVE**

**VIOLATIONS OF CALIFORNIA CONSUMER REMEDIES ACT**

87.     The Plaintiffs incorporate by reference the previous allegations as if they were fully set forth herein.

88.     This Count is brought pursuant to the Consumer Legal Remedies Act, CALIFORNIA CIVIL CODE §1770.

89.     California law applies under the explicit language of the Terms and Conditions of the warranty provided by Apple, Inc., which provides: "These Terms and Conditions are governed by the laws of the State of California (without giving effect to its conflict of law provisions)." See **Exhibit A**, p. 21, part (xiv); **Exhibit B**.

90.     This claim is asserted by Plaintiffs on their own behalf and on behalf of all other similarly situated members of the Class and against all Defendants.

91.     The Plaintiffs allege that Defendants APPLE, INC. and APPLECARE SERVICE COMPANY, INC., which also uses the DBA name of APPLE CSC, INC. for transactions in the State of Texas, did, on and after November 9, 2010,

35

within the Southern District of Texas and elsewhere in the United States, engage in transactions resulting in sales to the Plaintiffs, and sales to similarly situated persons in the Southern District of Texas and throughout the United States, which were unlawful, by representing that services, namely warranty programs sold and administered by the Defendants, had characteristics and benefits which they did not have, in that the Defendants represented that the replacement devices under the warranty programs would be new devices, or used devices which were functionally equivalent to new devices, when in fact new devices were rarely, if ever, provided, and the devices provided were not functionally equivalent to new devices, and the Defendants represented that parts used to repair electronic devices would be new, or functionally equivalent to new parts, when in fact new parts were rarely, if ever, used, and the parts used were not functionally equivalent to new parts. The named Plaintiffs, and other purchasers of Apple electronic devices and Apple warranties, within the Southern District of Texas and throughout the United States, suffered economic loss, as well as other damages, as a result of the Defendants' misrepresentations.

92.    The Plaintiffs further allege that Defendants APPLE, INC. and APPLECARE SERVICE COMPANY, INC., which also uses the DBA name of APPLE CSC, INC. for transactions in the State of Texas, did, on and after November 9, 2010, within the Southern District of Texas and elsewhere in the

United States, engage in transactions resulting in sales to the Plaintiffs, and sales to similarly situated persons in the Southern District of Texas and throughout the United States, which were unlawful, by representing that services, namely warranty programs sold and administered by the Defendants, were of a particular standard and quality, when they in fact were of a different and inferior standard and quality, in that the Defendants represented that the replacement devices under the warranty programs would be new devices, or used devices which were functionally equivalent to new devices, when in fact new devices were rarely, if ever, provided, and the devices provided were not functionally equivalent to new devices, and the Defendants represented that parts used to repair electronic devices would be new, or functionally equivalent to new parts, when in fact new parts were rarely, if ever, used, and the parts used were not functionally equivalent to new parts. The named plaintiffs, and other purchasers of Apple electronic devices and Apple warranties, within the Southern District of Texas and throughout the United States, suffered economic loss, as well as other damages, as a result of the Defendants' misrepresentations.

93. The Plaintiffs further allege that Defendants APPLE, INC. and APPLECARE SERVICE COMPANY, INC., which also uses the DBA name of APPLE CSC, INC. for transactions in the State of Texas, did, on and after November 9, 2010, within the Southern District of Texas and elsewhere in the

United States, engage in transactions resulting in sales to the Plaintiffs, and sales to similarly situated persons in the Southern District of Texas and throughout the United States, which were unlawful, by advertising services with intent not to sell them as advertised, in that the Defendants advertised the sale of warranty programs under which replacement devices would be new devices, or used devices which were functionally equivalent to new devices, when in fact new devices were rarely, if ever, provided, and the devices provided were not functionally equivalent to new devices, and the Defendants advertised the sale of warranty programs under which parts used to repair electronic devices would be new, or functionally equivalent to new parts, when in fact new parts were rarely, if ever, used, and the parts used were not functionally equivalent to new parts. The named Plaintiffs, and other purchasers of Apple electronic devices and Apple warranties, within the Southern District of Texas and throughout the United States, suffered economic loss, as well as other damages, as a result of the Defendants' misrepresentations.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiffs pray for relief as follows:

94.     An order certifying the Class, appointing Plaintiffs Adkins, Galindo, and English as Class representatives, and appointing the Plaintiffs' undersigned counsel as counsel for the Class:

95.     Under CALIFORNIA CIVIL CODE §1770, the California Legal Remedies Act, injunctive relief sought is as follows:

(a)     An order that the Defendants cease and desist from replacing damaged or defective devices with refurbished, used, or secondhand product; and

(b)     An order that the Defendants, in the future, only replace damaged or defective devices with new devices, and only repair devices with new parts; or

(c)     An order that the Defendants cease and desist from advertising, misrepresenting, and/or misleading the consumers into believing that they are getting a new device comprised of all new components and/or parts; and

(d)     An order that the Defendants cease and desist from advertising, misrepresenting, and/or misleading the consumers into purchasing warranties for electronic devices without disclosing that fulfillment of the warranties will not utilize new devices or parts, unless a new device or part in fact is utilized; and

(e)     An order that the Defendants clearly identify which devices, in fact, contain used parts.

(f)     An order that the Defendants cease and desist from selling AppleCare and AppleCare+ warranties unless and until the Defendants comply with the orders requested in Paragraphs 95(a) through 95(b) or 95(c) through 95(e).

96.   We pray for the injunctive relief as set forth in Paragraph 95, for which we are only seeking injunctive relief at this time, while still preserving the right to amend after the 30 day notice as required by California Civil Code Section 1782(d).

97.   But for all other counts and causes of action other than Section 1770 we pray for, (a) refund and reimbursement of all monies for purchase of all AppleCare and AppleCare+ warranties which were sold without disclosure that Apple would not provide new devices for replacement and/or that Apple would not use new parts for repair, if sold on or after November 4, 2009; and (b) refund and reimbursement of all monies for purchases of Apple electronic devices which were sold together with warranties in the absence of disclosure that Apple would not provide new devices for replacement and that Apple would not use new parts for repair, if sold on or after November 4, 2009; or, at the consumer's election, (c) replace any merchandise that was exchanged or replaced under the AppleCare or AppleCare+ warranties with brand new merchandise; and (d) refund and reimbursement of all deductibles paid and/or required by the warranties.

98.   Prejudgment and post judgment interest as provided by law;

99.   Attorney's fees, expenses, and costs of this action; and

100.   Such further relief as this Court deems necessary, just and proper.

Respectfully submitted,

Renee Kennedy
Attorney at Law
Texas Bar No. 24012954
P.O. Box 2222
Friendswood, TX 77549
Tel. (832) 428-1552
Email:
Counsel for Plaintiffs