1  PENELOPE A. PREOVOLOS (SBN 87607)
   PPreovolos@mofo.com
2  SAI JAHANN (SBN 273788)
   SJahann@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  PURVI G. PATEL (SBN 270702)
   PPatel@mofo.com
7  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
8  Los Angeles, California  90017-3543
   Telephone: 213.892.5200
9  Facsimile: 213.892.5454

10 Attorneys for Defendants
   APPLE INC., APPLECARE SERVICE
11 COMPANY, INC., and APPLE CSC INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICIA SUE ADKINS, JENNIFER GALINDO, and FABRIENNE ENGLISH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., APPLECARE SERVICE COMPANY, INC., and APPLE CSC INC.,<br><br>Defendants. | Case No.   3:14-cv-01619-WHO<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION TO IDENTIFY CLASS MEMBERS**<br><br>Hearing:   September 3, 2014<br>Time:       2:00 p.m.<br>Judge:      William H. Orrick<br>Courtroom: 2, 17th Floor<br><br>Complaint Filed: November 4, 2013<br>Transfer to N.D. Cal.: April 3, 2014<br>Trial Date:  None Set |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................................. ii
I.  INTRODUCTION ..................................................................................................................... 1
II. RELEVANT BACKGROUND ................................................................................................. 3
III. ARGUMENT ............................................................................................................................. 4
    A.  Plaintiffs Have Filed a Procedurally Improper Motion to Compel ........................ 4
        1.  Plaintiffs' Motion Violates Rule 37's Timing Requirements ..................... 5
        2.  Plaintiffs' Motion Violates Pre-Filing Meet-and-Confer Requirements................................................................................................. 5
    B.  Controlling Ninth Circuit Authority Requires Denial of Plaintiffs' Motion........... 7
        1.  Plaintiffs Are Not Entitled to Contact Information for the Proposed Class ............................................................................................................ 7
        2.  Plaintiffs' Request Is Overbroad and Unduly Burdensome ..................... 10
    C.  Plaintiffs' Proposed Notice Letters Constitute Improper Class Notice, Not *Belaire* Notice ........................................................................................................ 11
    D.  Defendants Should Not Be Required to Pay for Any Notice to the Proposed Class ....................................................................................................................... 14
IV. CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apple Computer, Inc. v. Super. Ct.*,
 126 Cal. App. 4th 1253 (2005) ............................................................................................... 9

*Artis v. Deere & Co.*,
 276 F.R.D. 348 (N.D. Cal. 2011) ........................................................................................... 12

*Belaire-W. Landscape, Inc. v. Super. Ct.*,
 149 Cal. App. 4th 554 (2007) ..................................................................................... 8, 11, 12

*Benedict v. Hewlett-Packard Co.*,
 No. 13-cv-0119-LHK,
 2013 U.S. Dist. LEXIS 89225 (N.D. Cal. June 25, 2013) ...................................................... 13

*Best Buy Stores, L.P. v. Super. Ct.*,
 137 Cal. App. 4th 772 (2006) ................................................................................................. 9

*CashCall, Inc. v. Super. Ct.*,
 159 Cal. App. 4th 273 (2008) ................................................................................................. 9

*Del Campo v. Kennedy*,
 236 F.R.D. 454 (N.D. Cal. 2006) ............................................................................................ 7

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974) .............................................................................................................. 14

*Feske v. MHC Thousand Trails Ltd. P'ship*,
 No. 11-4124-PSG,
 2013 U.S. Dist. LEXIS 37232 (N.D. Cal. Mar. 18, 2013) ....................................................... 8

*Hypertouch, Inc. v. Super. Ct.*,
 128 Cal. App. 4th 1527 (2005) ............................................................................................. 14

*In re Air Disaster Near Honolulu, Hawaii on Feb. 24, 1989*,
 792 F. Supp. 1541 (N.D. Cal. 1990) ....................................................................................... 8

*La Sala v. Am. Sav. & Loan Ass'n*,
 5 Cal. 3d 864 (1971) ............................................................................................................... 9

*Lee v. Dynamex, Inc.*,
 166 Cal. App. 4th 1325 (2008) ............................................................................................... 8

*Mantolete v. Bolger*,
 767 F.2d 1416 (9th Cir. 1985) .................................................................................. 7, 8, 9, 10

*Martinet v. Spherion Atlantic Enterprises, Inc.*,
 No. 07cv2178,
 2008 U.S. Dist. LEXIS 48113 (S.D. Cal. June 23, 2008) ....................................................... 10

*McArdle v. AT&T Mobility LLC*,
 No. C 09-1117,
 2010 U.S. Dist. LEXIS 47099 (N.D. Cal. Apr. 16, 2010) .................................................... 7, 8

*Melgar v. CSK Auto, Inc.*,
 No. C-13-3769,
 2014 U.S. Dist. LEXIS 53217 (N.D. Cal. Apr. 16, 2014) ....................................................... 13

*Oppenheimer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978) ................................................................................................................ 14

*Pioneer Elecs. (USA), Inc. v. Super. Ct.*,
 40 Cal. 4th 360 (2007) ............................................................................................................ 12

*Safeco Ins. Co. of Am. v. Super. Ct.*,
 173 Cal. App. 4th 814 (2009) ................................................................................................... 9

*Thomas v. Baca*,
 No. CV 04-08448 DDP,
 2005 U.S. Dist. LEXIS 39956 (C.D. Cal. Dec. 20, 2005) ....................................................... 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37 .............................................................................................................................. 5

Fed. R. Civ. P. 37(a)(1) .................................................................................................................... 6

Fed. R. Civ. P. 37(a)(3)(B) ............................................................................................................... 5

Fed. R. Civ. P. 37(a)(3)(B)(iv) ......................................................................................................... 5

Civil L.R. 3-4 ................................................................................................................................... 7

Civil L.R. 37-1 ............................................................................................................................. 5, 6

## I. INTRODUCTION

Plaintiffs' motion is both premature and procedurally and substantively improper. The motion is procedurally improper because Plaintiffs have not satisfied the prerequisites for bringing a discovery motion — despite Defendants' offer to meet and confer regarding the discovery request underlying the motion. Nor is there substantive merit to the motion: Plaintiffs have not shown that they are entitled to the relief they seek. Through this motion, Plaintiffs seek disclosure of and notice to millions of Apple customers nationwide solely to find additional named plaintiffs in the event that two of the three named Plaintiffs (Patricia Sue Adkins and Jennifer Galindo) are later found to lack standing, choose to withdraw from the case, or are otherwise disqualified due to a conflict of interest created by their relationship with Plaintiffs' counsel. Notably, Plaintiffs do not suggest any anticipated need to find a substitute for the third named Plaintiff Fabrienne English. Plaintiffs' proposed form of notice essentially amounts to class notice before a class is certified and before discovery has even begun.[1] Indeed, it is drafted as if Plaintiffs have already prevailed on the merits. Plaintiffs' motion should be denied for several reasons.

*First*, Plaintiffs' motion is procedurally defective. A party cannot move to compel before a discovery dispute is ripe. Plaintiffs admit that the motion seeks information subsumed in requests for production propounded one business day before the motion was filed. Defendants' responses are not even due until after briefing on this motion is scheduled to be completed. Plaintiffs also filed the motion without leave of Court, in violation of this Court's Standing Order, which requires good faith meet-and-confer followed by a joint statement (or separate, shorter statements) apprising the Court of the discovery dispute.

*Second*, even if Plaintiffs could clear these procedural hurdles, Plaintiffs have not shown that there is any need for customer contact information at this time. Plaintiffs demand a list of purported class members for counsel to contact "in the event the Named Plaintiffs are disqualified

---

[1] Moreover, the case is just getting underway — Defendants answered the complaint on July 23, 2014, a case management conference is scheduled for September 3, 2014, and the only discovery that has been propounded involves the subject matter of Plaintiffs' motion.

DEFENDANTS' OPPOSITION TO MOTION TO IDENTIFY CLASS MEMBERS
CASE NO. 3:14-cv-01619-WHO
la-1260147

1

to represent the class." Controlling Ninth Circuit authority, which Plaintiffs do not cite, does not permit disclosure of this contact information for this purpose. As Plaintiffs admit, the sole purpose of obtaining the information is to find more class representatives before any merits determination has been made as to Adkins' and Galindo's ability to represent the proposed class. The California cases on which Plaintiffs exclusively rely are inapposite. There has been no class discovery or consideration of the appropriate scope of the class (if any). Under these circumstances, there is simply no authority — federal or state — that justifies disclosure of the identities of anyone who has ever purchased an iPhone, iPod, iPad, or Apple computer and a Service Plan[2] anywhere in the United States during the last four years.

*Third*, Plaintiffs' proposed notice reads as post-certification or post-judgment class notice, not precertification notice to apprise Apple customers of their privacy rights. As drafted, it is inaccurate, inflammatory, misleading, and confusing. Among other things, the draft notice improperly includes legal advice regarding Plaintiffs' dismissed warranty claim, and solicits new plaintiffs to bring that claim. If Plaintiffs ever do make the necessary showing for disclosure of customer contact information, the parties will need to meet and confer to ensure the notice is factual and neutral, and to set the ground rules for Plaintiffs' contact with putative class members.

*Fourth*, federal law provides no authority for requiring a defendant to pay for the notice Plaintiffs seek. Plaintiffs do not distinguish applicable law; indeed, they cite no authority in support of their demand that Defendants bear the cost associated with giving everyone in the overbroad proposed class notice of their privacy rights.

For these and other reasons discussed more fully below, Plaintiffs' motion should be denied in its entirety.

---

[2] "Service Plan" collectively refers to AppleCare Protection Plan ("APP") and AppleCare+ ("AC+"), the two service and support plans at issue in this case.

## II. RELEVANT BACKGROUND

On July 29, 2014, Plaintiffs filed a "Statement to the Court Regarding Alleged Discovery Dispute" (ECF No. 89) summarizing Plaintiffs' meet-and-confer efforts relating to this motion. Defendants discuss those efforts and Defendants' own efforts in more detail below.

*Plaintiffs' counsel informs Defendants' counsel that Plaintiffs intend to file a motion.* In connection with an ongoing meet-and-confer regarding Defendants' request to continue the case management conference ("CMC") originally scheduled for August 5, 2014, Defendants first learned on Friday, July 11, 2014, that Plaintiffs intended to file some type of motion. (Declaration of Purvi G. Patel ¶ 2.) On that date, Plaintiffs' counsel advised in an e-mail that Plaintiffs wanted to dual calendar the continued CMC with a "substantive motion." (*Id*., Ex. A.) Defendants' counsel called Plaintiffs' counsel later that same day to learn more about the motion Plaintiffs intended to file. (*Id*. ¶ 3.)

*Plaintiffs' counsel describes motion as requesting precertification discovery.* During the July 11 call, Plaintiffs' counsel stated that Plaintiffs intended to file a motion requesting "precertification discovery" relating to "class certification issues." (*Id*.) Despite direct questions from Defendants' counsel, Plaintiffs' counsel provided no other details regarding the motion, except to say that Plaintiffs would be seeking something that Defendants would oppose. (*Id*.) To avoid premature and potentially unnecessary motion practice, Defendants' counsel tried to persuade Plaintiffs' counsel that a number of things needed to happen before Plaintiffs could properly file a discovery motion: namely, that Plaintiffs would need to propound discovery, Defendants would need an opportunity to respond to that discovery, and the parties would then need to meet and confer regarding Defendants' responses. (*Id*. ¶ 4.)

*Plaintiffs' counsel informs Defendants that the motion will seek identification of class members.* The next time Plaintiffs' counsel provided any information regarding Plaintiffs' then-anticipated motion was in an e-mail on Thursday, July 17, 2014. (*Id*. ¶ 5, Ex. B.) In that e-mail, Plaintiffs' counsel for the first time indicated that the motion would be for "Apple to Identify Potential Class Plaintiffs," and sought to "confirm" the request would be opposed. (*Id*.) Having advised Plaintiffs' counsel of Defendants' counsel's limited availability at that time (Defendants'

counsel was heading into a hearing in Boston and then flying back to Los Angeles), Defendants' counsel indicated she would respond when she was back in front of her computer. (Patel Decl. ¶ 5, Ex. B)[3] In a separate e-mail that same day, Plaintiffs' counsel also advised that Adkins was in "poor health" and Plaintiffs wanted to "locate the additional names of potential Plaintiffs to substitute for her *if necessary*." (*Id.* ¶ 6, Ex. C (emphasis added).)

*Plaintiffs propound formal discovery seeking documents relating to class members.* The next day (on Friday, July 18, 2014), before Defendants' counsel could confer with her clients and respond to Plaintiffs' counsel, Plaintiffs propounded on each Defendant a single request for production ("RFPs") seeking the information that is the subject of Plaintiffs' motion. (*Id.* ¶ 7, Ex. D.) Defendants' counsel responded, confirming that now that Plaintiffs had propounded formal RFPs, Defendants would review and respond to them as required under the rules. (*Id.* ¶ 8, Ex. E.)

*Plaintiffs file motion to compel class member contact information.* One business day later, on Monday, July 21, 2014, Plaintiffs filed their motion seeking to compel information sought in the RFPs propounded the Friday before. (ECF Nos. 81-83.) After reviewing the motion, on July 28, 2014, Defendants sent Plaintiffs a meet-and-confer letter asking Plaintiffs to withdraw the motion so that the parties could complete the meet-and-confer required under the local rules and this Court's standing order. (Patel Decl. ¶ 9, Ex. F.) Plaintiffs did not respond directly to Defendants, but instead filed a statement with the Court regarding Defendants' request that Plaintiffs withdraw the motion. (*Id.* ¶ 10, Ex. G; ECF No. 89.)

## III.   ARGUMENT

### A.   Plaintiffs Have Filed a Procedurally Improper Motion to Compel

Plaintiffs' motion contravenes the Federal Rules of Civil Procedure, the Local Rules of the Northern District, and this Court's Standing Order for Civil Cases. Contrary to Plaintiffs' contention, Plaintiffs cannot escape the fact that the motion before the Court is a discovery

---

[3] Though not reflected in Plaintiffs' filings, at the time, Plaintiffs' counsel appeared to acknowledge that Defendants' counsel would not be able to respond immediately due to business-related travel. (Patel Decl. ¶ 5, Ex. B.)

motion.[4] The notice of motion plainly states: "Plaintiffs move for an order *compelling* Defendant(s) to identify class members." (ECF Nos. 81, 88 (emphasis added).) In addition, throughout their memorandum, Plaintiffs state they are seeking precertification *discovery*, and the cases they cite discuss instances where courts permitted such discovery (though they did so in entirely distinguishable circumstances). (ECF No. 82.) Before Plaintiffs can file a motion to compel, they must comply with the applicable rules.

### 1. Plaintiffs' Motion Violates Rule 37's Timing Requirements

Federal Rule of Civil Procedure 37(a)(3)(B), which governs motions to compel responses to discovery requests, provides in relevant part that "[a] party seeking discovery may move for an order compelling a . . . production . . . if . . . a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). Plaintiffs' motion seeks to compel information subsumed in RFPs propounded one business day before Plaintiffs filed the motion. (Patel Decl. ¶ 7, Ex. D.)

Under Rule 34, Defendants' responses to the RFPs are due on August 21, 2014, two days after briefing is scheduled to be complete on Plaintiffs' motion. Rule 37 does not include any provision allowing for an order compelling a discovery response before the time to respond has passed. And Plaintiffs' informal request for customer contact information one day before propounding the RFPs does not change the outcome.

### 2. Plaintiffs' Motion Violates Pre-Filing Meet-and-Confer Requirements

Federal Rule of Civil Procedure 37, Civil Local Rule 37-1, and this Court's Standing Order for Civil Cases all require Plaintiffs to meet and confer with Defendants before moving to

---

[4] The fact that Plaintiffs also ask the Court to rule on the second and third step in what is normally a lengthy process that involves significant meet and confer (*i.e.*, form of notice and payment for notice) does not excuse the procedural defects in Plaintiffs' request for the Court to rule on the first step (*i.e.*, precertification disclosure of Apple customer contact information). If anything, these requests are further evidence of the procedural and substantive infirmities in Plaintiffs' motion. As discussed in Sections III(B) & C, *infra*, the scope, breadth, and content of the notice Plaintiffs want to send to millions of Apple customers at Apple's cost before a class certification motion is even on file are contrary to applicable law.

compel.[5] If, after a good faith effort, the parties have not resolved the dispute, the Standing Order further requires the parties to prepare a brief joint statement or, if that is not possible, brief individual statements laying out the dispute and certifying that they have met the meet-and-confer requirement. (Judge Orrick's Standing Order for Civil Cases ¶ 4, effective June 2014.) More formal briefing (*e.g.*, through a motion) or a hearing is only permitted with the Court's leave. (*Id.*)

Here, the first time Defendants learned of the precise subject of Plaintiffs' motion was July 17 — two business days before Plaintiffs filed the motion and one business day before Plaintiffs propounded the RFPs. (Patel Decl. ¶¶ 5, 6, 8, Exs. B, C, E.) Counsel for Defendants advised Plaintiffs' counsel that she was unavailable to meet and confer that day (July 17) due to an out-of-state court appearance and related travel. (*Id.*) Rather than wait for Defendants' counsel to respond after she returned to the office, Plaintiffs propounded the RFPs and filed the motion. (*Id.* ¶ 7, Ex. D; ECF Nos. 81-83.)

After Plaintiffs filed their motion, Defendants asked Plaintiffs to withdraw it, at least until Defendants had formally responded to the RFPs and the parties had completed the meet-and-confer process. In addition, despite being under no formal obligation to do so, Defendants offered to meet and confer with Plaintiffs regarding the information requested in the RFPs before Defendants' deadline to respond, particularly given that the RFPs are broader in scope than the motion and seek documents beyond customer contact information.[6] Plaintiffs did not take Defendants up on their offer, but elected instead to file a "Statement to the Court Regarding

---

[5] Fed. R. Civ. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); Civil L.R. 37-1 ("The court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless . . . counsel have previously conferred for the purpose of attempting to resolve all disputed issues."); Judge Orrick's Standing Order for Civil Cases ¶ 4 ("[L]ead trial counsel for the parties shall meet . . . to attempt to resolve their dispute informally. A mere exchange of letters, e-mails, telephone calls, or facsimile transmissions does not satisfy the requirement to meet and confer.").

[6] *Compare* RFP propounded on Friday, July 18, 2014 (seeking "[a]ny and all documents consisting of, evidencing, referring or relating to any contacts or communications with persons who are potential class members . . . ") *with* Motion filed on Monday, July 21, 2014 (seeking "discovery of the identity of other potential plaintiffs who are part of the affected class" and "their contact information"). (Mot. at 1; Mem. at 3.)

Alleged Discovery Dispute" (the "Statement"). (Patel Decl. ¶ 10, Ex. G; ECF No. 89.) The filing of that Statement neither complies with this Court's Standing Order nor excuses Plaintiffs' failure to comply with the rules.[7] Plaintiffs plainly are not pursuing a valid means of conducting discovery in this Court, and can point to no authority that permits them to make an end-run around the discovery procedures set forth in the rules and the Standing Order.

### B. Controlling Ninth Circuit Authority Requires Denial of Plaintiffs' Motion

Even if the procedural defects can be overlooked or the motion can be construed as something other than a discovery motion, Plaintiffs come nowhere near making the showing that they are entitled to contact information for their entire ill-defined and overbroad proposed class. Plaintiffs rely exclusively on inapplicable and distinguishable California law in support of their motion, failing to cite a single Ninth Circuit case. As discussed below, the Ninth Circuit's reasoning in *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985), controls here, and precludes the discovery Plaintiffs seek. Nor is Plaintiffs' request in any way supported by California law.

#### 1. Plaintiffs Are Not Entitled to Contact Information for the Proposed Class

As Plaintiffs concede, precertification discovery is not a matter of right. *See Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. 2006) ("Prior to certification of a class action, discovery is generally limited and in the discretion of the court."). The Ninth Circuit has made clear that precertification discovery on a classwide basis is not permissible ***unless*** the plaintiff can show that a class action is maintainable or that the discovery is likely to substantiate class allegations. *Mantolete*, 767 F.2d at 1424 ("Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a *prima facie* showing that [Rule 23] class action requirements . . . are satisfied or that discovery is likely to produce substantiation of the class allegations."); *McArdle*

---

[7] Nor does the Statement (or Plaintiffs' motion papers) comply with Civil Local Rule 3-4.

*v. AT&T Mobility LLC*, No. C 09-1117, 2010 U.S. Dist. LEXIS 47099, at *4-5 (N.D. Cal. Apr. 16, 2010) (same).[8]

Here, Plaintiffs do not and cannot make the showing required under *Mantolete*. Plaintiffs claim that precertification discovery is necessary solely because Plaintiffs' counsel "faces having her Named Plaintiffs disqualified." (Mem. at 11.) Specifically, Plaintiffs seek discovery of Apple customer contact information for one purpose: to solicit potential replacement named plaintiffs if Adkins and Galindo are later found to lack standing, withdraw from the case, or are found inadequate to represent the class. None has yet occurred.

In support of their motion, Plaintiffs rely on inapplicable California cases, not controlling Ninth Circuit cases. Under applicable law, Defendants cannot be compelled to identify potential plaintiffs simply because Plaintiffs' counsel believes she may need replacement named plaintiffs in the future. "[S]eeking to add or replace class members is not grounds for discovery of class member identities." *Feske v. MHC Thousand Trails Ltd. P'ship*, No. 11-4124-PSG, 2013 U.S. Dist. LEXIS 37232, at *12 (N.D. Cal. Mar. 18, 2013) (citing *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985) (affirming the district court's denial of plaintiff's attempt to gather names "to solicit support for [counsel's] efforts to certify the class")); *see In re Air Disaster Near Honolulu, Hawaii on Feb. 24, 1989*, 792 F. Supp. 1541, 1551 (N.D. Cal. 1990) ("it is not appropriate for this court to help plaintiffs' counsel round up more clients"). Because Plaintiffs rely on inappropriate grounds to seek potential plaintiffs' contact information, their request should be denied.

Moreover, none of Plaintiffs' cited state court authority supports the use of precertification discovery to identify substitute named plaintiffs when the current named plaintiffs remain in the

---

[8] Notably, some cases Plaintiffs cite are in accord with Ninth Circuit law insofar as they permit production of potential class members' identities where the plaintiffs required such information to support their class allegations. *See Lee v. Dynamex, Inc.*, 166 Cal. App. 4th 1325, 1331 (2008) (sole plaintiff required contact information of similarly situated employees to determine the typicality of his claims and adequacy of his representation); *Belaire-W. Landscape, Inc. v. Super. Ct.*, 149 Cal. App. 4th 554, 557 (2007) (allowing letter to potential plaintiffs soliciting "input as to whether the Plaintiffs' allegations in their lawsuits are accurate"). Plaintiffs, however, do not seek contact information for this purpose.

case.[9]  No issue at all has been raised as to English's standing.  Neither Adkins nor Galindo states she is withdrawing from the case.  Plaintiffs suggest that they may need a replacement for Adkins due to her "old age and poor health," but do not indicate that Adkins intends to or needs to withdraw as a named plaintiff at this time.  (*See* Mem. at 2.)  To the extent there is a genuine concern regarding Adkins' health and Plaintiffs can make the showing required under *Mantolete*, Defendants are willing to meet and confer with Plaintiffs regarding potential substitution.

Furthermore, based on the allegations in the complaint, the Court concluded both Adkins and Galindo had sufficiently alleged Article III standing.  (ECF No. 78.)  In addition, they have not yet been found inadequate to represent the proposed class, though Plaintiffs themselves acknowledge a potential conflict of interest due to the fact that Adkins and Galindo are current or former employees of Plaintiffs' counsel and purchased the Apple devices at issue with a monetary "gift" from counsel.  (Mem. at 2-3.)  Adkins and Galindo have not been deposed yet, and the parties are nowhere near asking the Court to make a determination as to their adequacy as class representatives.[10]  If at some point Adkins and Galindo are no longer viable class representatives, it may then be appropriate for Plaintiffs to obtain discovery of some suitably defined limited group of putative class members.  At this point — long before class certification and before any adequacy determination — such discovery is premature.

---

[9] *Cf. La Sala v. Am. Sav. & Loan Ass'n*, 5 Cal. 3d 864, 871-73 (1971) (leave to substitute a different class representative granted where class certified and named plaintiff deemed not suitable to represent the class); *Best Buy Stores, L.P. v. Super. Ct.*, 137 Cal. App. 4th 772, 774-75 (2006) (plaintiff disqualified because lawyer could not simultaneously serve as class representative and counsel for the class, but permitted to discover class contact information); *CashCall, Inc. v. Super. Ct.*, 159 Cal. App. 4th 273, 279, 284 (2008) (discovery of class member identities permitted where discovery revealed plaintiffs never had standing); *Safeco Ins. Co. of Am. v. Super. Ct.*, 173 Cal. App. 4th 814, 824 (2009) (granting precertification discovery to identify prospective plaintiff where representative plaintiff's claim dismissed on summary judgment).

[10] To the extent the issue of Adkins' and Galindo's adequacy to serve as class representatives is tied to their relationship with Plaintiffs' counsel, it is equally an issue of adequacy of counsel.  *See Apple Computer*, *Inc. v. Super. Ct.*, 126 Cal. App. 4th 1253, 1278-79 (2005) (disqualifying law firm where conflict of interest existed between class representative and law firm, on the one hand, and putative class, on the other hand).

### 2. Plaintiffs' Request Is Overbroad and Unduly Burdensome

Based solely on the possibility that Adkins and Galindo may be disqualified as class representatives or that Adkins may withdraw from the case at some point in the future, Plaintiffs seek to compel disclosure of and notice to anyone who has bought an Apple device and Service Plan in the United States, presumably during the last four years. (*See* Mem. at 7-8; FAC ¶ 67.) In particular, Plaintiffs seek discovery of contact information in the form of e-mail addresses and physical mail addresses for *millions of Apple customers*, and for Apple to pay for notice to each purported class member by e-mail *and* direct mail, to enable Plaintiffs' counsel to solicit additional class representatives. (Mem. at 3; Proposed Opt-Out Notice at 3, ECF No. 83-1; Proposed Opt-in Notice at 2, ECF No. 83-2.) Plaintiffs seek to do so before there has been any class discovery or consideration regarding the appropriate scope of the proposed class. There is no precedent for what Plaintiffs seek.

As explained above, Defendants contend that Plaintiffs are not entitled to any of the purported class members' contact information that Plaintiffs seek. If the Court is inclined to grant Plaintiffs' motion in part, however, then the Court should appropriately limit any such compelled disclosure. Even in cases where courts have permitted some precertification discovery after plaintiffs have made the showing required under *Mantolete* — that the requested discovery is relevant to class certification — district courts in the Ninth Circuit have routinely limited such discovery.

For example, in *Martinet v. Spherion Atlantic Enterprises, Inc*., No. 07cv2178, 2008 U.S. Dist. LEXIS 48113 (S.D. Cal. June 23, 2008), the court limited precertification discovery where a plaintiff sought statewide discovery for 10,000-plus employees because the plaintiff "failed to demonstrate good cause warranting this type of expansive discovery." *Id.* at *6. The *Martinet* court also noted discovery reaching three years prior to plaintiff's employment would be "excessive." *Id.* at *5-6. The court thus found the scope of the request was "over broad and burdensome at this stage in the proceedings" and limited discovery to the office where the plaintiff was employed, and only during the year of his employ. *Id.* at *5.

The problems with Plaintiffs' overbroad request are compounded by the fact that, as currently defined, Plaintiffs' proposed class is fatally overbroad and Plaintiffs are not typical of each other or the class they purport to represent. As alleged, the proposed class includes individuals who purchased an Apple product but did not purchase a Service Plan. (FAC ¶ 67.) The proposed class also includes purchasers of APP, which no named plaintiff purchased, as well as a plethora of Apple devices that no named plaintiff purchased. (*Id.* ¶¶ 11, 34, 42, 53, 67)

Moreover, Plaintiffs' theories of liability remain in flux:

- In the motion and the proposed notice, Plaintiffs describe this case as a **"failure to disclose"** case, namely Apple sold APP and AC+ "without revealing" that the Service Plans permit Apple "(1) to make repairs to malfunctioning or damaged Class Devices with used or reconditioned parts that are not the functional equivalent of new parts, and (2) to replace new Class Devices with used or reconditioned devices that are not the functional equivalent of new devices." (Mem. at 1; Proposed Notice at 1 [ECF Nos. 83-1, 83-2].)[11]

- In contrast, in the complaint and the opposition to Defendants' motion to dismiss, Plaintiffs describe this case as an **"affirmative misrepresentation"** case, namely that Plaintiffs purchased APP and AC+ after being told replacement parts and devices would be "brand new." (*See, e.g.*, FAC ¶¶ 19-24, 29; Opp'n to Defs.' Mot. to Dismiss at 15 [ECF No. 75].)

Clearly, the case is at its nascent stage, further indicating that Plaintiffs' motion seeks too much too soon. At this juncture, there is no justifiable reason to burden Defendants or Apple's customers with the discovery and notice Plaintiffs seek. If and when Plaintiffs can demonstrate they are entitled to customer contact information, Defendants are willing to meet and confer regarding potential disclosure of a narrowly tailored sample of Apple customers.

### C. Plaintiffs' Proposed Notice Letters Constitute Improper Class Notice, Not *Belaire* Notice

Plaintiffs correctly acknowledge that discovery of Apple customers' contact information implicates those individuals' privacy rights, and that notice under *Belaire-West* is therefore warranted to protect those rights. 149 Cal. App. 4th at 558-61. Plaintiffs' proposed notice,

---

[11] To be sure, the Service Plans by their express language ***do not*** permit Apple to use replacement parts or devices that are not new or not equivalent to new. (FAC Ex. B, AC+ Terms and Conditions ¶¶ 3.1, 3.2; *id.* Ex. C, APP Terms and Conditions ¶ 3.1.)

however, is not narrowly tailored to satisfy the requirements of *Belaire*.[12] Instead of apprising Apple customers of their privacy rights in a straightforward manner, Plaintiffs' proposed notice seeks to alert customers to the existence of this lawsuit, provide legal advice, and solicit new class representatives.

Plaintiffs have submitted two similar proposed forms of notice: the first requires Apple customers to affirmatively *opt out* of having their contact information disclosed to Plaintiffs' counsel, while the second requires customers to affirmatively *opt in* to having their information disclosed. (ECF Nos. 83-1, 83-2.) Because Apple customers provided their contact information to Apple for a purpose unrelated to the dispute at hand, they must be protected by an opt-in mechanism if and when such notice is warranted. *See Pioneer Elecs. (USA), Inc. v. Super. Ct.*, 40 Cal. 4th 360, 372 (2007) (finding that customers had a reduced expectation of privacy in their contact information because they had "already voluntarily disclosed their identifying information to that company *in the hope of obtaining some form of relief*" (emphasis added)).

Regardless of the mechanism to be used, the notices as drafted present information in a manner that is inaccurate, biased, and misleading. Both draft notices assume the truth of Plaintiffs' case (which Defendants dispute), strongly suggesting that Plaintiffs' claims are meritorious, even when the statements directly contradict the express terms of the Service Plans they purport to characterize:

- "These sales took place *prior to Apple informing you* that the extended warranty *may subject you* to replacement devices or parts that are used or refurbished." (Proposed Opt-Out Notice at 1 (emphasis added));

- "*It has become known* that Apple has sold these extended warranties *without revealing to consumers* that these extended warranties *permit* Apple (1) to make repairs to

---

[12] As discussed above, Defendants contend Plaintiffs have not made the showing necessary to entitle them to the precertification discovery they seek. Nor have Plaintiffs demonstrated that their need for the information requested justifies the invasion into Apple's customers' privacy. *See Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("When the constitutional right of privacy is involved, the party seeking discovery must demonstrate a compelling need for discovery, and that compelling need must be so strong as to outweigh the privacy right when these two competing interests are carefully balanced.") (citation and quotations omitted). As such, because there is no basis for disclosure of customer contact information, there is no need for *Belaire* notice.

- malfunctioning or damaged Apple devices with *used or reconditioned parts that are not the functional equivalent of new parts . . . .*" (*Id.* (emphasis added));

- "These sales took place *prior to Apple informing purchaser[s]* that the extended warranty *may subject said purchasers* to replacement devices or parts that are used or refurbished." (Proposed Opt-In Notice at 1 (emphasis added).)

The draft notices also solicit new plaintiffs for a breach of warranty claim, which the Court dismissed with prejudice (ECF No. 78): "*Should you wish to join the class action in regards to a breach of warranty claim against the Defendants*, you must first make a claim for repair or replacement under your AppleCare or AppleCare+ extended warranty." (Proposed Opt-Out Notice at 2; Proposed Opt-In Notice at 1 (emphasis added).) These and other statements appearing under the heading "How to Preserve Your Breach of Warranty Claims" are especially troubling. (*E.g.*, Proposed Opt-Out Notice at 2.) These portions of the notice — the cost of which Plaintiffs expect Defendants to bear — provide legal advice to Apple customers regarding the steps they must take "to pursue a breach of warranty claim" against Apple. (*Id.*) They also solicit Apple customers to serve as plaintiffs in unrelated litigation to be brought by Plaintiffs' counsel. (*Id.* ("If you wish to pursue a breach of warranty claim, whether or not you plan to join the lawsuit at this time, Plaintiffs' counsel may be able to assist you.").) Such statements are entirely improper. Moreover, the "advice" Plaintiffs purport to give is unnecessary — customers who have a genuine issue with their devices will necessarily tender them to Apple, thereby fulfilling the notice and tender requirements of warranty law.

If Plaintiffs ever do make the showing necessary for precertification disclosure of contact information and notice thereof, the content of that notice should be factual and neutral, and the product of meet and confer between the parties. *Melgar v. CSK Auto, Inc.*, No. C-13-3769, 2014 U.S. Dist. LEXIS 53217, at *7 (N.D. Cal. Apr. 16, 2014) (ordering parties to meet and confer regarding the form of *Belaire* notice). That meet and confer should also set the ground rules for Plaintiffs' counsel's contact with Apple's customers. *Id.* (ordering the parties to meet and confer regarding the "form, manner, and questions Plaintiff's contact with putative class members will take"). Given the form of the proposed notice, setting such ground rules will be of paramount concern here. *See Benedict v. Hewlett-Packard Co.*, No. 13-cv-0119-LHK, 2013 U.S. Dist.

DEFENDANTS' OPPOSITION TO MOTION TO IDENTIFY CLASS MEMBERS  13
CASE NO. 3:14-cv-01619-WHO
la-1260147

LEXIS 89225, at *8-9 (N.D. Cal. June 25, 2013) (setting parameters for plaintiff's contact with putative class members).

### D. Defendants Should Not Be Required to Pay for Any Notice to the Proposed Class

Plaintiffs cite no legal authority for the proposition that Defendants should bear the cost of the notice where Plaintiffs seek to identify additional class representatives. That is particularly clear here, where Plaintiffs' request is premature and where Plaintiffs seek to provide notice to an overbroad proposed class comprising millions of Apple customers. Moreover, "[t]he usual rule is that a plaintiff must initially bear the cost of notice to the class . . . as part of the ordinary burden of financing his own suit." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178-79 (1974); *see also Thomas v. Baca*, No. CV 04-08448 DDP (SHx), 2005 U.S. Dist. LEXIS 39956, at *5 (C.D. Cal. Dec. 20, 2005) ("The court typically requires the plaintiffs to . . . bear the costs of providing notice."). "In the absence of any support under Rule 23, [Plaintiffs'] effort to impose the cost of notice on [Defendants] must fail." *See Eisen*, 417 U.S. at 178.[13]

Plaintiffs attempt to justify their demand that Defendants pay by referring to Apple Inc.'s market capitalization. (Pls.' Prop. Ltr. to Putative Class Members at 1:10-11, ECF No. 83 ("Plaintiffs further request that *the $589.6 billion dollar Defendants* bear the cost of sending this letter through a third party mailing house to putative class members.") (emphasis added).) The Supreme Court, however, found an abuse of discretion where the district court ordered defendants to pay based in part on a determination that $16,000 was "relatively modest" in comparison to defendants' assets, which exceeded $500 million. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 362 (1978) (concluding "[i]n the context of a lawsuit in which the defendants deny all liability, the imposition on them of a threshold expense of $16,000 to enable the plaintiffs to identify their own class hardly can be viewed as an insubstantial burden"). If any notice is to be

---

[13] California law is in accord. *See Hypertouch, Inc. v. Super. Ct.*, 128 Cal. App. 4th 1527, 1551 (2005) ("Ordinarily it is the plaintiff's responsibility to provide notice and bear the expense of doing so[.]"). None of the circumstances that justify departing from the ordinary rule that Plaintiffs provide notice are present here. *See id.* at 1551-53.

provided at this early stage of the litigation (none is warranted), Plaintiffs must bear the costs. *See id*. at 359 ("[W]e caution that courts must not stray too far from the principle . . . that the representative plaintiff should bear all costs relating to the sending of notice because it is he who seeks to maintain the suit as a class action.").

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety.

Dated: August 12, 2014      MORRISON & FOERSTER LLP

By: /s/ *Purvi G. Patel*
    Purvi G. Patel

*Attorneys for Defendants*
*Apple Inc., AppleCare Service Company,*
*Inc., and Apple CSC Inc.*