1  RENEE KENNEDY (SBN 24012954)
2  Lead Counsel
3  Federal Bar No.: 2129107
4  Appearance *pro hac vice*
5  apple.reneekennedy@gmail.com
6  1620 S. Friendswood Dr., Ste. Apple
7  Friendswood, TX 77546
8  Telephone: 832-428-1552
9
10 SETH W. WIENER (SBN 203747)
11 sethwiener@yahoo.com
12 609 Karina Court
13 San Ramon, CA 94582
14 Telephone: 925-487-5607
15
16 Attorneys for Plaintiffs
17 ADKINS, GALINDO & ENGLISH

18
19
20                           UNITED STATES DISTRICT COURT

21                         NORTHERN DISTRICT OF CALIFORNIA

22                                SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICIA SUE ADKINS, JENNIFER GALINDO, and FABRIENNE ENGLISH, On behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., APPLECARE SERVICE COMPANY, INC., and APPLE CSC INC., <br><br> Defendants. | Case No. 3:14-cv-01619-WHO <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION TO IDENTIFY CLASS MEMBERS** <br><br> Hearing: Sept. 10, 2014 <br> Time: 2:00 p.m. <br> Judge: William H. Orrick <br> Courtroom: 2, 17th Floor <br><br> Complaint Filed: November 4, 2013 <br> Transfer to N.D. Cal.: April 3, 2014 <br> Trial Date: None Set |

23
24

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................................. iii

**I. STATEMENT OF FACTS** ............................................................................................................. 1

**II. ARGUMENT AND AUTHORITIES** ........................................................................................... 2

    **A)**     **Plaintiffs' Motion Is Not Procedurally Improper** ................................................................. 2

    **B)**     **Ninth Circuit Authority Does Not Require Denial of Plaintiffs' Motion** .............................. 4

        *1.*     *The California Cases Relied on are Neither Inapplicable Nor Distinguishable* ...................... 4

        *2.*     *Even Under the Defendants' Cited Ninth Circuit Authority, Plaintiffs are Entitled to Contact Information of the Proposed Class in Order to Resolve Factual Issues Necessary to Substantiate Class Allegations* ................................................................................................. 6

        *3.*     *Plaintiffs' Requested Discovery is Not Overly Broad or Unduly Burdensome* ..................... 10

    **C)**     **Proposed Letters are Proper *Belaire* Notice** ........................................................................ 11

    **D)**     **The Cost of Sending Precertification Notice Should be Shifted to Defendants**……………14

**III. CONCLUSION** .............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)……………………………………………………………………..7

*Babbitt v. Albertson's, Inc.*,
    No. C-92-1883 SBA (PJH), 1992 WL 605652 (N.D. Cal. Nov. 30, 1992)……………………6, 11

*Belaire-West Landscape v. Superior Court*,
    149 Cal. App. 4th 554 (2007)......................................................................................11

*CashCall, Inc. v. Superior Court*,
    71 Cal. Rptr. 3d 441 (Cal. Ct. App. 2008)....................................................................12

*Crawford v. Equifax Payment Services, Inc.*,
    201 F.3d 877 (7th Cir. 2000)……………………………………………………………7

*Doninger v. Pacific Northwest Bell, Inc.*,
    564 F.2d 1304 (9th Cir. 1977)……………………………………………………………7

*Feske v. MHC Thousand Trails Ltd. P'ship*,
    11-CV-4124-PSG, 2012 WL 1123587 (N.D. Cal. Apr. 3, 2012)……………….……………10, 14

*Flores v. Bank of America, Dist. Court*,
    No. 11-1817-JM (WVG) (S.D. Cal. Dec. 27, 2012)…………………………………………...11

*Gates v. Dalton*,
    67 F.R.D. 621 (E.D.N.Y.1975)……………………………………………………………...14

*Gen. Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982)……………………………………………………………………..8

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89, 102 (1981)……………………………………………………………………..10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)……………………………………………………………..8

*Henry v. Cash Today, Inc.*,
    199 F.R.D. 566 (S.D. Tex. 2000)……………………………………………………………..7

*Kamm v. California City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975)……………………………………………………………..10

*Lee v. Dynamex, Inc.*,
    166 Cal. App. 4th 1325 (2008)........................................................................................4, 5

*Martinet v. Spherion Atl. Enters., LLC*,
    No. CIV. 07CV2178 W AJB, 2008 WL 2557490 (S.D. Cal. June 23, 2008)……………………11

*McArdle v. AT & T Mobility LLC*,
    No. C 09-1117 CW (MEJ), 2010 WL 1532334 (N.D. Cal. Apr. 16, 2010)…………………4, 6, 13

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999)………………………………………………………………......8

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)…………………………………………………………………………...6, 14

*Perez v. Safelite Grp. Inc.*,
    553 F. App'x 667 (9th Cir. 2014)........................................................................................6

*Pioneer Elecs. v. Superior Court*,
    150 P.3d 198 (Cal. 2007)..................................................................................................4, 13

*Popkin v. Wheelabrator-Frye, Inc.*,
    20 Fed.Rules Serv.2d 125 (E.D.N.Y.1975)……………………………………………………14

*Roshandel v. Chertoff*,
    554 F. Supp. 2d 1194 (W.D. Wash. 2008)……………………………………………………3

*Sanbrook v. Office Depot*,
    No. C07-5938RMWPVT, 2009 WL 840019 (N.D. Cal. Mar. 30, 2009)…………………………5

*Sandres v. Corr. Corp of Am.*,
    No. 1:09-CV-01609, 2011 WL 475068 (E.D. Cal. Feb. 4, 2011)………………………………...13

*Ste. Marie v. Eastern R. Assn.*,
    72 F.R.D. 443 (S.D.N.Y.1976)………………………………………………………………...14

*Tomassi v. City of Los Angeles*,
    No. CV 08-1851 DSF SSX, 2008 WL 4722393 (C.D. Cal. Oct. 24, 2008)……………………4, 6

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009)……………………………………………………………..6, 7, 10

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)…………………………………………………………………….8

**Statutes**     **Page(s)**

Federal Rules of Civil Procedure Rule 23(a)……..…………………………………………………...7
Federal Rules of Civil Procedure Rule 23(b)(3)………………………………………………………...7
Federal Rules of Civil Procedure Rule 23(d)(1)(B)……………………………………………………...2

1                                       **MEMORANDUM OF POINTS AND AUTHORITIES**

2                                               **I. STATEMENT OF THE FACTS**

3         While Plaintiffs propose sending out a precertification notice on the grounds that one of the

4 Plaintiffs is ill and desires to withdraw, and further on the grounds that Defendants have made it

5 reasonably clear that an attack of the appropriateness of all of the Plaintiffs is shortly forthcoming, those

6 are not the sole grounds for Plaintiffs seeking precertification notice at this time. It is true that the health

7 of Plaintiff Adkins is a pressing issue and foremost in Plaintiffs counsel's concerns. Defendants stated in

8 their Opposition that "To the extent there is a genuine concern regarding Adkins' health and Plaintiffs can

9 make the showing required under *Mantolete*, Defendants are willing to meet and confer with Plaintiffs

10 regarding potential substitution." *See,* **ECF No. 91**, pg 9, ln 4-6. Plaintiffs dispute that the case law

11 supports an <u>absolute</u> requirement of showing a prima facie case; however, as will be shown below,

12 Plaintiffs can and have made the showing <u>suggested</u> under *Mantolete*.

13         Having stated that they would be willing to consider a substitution should proof be put forth as to

14 Plaintiff Adkins' ill health and desire to withdraw, Plaintiffs hold Defendants to that statement. There is

15 no reason the parties cannot confer prior to the hearing and reach some resolution as to this particular

16 aspect of Plaintiffs' Amended Motion to Identify Class Members. As the final form of any notice would

17 need Court approval, the final details could be determined at the hearing. Attached as **Exhibit A** is

18 Plaintiff Adkins' Affidavit in support of Plaintiffs' Reply, setting forth that she is in ill health and desires

19 to withdraw from the case, if a suitable substitute is found. Plaintiff Adkins wishes it to be made clear

20 however, that if the Court does not allow Plaintiffs to send the requested precertification notice, thus

21 potentially finding another senior citizen who could safeguard the rights of senior citizens as a class

22 representative, she will not withdraw from the case.

23         Defendants have attempted to classify Plaintiffs' Amended Motion to Identify Class Members as

24 discovery, requiring compliance with the Federal and Local Rules governing discovery, such as Federal

1  Rules of Civil Procedure Rule 37.  This classification is incorrect.  As will be shown below, this motion is
2  a request for precertification notice, which is allowed pursuant to Fed.R.Civ.Proc. Rule 23(d)(1)(B).
3        Even if the Court finds that the requested relief is a form of discovery that must comply with Rule
4  37, Plaintiffs' counsel made every attempt to confer with Defendants' counsel.  Despite Defendants'
5  counsel's assurances that she would substantially respond regarding Plaintiffs' Motion, she failed to do
6  so.  *See*, **ECF 91 Decl. of Patel, Exh. B, pg 10** (Ms. Patel stated "I'll respond to this email as soon as I am
7  in front of my computer again."; She never did.)  While the emails attached to Defendants' Opposition
8  speak for themselves, the Defendants' portrayal of the telephone conversation between counsel on July
9  17, 2014, is inaccurate.  Plaintiffs' counsel specifically told Defendants' counsel that they would be filing
10  a motion seeking to identify additional class plaintiffs, due to Defendants' counsel Penelope Preovolos'
11  statement to the Court at the hearing on June 25, 2014 that Defendants would be attacking Plaintiffs'
12  standing.  Further, counsel had more than one conversation regarding this matter, including the fact that
13  Defendants were unlikely to produce the contact information absent a court order.  Plaintiffs should not
14  be penalized for Defendants' counsel's lack of willingness to communicate.

15  <center>**II. ARGUMENT AND AUTHORITIES**</center>

16  **A)**     **Plaintiffs' Motion Is Not Procedurally Improper**
17
18        Plaintiffs' Amended Motion to Identify Class Members is not a discovery motion.  Defendants'
19  attempt to classify it as such is merely an attempt to avoid having to defend the motion on its substantive
20  grounds.  Defendants' focus on Plaintiffs alleged failure to comply with the Federal and Local Rules
21  governing discovery is an attempt to misdirect where the focus truly should be.  This motion is a request
22  for precertification notice, which is allowed pursuant to Federal Rule of Civil Procedure 23(d)(1)(B).
23        In addition to the more utilized certification, settlement, and fee notices set out in Rule 23, this
24  Rule also provides a statutory mechanism for providing notice in a wide range of other circumstances.
25  Specifically, Rule 23(d)(1)(B) states that courts may issue orders that:

1	(B) require—to protect class members and fairly conduct the action—giving appropriate notice to
2	some or all class members of:
3	(i) any step in the action;
4	(ii) the proposed extent of the judgment; or
5	(iii) the members' opportunity to signify whether they consider the representation fair and
6	adequate, to intervene and present claims or defenses, or to otherwise come into the
7	action.
8	While Courts have rarely discussed this non-exhaustive list, one instance where the Rule has been
9	invoked is when the court wants to notify class members of an opt-out right. Plaintiffs' Proposed Notice
10	Letter A provides for an opt-out notice. *See*, **ECF No. 83-1**. Courts have sent notice under Rule
11	23(d)(1)(B) to inform class members of an opt-out right not otherwise provided for by Rule 23,
12	particularly when hybrid classes or other fairness concerns may be at issue. *See, e.g., Roshandel v.*
13	*Chertoff*, 554 F. Supp. 2d 1194, 1204–05 (W.D. Wash. 2008), amended in part, 2008 WL 2275558 (W.D.
14	Wash. 2008)(providing members of a (b)(2) class action notice of an opt-out right because participation in
15	the class action could delay class members' individual naturalization decisions). Given the potentially
16	very large class and the nature of Plaintiffs' claims, fairness concerns are an issue in this case.
17	Due to the reputation that Defendants enjoy within the electronic device market, many consumers
18	would be shocked by the nature of Plaintiffs' claims, which allege, among other things: that Defendants
19	engaged in an unlawful, unfair, and fraudulent practice, scheme, and/or plan to sell electronic devices and
20	extended warranties without revealing to consumers prior to these sales that the extended warranties
21	permit Defendants (1) to make repairs to malfunctioning or damaged Class Devices with used or
22	reconditioned parts that are not the functional equivalent of new parts, and (2) to replace new Class
23	Devices with used or reconditioned devices that are not the functional equivalent of new devices.
24	Precertification notice in this case is necessary in order to bring these fraudulent and unfair practices to
25	the attention of unsuspecting consumers.

1    Plaintiffs' Amended Motion to Identify Class Members should be governed by and tested against

2    the standards set forth under Rule 23(d)(1)(B), not Rule 37. Plaintiffs invoke Rule 23(d)(1)(B) in order to

3    notify putative class members of their right to opt-out, should the Court choose that version of the notice.

4    Given that some of Plaintiffs' claims have been dismissed with prejudice, primarily the breach of

5    warranty claims, many potential class members may realistically want to opt-out and pursue these claims.

6    **B)    Ninth Circuit Authority Does Not Require Denial of Plaintiffs' Motion**

7    Even if the Court deems that the relief requested in Plaintiffs' Amended Motion to Identify Class

8    Members is in fact precertification discovery, Plaintiffs maintain that the relief requested is appropriate

9    and necessary.

10    *1. The California Cases Relied on are Neither Inapplicable Nor Distinguishable*

11    Defendants argue that the California state law cited in Plaintiffs' Motion to Identify Class

12    Members and briefs in support thereof is "inapplicable" to the present federal case. *See*, **ECF No. 90** at 7,

13    8. However, many Ninth Circuit cases look to California state law in deciding precertification discovery

14    issues. *See, e.g.*, *Tomassi v. City of Los Angeles*, No. CV 08-1851 DSF SSX, 2008 WL 4722393 (C.D.

15    Cal. Oct. 24, 2008)(citing two California cases, *Pioneer Elecs., Inc. v. Superior Court*, 150 P.3d 198 (Cal.

16    2007) and *Lee v. Dynamex, Inc.*, 166 Cal. App. 4th 1325 (2008), in support of the notion that

17    precertification discovery of putative class members does not always violate the privacy rights of these

18    potential class members.); *Sanbrook v. Office Depot*, No. C07-5938RMWPVT, 2009 WL 840019 (N.D.

19    Cal. Mar. 30, 2009)(citing *Pioneer Elecs.*, 150 P.3d at 205 in support of the notion that contact

20    information for class members is generally discoverable); *McArdle v. AT & T Mobility LLC*, No. C 09-

21    1117 CW (MEJ), 2010 WL 1532334, at *2 (N.D. Cal. Apr. 16, 2010)(citing *Pioneer Elecs.*, 150 P.3d at

22    205 ("in determining whether to permit disclosure of putative class members' contact information, the

23    Court must weigh Plaintiff's need for disclosure against Defendants' privacy concerns in their customers'

24    information.")). To this end, Plaintiffs cannot agree with Defendants' contention that the California cases

25    relied on are inapplicable to the present case.

Defendants further argue that the California cases relied on are distinguishable from the present case. *See*, **ECF No. 90** at 8–9. Specifically, Defendants assert that "none of Plaintiffs' cited authority supports the use of precertification discovery to identify substitute named plaintiffs when the current named plaintiffs remain in the case." *Id.* However, this contention is wrongheaded. To the extent that Plaintiffs' Motion to Identify Class Members was apparently based only on the possibility of the Named Plaintiffs being disqualified, Plaintiffs wish to clarify their position. Plaintiffs also seek precertification discovery in order to aid in the class certification process, not only to discover potential substitute plaintiffs. To this end, the state law cited in support of Plaintiffs Motion to Identify Class Members is not distinguishable.

For instance, in *Lee v. Dynamix*, the named plaintiff Lee did not lack standing to bring a class action suit and was in fact remaining in the case. *Lee v. Dynamix,* 166 Cal. App. 4th 1325 (2008). Nonetheless, Lee requested production from defendants of the names and addresses of other potential class members. *Id.* at 1330. It is worth noting that this request for production occurred "shortly after the complaint was filed." *Id.* The defendants refused this discovery, and Lee moved to compel disclosure. *Id.* at 1330–1331. At a hearing on the motion, the trial court held that Lee's motion was "premature" and as such would not compel disclosure until after class certification. *Id.* at 1331. When Lee moved for class certification, the trial court denied it based on a lack of community of interest and a lack of typicality of Lee's claims, among other things. *Id.* at 1333, 1336. The appeals court, however, found that Lee was never afforded an opportunity to meet his certification burden and as such held that the trial court abused its discretion in denying Lee's motion to discover potential class members. *Id.* at 1336, 1338 ("Because of the trial court's erroneous discovery order, Lee lacked the means to develop evidence capable of supporting his motion for class certification.").

The facts of *Lee v. Dynamix* are substantially similar to the present case. Here, any or all of the Named Plaintiffs (Adkins, English, and Galindo) may or may not be disqualified as class representatives, but *Lee* exemplifies the notion that one may be a suitable class representative and nonetheless seek precertification discovery of potential class members' contact information. *See id.* at 1338. As in *Lee*,

here precertification discovery is needed in order to gather adequate information for Plaintiffs to support a forthcoming motion for class certification. *Id.* This is especially the case when, as in *Lee*, here the Defendants have resisted requests for production of class members' contact information. For these reasons, Plaintiffs disagree with Defendants' position that the cases cited in support of Plaintiffs' Motion to Identify Class Members are distinguishable or irrelevant to the present action.

### 2. Even Under the Defendants' Cited Ninth Circuit Authority, Plaintiffs are Entitled to Contact Information of the Proposed Class in Order to Resolve Factual Issues Necessary to Substantiate Class Allegations

It is undisputed that Ninth Circuit authority recognizes the availability of precertification discovery. *See, Perez v. Safelite Grp. Inc.*, 553 F. App'x 667, 669 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Mar. 7, 2014); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009); *Babbitt v. Albertson's, Inc.*, No. C-92-1883 SBA (PJH), 1992 WL 605652 (N.D. Cal. Nov. 30, 1992); *Tomassi*, 2008 WL 4722393 (holding that plaintiffs were entitled to precertification class discovery in order to identify potential class members' names and addresses); *McArdle*, 2010 WL 1532334. This precertification discovery is generally limited to certification issues. *See*, *Babbitt,* 1992 WL 605652 ("*e.g.,* the number of class members, the existence of common questions, typicality of claims, representative's ability to represent the class, etc.")(citing, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978)).

Defendants have presented the state of the law in the Ninth Circuit as absolutely requiring a prima facie showing that class treatment is appropriate before allowing discovery on issues pertaining to class certification, based on the *Mantolete* case. That is not an accurate depiction; and even if it were, Plaintiffs can and have made such a showing. More recently than the *Mantolete* case, in the *Vinole* case, the Ninth Circuit surveyed its prior case law regarding pre-certification discovery (including *Mantolete*) and concluded as follows: "Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.,*571 F.3d 935, 942 (9th Cir. 2009). The Ninth Circuit explained that

"[d]istrict courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court." *Vinole,* 571 F.3d at 942.

The Ninth Circuit cautioned however, that "'the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action is maintainable.'" *Id.* (quoting, *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977). Plaintiffs seek certification pursuant to FED. R. CIV. P. Rule 23(a), which contains four threshold requirements - "numerosity," "commonality," "typicality," and "adequacy." Precertification discovery is necessary to further Plaintiffs' claims, although Plaintiffs' First Amended Complaint has already plead a prima facie case for certification pursuant to Rule 23(a).

Plaintiffs are also seeking certification pursuant to Rule 23(b)(3), which states that "a class action may be maintained if Rule 23(a) is satisfied and if . . .[t]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. Rule 23(b)(3). The Supreme Court has noted that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Regarding superiority, class actions are the best means of litigating "small-stakes cases." *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 573 (S.D. Tex. 2000)(citing *Crawford v. Equifax Payment Services, Inc*., 201 F.3d 877, 880 (7th Cir. 2000)). Even though purchases of Class Devices exceed $100.00 in most cases, the claims of each individual class member in this case will be relatively small. Absent a class action, most members of the proposed class likely would find the cost of litigating their claims to be prohibitive. Plaintiffs' proposed class satisfies the predominance and superiority requirements.

FED. R. CIV. P. Rule 23(a) sets out four threshold requirements for class certification. A class will be certified if a plaintiff can establish that: (1) the class is so *numerous* that joinder of all members is *impracticable*; (2) there are questions of law or fact *common* to the class; (3) the claims or defenses of the representative parties are *typical* of the claims or defenses of the class; and (4) the representative parties

1    will fairly and *adequately* protect the interests of the class.  FED. R. CIV. P. Rule 23(a)(emphasis added).

2    Some of these threshold requirements are more easily established than others.

3    As to numerosity, there are millions of potential class members who purchased APPLE's Class Devices and/or Extended Warranties, including but not limited to since the launch of the first generation iPhone in June 2005.  As of June 2012, over 250 million iPhones had been sold worldwide, generating over $150 billion in revenue.  *See,* **Exhibit B** - http://www.macrumors.com/2012/06/27/iphone-turning-five-years-old-with-250-million-units-sold-150-billion-in-revenue/.  APPLE announced that it sold a record "nine million new iPhone 5s and iPhone 5c models, just three days after the launch of the new iPhones on September 20[, 2013]".  *See,* **Exhibit C** - *First Weekend iPhone Sales Top Nine Million, Sets New Record*, APPLE PRESS INFO (September 23, 2013), *available at,* http://www.apple.com/pr/library/2013/09/23First-Weekend-iPhone-Sales-Top-Nine-Million-Sets-New-Record.html.  These numbers are only referring to iPhones, not all of the Class Devices.

13   Commonality will not be difficult to show in this case.  "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule." *See, Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Further, commonality will be met when the class members' claims depend on a "common contention" and "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 2556 (2011).  As set out in Plaintiffs' First Amended Complaint, the allegations against Defendants are based on purchases of Class Devices and/or Extended Warranties that will be virtually identical across the class.  Damages, too, may be calculated using Defendants' own records. However, precertification discovery is needed in order to establish that putative class members do indeed have a "common contention".

22   Plaintiffs' claims are typical of the claims of all class members.  *See*, FED. R. CIV. P. 23(a)(3). Like the commonality prong, "the test for typicality is not demanding." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *See also, Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) ("[t]he commonality and typicality requirements of Rule 23(a) tend to merge.").  Like the Named-Plaintiffs, countless consumers were provided with a replacement Class Device pursuant to an Extended

Warranty which was neither "new" nor "functionally equivalent of a new device," despite affirmative representations by Defendants and its agents to the contrary, and thus suffered economic loss by receiving a replacement device that was of a standard different than that promised. The factual and legal bases of the misconduct by the Defendants are common to all members of the Class and represent a unifying and common plan of fraud and other misconduct resulting in injury to Plaintiffs and to all members of the Class. Precertification discovery is needed in order to identify and quantify the consumers who suffered losses of this nature.

Defendants have presented the state of the law in the Ninth Circuit as absolutely requiring a prima facie showing that class treatment is appropriate before allowing discovery on issues pertaining to class certification. That is not an accurate depiction; and even if it were, Plaintiffs can and have made such a showing. This case is far beyond a nascent stage. Defendants filed a comprehensive motion to dismiss, seeking dismissal of all of the Plaintiffs' claims, including their class allegations. The Court dismissed some of the claims, but the majority of Plaintiffs' claims remain intact. Plaintiffs have therefore plead a prima facie case and it has survived a motion to dismiss.

Especially after *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), which require greater specificity in pleading, class counsel should be permitted to pursue reasonable discovery regarding potential class members after a motion to dismiss is denied. The mere possibility of abuse, without evidence that class counsel engaged in or plans to engage in such abuse, is insufficient to block all communications with potential class members. *See, Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 (1981).

Further, the First Amendment rights of Plaintiffs counsel cannot be restricted at this stage of the case. The Supreme Court found that class counsel in Rule 23 class actions must be permitted communications with potential class members for the purpose of notification and gathering information, even prior to class certification. *See, Gulf Oil Co.,* 452 U.S. at 101–02.

In the present case, Plaintiffs need the contact information of Apple customers in order to substantiate class allegations. Primarily, Apple customers' contact information is needed to discover the

identities of those who purchased AppleCare and AppleCare+ extended warranties, which consumers received repaired or refurbished units, which consumers received used units, and which consumers received new units under the AppleCare or AppleCare+ extended warranties. This is information which only Defendants have reasonable access to and which is solely in the province of the Defendants.

This is a case where the pleadings alone, without any corroborating testimony or information provided by potential class members, will not be sufficient to resolve issues of class certification (i.e., the numbers in the affected class, the circumstances of the purchase, etc.), and a denial of Plaintiffs' discovery request would be an abuse of this Court's discretion. *See, Vinole*, 571 F.3d at 942; *Kamm v. California City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

Plaintiffs contend that the discovery sought is especially relevant in that the putative class members are percipient witnesses of, at a minimum, what representations Defendants made and how those representations induced purchases of the Extended Warranties. More importantly, the discovery sought is reasonably calculated to lead to admissible evidence on the central question of whether Defendants' representations about their Extended Warranties were common across the putative class. Even if future document production by Defendants will shed light on this question, so, too, would discovery from the other parties to those same representations—Defendants' customers. "This is not a case of identical discovery but rather a case of an identical issue—what did Defendants represent to each of the putative class members—being illuminated by different sources with perhaps very different evidence. Under these circumstances, courts have not hesitated to allow class plaintiffs the opportunity to contact customers in pursuit of the evidence they will be asked to tender in order to certify a class or prevail on the merits." *Feske v. MHC Thousand Trails Ltd. P'ship*, 11-CV-4124-PSG, 2012 WL 1123587 at *2 (N.D. Cal. Apr. 3, 2012).

### 3. *Plaintiffs' Requested Discovery is Not Overly Broad or Unduly Burdensome*

Plaintiffs maintain that their discovery request is not overly broad or unduly burdensome, as characterized by the Defendants. *See*, **ECF No. 90** at 10. While it is in the discretion of this Court to limit

1 discovery requests, the present action is distinguishable from cases where precertification discovery is
2 limited. S*ee, Martinet v. Spherion Atl. Enters., LLC*, No. CIV. 07CV2178 W AJB, 2008 WL 2557490
3 (S.D. Cal. June 23, 2008). For instance, Defendants direct this Court to consider *Martinet v. Spherion*
4 *Atlantic Enterprises, Inc.*, a case where discovery was limited because the plaintiff "failed to demonstrate
5 good cause warranting this type of expansive discovery." *Id.* at *2. In *Martinet*, the plaintiff could not
6 adequately represent the defined class of roughly 10,000 employees because each position "ha[d] its own
7 unique set of practices, procedures and operative employment documents based upon the position's job
8 description and the particular industry or area of employment." *Id.* The court accordingly found that
9 plaintiff was without good cause to warrant discovery of these 10,000 employees. *Id.*

10 Unlike the plaintiff in *Martinet*, here Plaintiffs request discovery of potential class members who
11 were subject to the same unlawful, unfair, and fraudulent practice, scheme, and/or plan engaged in by
12 Defendants to sell electronic devices and extended warranties. Each potential plaintiff of the proposed
13 class is in substantially the same situation as the others, and as such the discovery request is not
14 "expanding beyond the class as defined in the complaint." *See, Flores v. Bank of America, Dist. Court*,
15 No. 11-1817-JM (WVG) (S.D. Cal. Dec. 27, 2012)(citing, *Martinet*, 2008 WL 2557490). Although the
16 potential class is large, Plaintiffs need this discovery in order to substantiate class certification; the contact
17 information requested is essential to the discovery of numerosity, commonality, and typicality. *See,*
18 *Babbitt,* 1992 WL 605652. As such, the Plaintiffs' requested discovery is no more broad or burdensome
19 than necessary for substantiating class certification.

20 **C) Proposed Letters are Proper *Belaire* Notices**
21 Defendants assert that Plaintiffs' proposed letters are not narrowly tailored to meet the
22 requirements of *Belaire*. *See generally, Belaire-West Landscape v. Superior Court*, 149 Cal. App. 4th 554
23 (2007). Defendants further assert that "the notices as drafted present information in a manner that is
24 inaccurate, biased, and misleading." **ECF No. 90** at 12. Defendants highlight a number of sentences from
25 the proposed letters and object to their wording, but do not cite to *any* case law that indicates *why* that
26 wording is objectionable. Nor do Defendants present their own proposed notice letter, which would have

gone a long way towards reaching resolution on this issue in advance of the hearing. Defendants complain of a failure to meet and confer, and yet make no attempt to contribute to that process.

Plaintiffs' proposed letters are in fact right in line with the one approved by the court in *Belaire*. The notice the court ordered Belaire–West to send to all its current and former employees contained the following elements:

- advised potential class members of the lawsuit and its core allegations, and explained who may be a member of the proposed class. (*Compare,* ECF No. 83-2, pg 1 para 3 & 4.)

- described the investigation plaintiffs' attorneys were performing, and stated that to assist in the investigation, the attorneys for the Plaintiffs wished to gather information regarding the circumstances alleged that may have occurred to the potential class members. (*Compare,* ECF No. 83-2, pg 1 para 1.)

- sought to obtain names, addresses and telephone numbers, so that plaintiffs' attorneys could communicate with them about the allegations made in the lawsuit. (*Compare,* ECF No. 83-2, pg 2 para 2.)

- advised them that they could elect not to provide their address and/or telephone number to Plaintiffs' counsel on the grounds of privacy. (*Compare,* ECF No. 83-2, pg 1 para 2.)

- advised them that the Plaintiffs' lawyers would like to contact them to obtain their input as to whether the Plaintiffs' allegations in their lawsuit are accurate. (*Compare,* ECF No. 83-2, pg 1 para 1.)

- included the names, addresses, and telephone numbers of plaintiffs' counsel, with the information that recipients had the right to contact plaintiffs' counsel. (*Compare,* ECF No. 83-2, pg 2.)

*See, Belaire-West Landscape*, 149 Cal. App. 4th at 557.

Not only do Plaintiffs' proposed notices stay within the parameters set by *Belaire*, but Plaintiffs' second proposed notice closely tracks the notice letter allowed in *CashCall*, which was held to be in compliance with *Belaire*, among other cases. *See,* **Plaintiffs' Exhibit D, CashCall Order**; *CashCall, Inc. v. Superior Court*, 71 Cal. Rptr. 3d 441 (Cal. Ct. App. 2008). Therefore, the content of Plaintiffs' proposed notices is not improper. Defendants merely do not like to see the allegations against them set forth in this manner, pending dispersal to their customers.

Defendants also maintain that only an opt-in notice would be proper, when in fact in some instances an opt-out notice is appropriate. In *Pioneer Electronics (USA), Inc.,* the California Supreme Court reasoned that the privacy interests of putative class members were adequately protected by an opt-out notice that was mailed in advance of the defendant providing the contact information. *Pioneer Electronics (USA), Inc. v. Superior Court,* 40 Cal.4th 360, 373 (2007). The California Supreme Court rejected the argument that putative class members should be required to opt-in because that "could have potentially adverse effects in cases brought to redress a variety of social ills, including consumer rights litigation." *Id.* at 374.

Further, Defendants assert that Apple customers' privacy rights outweigh the Plaintiffs' need for discovery. *See*, **ECF No. 90** at 12, n.12. While it is true that the consumers' privacy rights must be weighed against the Plaintiffs' need for disclosure, it is also true that disclosure of contact information voluntarily disclosed by consumers is not a serious invasion of privacy, especially if consumers are given a chance to opt out of such disclosure. *See, McArdle*, 2010 WL 1532334 at *3 (citing, *Pioneer Elecs.*, 150 P.3d at 204). Under both Ninth Circuit and California case law, the disclosure requested by Plaintiffs does not constitute a serious privacy violation, and the need for disclosure easily outweighs any privacy concerns that may exist. *See, McArdle* at *4, *6 (upholding disclosure of contact information even without giving consumers a chance to "opt out" of such disclosure); *see also, Pioneer Elecs*. 150 P.3d at 204–07; *Sandres v. Corr. Corp of Am.*, No. 1:09-CV-01609, 2011 WL 475068 (E.D. Cal. Feb. 4, 2011)("Though personal identifying information is 'entitled to some privacy protection,' disclosing it is not a serious invasion of privacy.).

Though Defendants claim the privacy of putative class members will be invaded by disclosing their names and contact information, "that protection is qualified not absolute. The right of privacy must be balanced against the need for discovery. Here, while putative class members have a legally protected interest in the privacy of their contact information, that interest must be considered along with their role as witnesses to the representations at the heart of this case. Between the two extremes of burdening all

100,000–plus members, and none of them, the balance is appropriately struck by allowing Plaintiffs discovery of a statistical significant sample of members." *Feske,* 2012 WL 1123587 at *2 (internal citations omitted).  Like the *Feske* case, should the Court find that Plaintiffs' motion to identify potential class members is overly broad or burdensome, an appropriate balance should be struck between not allowing any precertification discovery and allowing unfettered discovery.

**D)        The Cost of Sending Precertification Notice Should be Shifted to Defendants**

While the Supreme Court's 1974 decision in the *Eisen* case created the default rule that the party seeking to certify a class (typically the plaintiff) must pay for notice of class certification, four years later the Supreme Court authorized lower courts to shift these costs to defendants in a variety of circumstances. In *Oppenheimer Fund, Inc. v. Sanders*, the Court held that "[W]here a defendant can perform one of the tasks necessary to send notice, such as identification, more efficiently than the representative plaintiff, the district court has discretion to order him to perform the task under Rule 23(d). In such cases, the district court also has some discretion in allocating the cost of complying with its order." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978).

Costs could be shifted, the Court held, if they would be **substantially** more for the plaintiffs than the defendant.  For example, the Court suggested that the costs of producing files for inspection or including notice in a regularly scheduled mailing already done by the defendant could be shifted.  *See*, *Oppenheimer Fund, Inc.*, 437 U.S. at 359.  For instance, a number of courts have required defendants in Rule 23(b)(3) class actions to enclose class notices in their own periodic mailings to class members in order to reduce the expense of sending the notice.  *See, e.g., Ste. Marie v. Eastern R. Assn*., 72 F.R.D. 443, 450 n. 2 (S.D.N.Y.1976); *Gates v. Dalton*, 67 F.R.D. 621, 633 (E.D.N.Y.1975); *Popkin v. Wheelabrator-Frye, Inc.*, 20 Fed.Rules Serv.2d 125, 130 (E.D.N.Y.1975).

The costs of sending the precertification notice in this case should be shifted to Defendants. Defendants have easy access to their customers' contact information, both email and physical addresses. In fact, Defendants encourage customers to provide them with an email for a variety of reasons.  As highlighted in Plaintiffs' First Amended Complaint, most customers do not even receive a printed out

receipt for purchases of devices or purchases of extended warranties. These receipts are sent via email. Defendants regularly email their customers with technology updates, changes in terms and conditions, and sales information. Defendants could easily create a comprehensive list of contact information, including email addresses, using their existing databases. Even if Defendants object to sending this notice directly to their customers, it could be provided to a third party mailing house, which could then email the precertification notice to the putative class members. Defendants would necessarily need to provide the information in a format prescribed by the mailing house. If Defendants elected to send the notice directly to their customers, some sort of oversight by the third party mailing house, Court and/or Plaintiffs would need to be in place.

It would be substantially more costly for Plaintiffs to contact the putative class members. Further, the costs associated with Defendants producing their customers' contact information in whichever format they choose, and then Plaintiffs converting that information into email format and/or a mailing list of the type usable by a third party mailing house, are substantially more than if Defendants created a comprehensive list of contact information, including email addresses, using their databases.

Finally, an emailed precertification notice is the most efficient and economical approach in this case. Particularly if the notice includes a link to a website that contains the forms allowing putative class members to opt-in or opt-out (depending on the version approved by the Court) of receiving further communications, or to elect to contact Plaintiffs' counsel. Some of Defendants' concerns could be alleviated by emailing a short version of the notice, with a link to the full version. *See*, **Exhibit E, Proposed Short Version Notice Email**.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Amended Motion to Identify Class Members. Such an order is necessary to aid Plaintiffs in substantiating forthcoming class certification. Any perceived procedural defects should not outweigh the rights of Plaintiffs and Plaintiffs' counsel in contacting putative class members. Also, as set forth above, the cost of sending precertification notice in this particular instance should be shifted to Defendants.

Dated: August 19, 2014 Respectfully submitted,

Plaintiffs, PATRICIA SUE ADKINS,
JENNIFER GALINDO, AND FABRIENNE
ENGLISH,
By and through their attorneys,

*/s/ Renee Kennedy*
Renee Kennedy
Lead Counsel

*/s/ Seth W. Wiener*
Seth W. Wiener