UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABRIENNE ENGLISH,<br><br>   Plaintiff,<br><br>   v.<br><br>APPLE INC, et al.,<br><br>   Defendants. | Case No. 14-cv-01619-WHO<br><br>**FURTHER RULINGS REGARDING DISCOVERY DISPUTE**<br><br>Re: Dkt. Nos. 149, 152, 153 |

On April 10, 2015, I held a telephonic hearing to discuss the parties' latest discovery disputes. Yesterday I posted a Tentative Ruling Regarding Discovery Dispute. Dkt. No. 154. The tentative is essentially repeated below as part of the final order on this dispute, with new sections II, III and IV concerning the additional matters discussed today.

A central dispute between the parties is whether discovery may encompass the APP plan as well as the AC+ plan. Apple argues that the sole remaining class representative only purchased the AC+ plan, that the APP plan primarily covers computers and is a parts-based, rather than whole unit replacement, plan, that the class representative's claim is for accidental damage which would not be covered by the APP plan, and that she relies only on oral misrepresentations for her claims. While Apple's arguments to limit this case may have force when it opposes a motion for class certification, they are not persuasive in the context of this discovery dispute.

**I.   EFFECT OF NAMED PLAINTIFF WITHDRAWING**

In discovery disputes before class certification, "[t]he plaintiff has the burden to either make a prima facie showing that the Rule 23 class action requirements are satisfied, or to show that discovery is likely to produce substantiation of the class allegations." *Willner v. Manpower, Inc.*, No. C 11-2846 JSW MEJ, 2012 WL 4902994, at *2 (N.D. Cal. Oct. 16, 2012) (internal citations and quotations omitted).

In determining whether products are substantially similar so as to allow a named plaintiff to represent a class of consumers of a product he or she did not buy, I have concluded in another case that:

> Recognizing the varying analyses in this District regarding substantially similar products in class actions at the pleading stage, I conclude that the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products. That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products. For example, a claim that products are illegally mislabeled as a matter of law because the labels fail to disclose something required by a statute or regulation can be resolved without a context-specific analysis of each product's label. The label is either illegal or it is not. That the products bearing the challenged label may be different—or that the labels themselves are different in other respects—is immaterial to the determination of whether the label is in fact illegal.

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014). Products may be substantially similar "where differences between the purchased products and the unpurchased products do not matter because the legal claim and injury to the consumer is the same, and where both the legal claims/injury are similar and the products themselves are similar." *Id.* at *5. The "point of the substantially similar approach" was to "ensure that the plaintiff is seeking to represent only those individuals who have suffered essentially the same injury as the plaintiff." *Id.* at *6.

*Ogden v. Bumble Bee Foods, LLC* discussed this issue in the context of discovery, ultimately concluding that most of the products were not substantially similar. 292 F.R.D. 620, 626 (N.D. Cal. 2013). However, unlike in this case, *Ogden* found that "here not all of the labels bear one similar claim on which all consumers could have relied" and that the "claims are not limited to a particular advertisement on the products [plaintiff] bought that also were included on other products as was the situation in the cases she cites." *Id.*

In this case, the crux of the plaintiffs' TAC, or at least of several claims in the TAC, involve alleged misrepresentations in both the AC+ plan and the APP plan. Essentially, the plaintiffs suffer injury because they receive refurbished parts or devices under the plan that are of lesser quality than new parts or devices, even though they believe that they are receiving new

ones. The relevant language in both plans is identical, and the misrepresentation and injury appears the same. The plaintiffs have made a prima facie showing of typicality and that discovery would help substantiate the class allegations. It appears that discovery is at least merited as to both plans, and any doubts should be resolved at the class certification stage. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) ("Plaintiffs have alleged sufficient similarity between the products they did purchase and those that they did not; any concerns of DGIC and/or the Court about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage.").

## II. NO EXPANSION TO DEVICES OTHER THAN IPHONES

During the hearing, plaintiffs' counsel asked that Apple be required to provide the requested discovery on iPads and iPods as well as iPhones. Apple objected, pointing out that the named plaintiff only raised issues with her iPhone; that Apple's other products are significantly different than iPhones in terms of repair and replacement; that the burden of providing discovery on the additional products would be enormous; and that manageability and typicality, at least, would be raised if the other devices were included. I agree on all counts, and limit discovery to iPhones.

## III. CALL CENTERS AND INDEPENDENT CONTRACTORS

Plaintiffs' counsel also asked that Apple produce information that was generally applicable to independent contractors and others responding to calls related to the provision of replacement devices, as opposed to just Apple employees. Apple should produce such generally applicable materials, but need not produce specific information related to individual independent contractors.

## IV. SCHEDULING

Apple has agreed to use its best efforts to produce all documents and to respond to the interrogatories propounded recently by plaintiffs by **April 24, 2015**. It is scheduling depositions of its witnesses during the week of **May 4, 2015**, and will tie down the date for the deposition of the currently vacationing witness as soon as practicable.

3

## V.  DISPUTES REGARDING SPECIFIC DEPOSITION TOPICS:

**Topic 1:** The changes to terms made resulting in different versions of the AppleCare Protection Plan and AppleCare Plus warranties, including the dates on which a change was made, and the date on which the new version and its terms became effective.

Apple has offered a witness, and my decision to allow discovery on the APP plan resolves this issue.

**Topic 2:** The criteria which are used by Apple store employees and Apple, Inc. as Administrator of the AppleCare Protection Plan and AppleCare Plus warranty plans, to determine whether to offer a new replacement unit or refurbished or service unit (previously used or reconditioned) unit (including but not limited to iPhones, iPads, laptops and all other devices which may be purchased with AppleCare Protection Plan and AppleCare Plus) for Covered Equipment to a customer making a warranty claim under the AppleCare Protection Plan or AppleCare Plus warranty, and the life cycle of those units and parts that are turned into APPLE.

Apple objects to the wording of the topic.  However, it has agreed to produce a witness to explain its practices regarding the provision of replacement devices, and that witness can explain why plaintiffs' wording is inaccurate.

**Topics 3 and 4**: 3) The use of (application in practice) and definitions of the word "refurbished" and "service unit" used by Apple, Inc. as Administrator of the AppleCare Protection Plan and AppleCare Plus warranty, with respect to units (including but not limited to iPhones, iPads, laptops and all other devices which may be purchased with AppleCare Protection Plan and AppleCare Plus) that are provided to customers in response to claims for Covered Equipment under the AppleCare Protection and/or AppleCare Plus warranty programs, and 4) The use of (application in practice) and definitions of the terms "functionally equivalent to the original product" and "equivalent to new in terms of performance and reliability" used by Apple, Inc. as Administrator of the AppleCare Protection Plan and AppleCare Plus warranties, with respect to units (including but not limited to iPhones, iPads, laptops and all other devices which may be purchased with AppleCare Protection Plan and AppleCare Plus) that are provided to customers in response to claims for Covered Equipment under the AppleCare Protection Plan and/or AppleCare Plus warranty programs.

There is no actual dispute – Apple agreed to produce a witness.

**Topics 8 and 9:** 8) The total number of people in the United States who purchased either AppleCare or AppleCare Plus Protection Plan warranty, who purchased Apple Care Plus Protection Plan warranty on a date subsequent to the original purchase of the iPhone, who purchased Apple Care Plus Protection Plan who did not purchase the iPhone directly from Apple, and who purchased Apple Care Plus Protection Plan contemporaneously with the first coverage for accidental damage thus resulting in the person only having one remaining incident left, and 9) The total number of warranty claims for each device by model and year made under AppleCare Protection Plan and AppleCare Plus warranties for the Relevant Time Period for which

4

refurbished units or service units or parts were provided under the terms of the warranty in satisfaction of a claim for Covered Equipment, broken down by type of unit / device.

Apple argues that these are improper matters for testimony under 30(b)(6), and that it will answer these questions in interrogatories. Plaintiffs indicate that if Apple provides the answers before the time for depositions it will accept answers via interrogatory. This should be answered via interrogatory response pursuant to the schedule described above.

**Topics 14 and 22:** 14) The process by which warranty claims for Covered Equipment under the AppleCare Protection Plan and AppleCare Plus warranty plans are evaluated, including criteria used, sequence of events, and persons or entities involved in decision-making as to claims, and 22) The criteria by which decisions are made to offer parts replacement as opposed to a new device or warranty replacement device, where the issue is a cracked screen on an iPhone or similar component-based issue on an iPhone or other Class Device.

With topics 14 and 22, the parties disagree whether it is sufficient to have an Apple witness testify about the process to evaluate warranty claims in the retail store and the criteria to evaluate warranty claims. Plaintiffs argue that there might be some kind of appeal and that someone with knowledge of the more general corporate plan, and not only a retail employee, should be deposed. However, there is no evidence that there is any kind of appeal process or that a retail employee would be insufficient. Apple's proffered witness is adequate.

**Topic 19:** The process(es) employed and databases used for keeping track of used or refurbished units (e.g., as to notations as to serial numbers and/or association with sales or warranty claims) once sold or provided through warranty claims to customers.

Both parties agree that the only question is *whether* Apple is able to track the type of replacement devices and not how it tracks them. Again, Apple states that an interrogatory would be the more appropriate method of obtaining this information. I agree, and Apple should respond pursuant to the schedule described above.

**Topic 20:** The differences in processing of claims and directing of Apple consumers calling Apple with complaints or claims (i.e., differences between treatment of claims under each warranty as the others), with respect to complaints or claims made as to a) AppleCare Protection Plan; (b) AppleCare+; c) Non-Warranty service; d) One-Year Limited Warranty service; and e) 90-day Complimentary Support.

Apple objects to this as far as it relates to the one-year limited warranty and non-warranty services. I have already limited discovery relating to the warranties not at issue (like the one-year warranty) in the March 24, 2015 Order, and I sustain Apple's objection.

**Topics 21 and 23**: 21) The complaint department and call centers and subcontracted call center employees as to their processes for handling complaints by customers as to warranty claims, and handling of complaints as to refurbished and/or service units and/or used Class Devices and parts, and also handling of Complaints of service units that are devices sold as new, and complaints of loss of incidences in the AppleCare+ extended warranty or two incidences not being provided, and 23) The training of the employees who staff call centers, retail centers and stores, refurbishment and repair facilities, at home advisors, and are employed by subcontractors/temporary agencies.

Apple objects to the breadth of these topics, and to the discovery relating to a call center. Apple should provide a witness who can speak to the process for handling complaints by customers about warranty claims. Handling complaints concerning non-warranty claims is not relevant, nor is training except with respect to handling complaints regarding the warranty claims.

**Topic 18**: The marketing of service plans and warranties in Apple stores and on the internet.

Apple will provide a witness for deposition.

Dated: April 10, 2015

_____
WILLIAM H. ORRICK
United States District Judge