UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABRIENNE ENGLISH,<br><br>          Plaintiff,<br><br>     v.<br><br>APPLE INC, et al.,<br><br>          Defendants. | Case No.  3:14-cv-01619-WHO<br><br>**ORDER DENYING PLAINTIFF'S APPLICATION UNDER FRCP 56(d) AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 288 |

**INTRODUCTION**

Defendants Apple Inc., AppleCare Service Company Inc., and Apple CSC Inc. (collectively, "Apple") move for summary judgment of Plaintiff Fabrienne English's claims related to Apple's alleged misrepresentations and omissions in connection with AppleCare+ ("AC+"), an extended service plan Apple offers to purchasers of iPhones.  English's core complaint is that Apple misrepresents to consumers that replacement iPhones under AC+ will be new when in fact many of the replacement devices in Apple's service stock are "refurbished" or otherwise not new.  She asserts claims under California law for violations of the Consumer Legal Remedies Act ("CLRA"), the False Advertising Law ("FAL"), the Unfair Competition Law ("UCL"), and the Secondhand Merchandize Labeling Law, Cal. Bus. & Prof. Code § 17531, and for fraud.

English urges me to deny Apple's motion for summary judgment, or to stay the matter pending additional discovery to give her the opportunity to present facts essential to justify her opposition under Federal Rules of Civil Procedure 56(d).  She insists that, through additional discovery and/or testing of the phone, she can prove that her replacement phones under AC+ were not new when Apple gave them to her.  I have already found that the phones she received were

United States District Court
Northern District of California

new, and she has not convinced me that any proposed testing would demonstrate otherwise.  She also fails to justify her delay in pursuing additional discovery, and since it is disproportional to her claims anyway, she is not entitled to it.  Her 56(d) application is DENIED.

Because English does not offer sufficient evidence to establish that she relied on any alleged misrepresentation by Apple, she fails to make the requisite showing for Article III standing that her injury was caused by Apple.  Her Secondhand Merchandize Labeling Law claim fails because she fails to show a genuine issue as to whether the phones she received were anything other than new.  Although there may be a genuine issue whether English was denied a second incident under AC+, that fact is not material to any of her claims.  Apple's motion for summary judgment is GRANTED.

## BACKGROUND

## I.   FACTUAL BACKGROUND

### A.  AC+ and APP

AC+ is a service plan offered by Apple for, among other products, the iPhone.  Healy Decl. ¶¶ 3–4 (Dkt. No. 209-32).  APP is a predecessor to AC+.[1]  *Id.* ¶ 3.

Apple offered APP until October 2011.  *Id.*  APP cost $99 and provided consumers with hardware repair coverage and telephone technical support for two years from the date of purchase of the iPhone.[2]  *Id.*

Apple launched AC+ in October 2011.  *Id.* ¶ 4.  For $99, purchasers receive coverage for two accidental damage incidents.  *Id.*  The service fee for each incident was initially $49.  *Id.*  On September 10, 2013, the service fee was increased to $79.  *Id.* ¶ 5.  There is no service fee under AC+ for repairs not resulting from accidental damage.  *Id.* ¶ 6.

From AC+'s first launch until September 2013, Apple allowed customers to purchase AC+ at the time of accidental damage.  *Id.* ¶ 8.  During that time period, if a customer's iPhone suffered

---

[1] In her TAC and briefing, English describes AC+ and APP as "essentially extended warranties." TAC ¶ 11 (Dkt. No. 139).  I use "service plans" instead of "extended warranties" in this Order unless quoting from materials submitted by English.

[2] Every new iPhone comes with a one year limited warranty and 90 days of telephone technical support.  *See* Patel Decl. Ex. R (Dkt. No. 209-19).

United States District Court
Northern District of California

United States District Court
Northern District of California

accidental damage, rather than having to pay $149 for an out-of-warranty service event or approximately $449 for a new iPhone, the customer could purchase AC+ for $99 and receive a $50 discount on the $149 out-of-warranty service event, plus the two accidental damage incidents provided under AC+. *Id.* As discussed in more detail below, English purchased her AC+ plan in this way. TAC ¶ 34.

A customer who brings in her iPhone for service under AC+ or APP may have the iPhone repaired or replaced, depending on the circumstances (e.g., whether a repair is feasible) and the customer's preference. When a customer decides to replace her iPhone, she receives a replacement device out of Apple's "service stock." Apple describes its service stock as consisting of three types of iPhones: (1) new iPhones; (2) remanufactured iPhones; and (3) reclaimed iPhones. Lanigan Decl. ¶ 3 [sealed](Dkt. No. 208-17); Lanigan Decl. ¶ 3 [redacted](Dkt. No. 209-34) .

New iPhones are made of all new parts and are "exactly the same" as the iPhones Apple sells in its stores. Lanigan Decl. ¶ 4. New iPhones ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* As discussed below in more detail, the evidence in this case shows that English received only new iPhones as replacement devices, not remanufactured or reclaimed iPhones. *Id.* ¶¶ 9–10.

Remanufactured iPhones are manufactured using the same process as new iPhones, but "could contain both new parts and recovered parts that have been extensively tested." *Id.* ¶ 5. Apple states that "each and every remanufactured iPhone is inspected and tested to ensure that it is equivalent to a new iPhone in performance and reliability." *Id.*

Reclaimed iPhones are iPhones that have either ████████████████████████████████████ ███████████████████████████████████████████████████████████████. *Id.* ¶ 6. Apple states that "[t]hese (essentially new) iPhones undergo a testing and screening process to ensure that they are equivalent to new in

1   performance and reliability."[3]  *Id.*

2       All iPhones in Apple's service stock are shipped and stored in plain, white, unbranded

3   boxes.  *See* Williams Dep. at 210–11 (Patel Decl. Ex. T, Dkt. No. 209-21).  Because all iPhones in

4   the service stock are shipped and stored in this manner, Apple store employees do not know

5   whether any particular replacement device is new, remanufactured, or reclaimed.  *Id.* at 152–53,

6   231–32.  Customers who receive a replacement device do not keep the plain, white, unbranded

7   box in which it is carried out from the service stock to the floor.  Morrison Dep. 202:5–9 (Dkt. No.

8   288-2).

9       The current AC+ terms and conditions state in relevant part:

10          If during the plan term you submit a valid claim . . . , Apple will
            either (a) repair the defect at no charge, using new parts or parts that

11          are equivalent to new in performance and reliability, or (b) exchange
            the [iPhone], with a replacement product that is new or equivalent to

12          new in performance and reliability.  All replacement products
            provided under this plan will at a minimum be functionally

13          equivalent to the original product.

14   TAC Ex. B (Dkt. No. 139-2); Patel Decl. Ex. O (Dkt. No. 209-16).

15       The AC+ and APP terms and conditions in effect until September 2013 similarly stated:

16          If during the coverage period you submit a valid claim. . . , Apple
            will either (a) repair the defect at no charge, using new or

17          refurbished parts that are equivalent to new in performance and
            reliability, or (b) exchange the [iPhone] with a replacement product

18          that is new or equivalent to new in performance and reliability, and
            is at least functionally equivalent to the original product.

19   TAC Ex. C (Dkt. No. 139-3).

20   **B.   English's Purchase and Use of AC+**

21       In September 2012, English obtained an iPhone 4 from Sprint in connection with signing

22   up for Sprint wireless telephone service.  English Decl. ¶ 3 (Dkt. No. 180-43); Patel MSJ Decl. Ex.

23   2, English Dep. at 71:9–23 (Dkt. No. 288-3).  She gave the iPhone to her minor son.  *Id.*

24       On February 15, 2013, English and her son went to an Apple store in NorthPark Center,

25   Texas because the screen on the iPhone had cracked.  English Decl. ¶ 4; English Dep. at 61:23–25.

26

27   ───────────────

28   [3] In her TAC and briefing, English refers to all replacement iPhones other than new replacement iPhones as "refurbished."  *See, e.g.,* TAC ¶ 11.  For ease of reference, I do the same in this Order unless otherwise indicated.

English states that in discussing AC+ with an Apple employee at the store, she was told that she "would have two 'incidents' available for occurrences such as a cracked screen or water damage, and that the replacement devices would be new."  English Decl. ¶ 6.  She paid $99 for AC+ and another $99 to receive what the Apple employee allegedly described as a new iPhone 4.  *Id.* ¶ 4; *see also* TAC Ex. E (Dkt. No. 139-5).

The replacement iPhone was presented to English in the plain, white, unbranded box in which Apple packages its replacement devices.  Patel MSJ Decl. Ex. 2 at 104:9–106:16, 140:4– 141:8.  The box did not include "any label or other writing indicating that the [iPhone] was refurbished, reconditioned, used, or contained parts that were refurbished, reconditioned, or used."  TAC ¶ 40.  English states that the Apple employee "took great care to unseal and open [the box] in front of [her]," and that "[w]hen he took the iPhone out of the packaging he did so in a way that made [her] think that the device was new."  English Decl. ¶ 7.  English was not given the box, nor was she given a charger or earbuds.  English Dep. at 105:1, 106.

At the time English purchased AC+, the plan's terms and conditions were available in hard copy, available at apple.com, and provided via URL on "Smart Signs" (i.e., interactive iPads) throughout the store.  Healy Decl. ¶¶ 9–11 (Dkt. No. 209-32).  The Smart Signs state that "replacement equipment that Apple provides as part of the repair or replacement service may be new or equivalent to new in both performance and reliability."  Healy Decl. Ex. A (Dkt. No. 209-33) at APL000029437.  English also received a pdf of the AC+ terms and conditions via email.  English Dep. at 108:11.  English admits that she never read the AC+ terms and conditions.[4]  English Dep. at 107:18–108:17, 124:6–128:13.

English contends that the replacement iPhone she received on February 15, 2013 was not new and was in fact a "refurbished device."  English Decl. ¶ 9.  She states that "[h]ad [she] known that [the] iPhone was not new, [she] would not have made the purchase, and would have

---

[4] English claims to have read and relied on the Repair Terms and Conditions prior to purchasing AC+.  English 2nd Decl. ¶ 14 (Dkt. No. 304-15).  It provides, "When the product is covered by warranty or an extended service contract, such as the AppleCare Protection Plan, Apple will perform repairs under the terms of the warranty or the extended service contract, provided that you have presented satisfactory proof of the products' eligibility for such repairs."  TAC Ex. D ("Apple Inc. Repair Terms and Conditions")(Dkt. No. 38-4).

United States District Court
Northern District of California

1  considered other options such as getting an upgraded phone from Sprint." *Id.* ¶ 5.

2  　　Apple contends that the replacement iPhone was new. *See* Lanigan Decl. ¶ 9. It submits a

3  declaration from Michael Lanigan, Director of AppleCare Supplier Quality Engineering and Mail-

4  In Operations, who ███████████████████████████████████████████████████

5  ███████████████████████████████ *Id.* ¶ 1. He states that based on his research and

6  analysis of Apple's records, the iPhone English received on February 15, 2013 was a new device.

7  *Id.* ¶ 9.

8  　　English alleges that she "immediately started experiencing problems" with the replacement

9  iPhone. English Decl. ¶ 11. The device "would freeze, stop working, and close without warning."

10  *Id.* On July 22, 2013, she and her son went to an Apple store in Plano, Texas after the device

11  completely stopped working and would no longer turn on. *Id.* An Apple employee there told her

12  that the device had water damage and that she could use one of the accidental damage incidents

13  under her AC+ plan to get a replacement. *Id.* English paid the $49.00 AC+ service fee and

14  received another replacement iPhone 4. *Id.*; *see also* Patel Decl. Ex. E (Dkt. No. 209-6). This

15  replacement device was again presented in a plain, white, unbranded box. English Decl. ¶ 11.

16  According to English, the second replacement device, like her first one, was "refurbished." *Id.*

17  According to Apple, it was in fact new. Lanigan Decl. ¶ 10. English states that within a week of

18  receiving the second replacement device, it began suffering from "freezing issues" like those

19  exhibited by the first one. English Decl. ¶ 12.

20  　　On February 28, 2014, English went back to the Apple store in North Park Center, Texas

21  because the screen on her second replacement iPhone had cracked. English Decl. ¶ 13. English

22  alleges that she was told by an Apple employee there that she had already used up both incidents

23  allowed under her AC+ plan, and that as a result she was not entitled to another replacement

24  device. English Dep. at 160:15–21. She states that the employee "cited [her] initial purchase from

25  Apple in February 2013 and the July 2013 replacement as the incidents of accidental damage

26  replacement that [she] was entitled to under [her AC+ plan]." English Decl. ¶ 13.

27  **II. PROCEDURAL BACKGROUND**

28  　　English initially brought her claims as one of three plaintiffs in a class action complaint

United States District Court
Northern District of California

1    filed by attorney Renee Kennedy.  *See* Compl. (Dkt. No. 1).  With the filing of the second

2    amended complaint on January 17, 2015, the other two named plaintiffs dropped out, while a new

3    named plaintiff joined in.  *See* Dkt. No. 116.  They filed the TAC on March 6, 2015, alleging four

4    causes of action against Apple based on alleged misrepresentations and omissions in connection

5    with AC+ and APP: (1) violations of the CLRA, TAC ¶¶ 73–94; (2) violations of the FAL, TAC

6    ¶¶ 103–111; (3) violations of the unlawful, unfair, and fraudulent prongs of the UCL, TAC ¶¶

7    121–127; (4) violations of the Secondhand Merchandise Labeling Law, Cal. Bus. & Prof. Code §

8    17531, TAC ¶¶ 112–120; and (5) fraud, TAC ¶¶ 95–102.  Shortly after the TAC was filed, on

9    March 19, 2015, the other named plaintiff dropped out of the case, leaving English as the only

10   named plaintiff.  *See* Dkt. No. 144.[5]

On January 5, 2016, I denied English's motion for class certification because none of her

theories of liability supported class certification, and also because she could not establish

adequacy of counsel under Federal Rule of Civil Procedure 23(a)(4) in light of the deficiencies

shown by her lead counsel, Ms. Kennedy.  Class Certification Order (Dkt. No. 225).  On

September 23, 2016, Apple filed its motion for summary judgment on English's individual claims

related to her purchase of AC+ and alleged denial of coverage for a second incident.  *See* Mot. 1–2

(Dkt. No. 288).

On October 15, 2016, one of plaintiff's former co-counsels, who apparently had gained

possession of the July 2013 replacement phone that English had received under AC+ and

misplaced it, notified Kennedy that he had located it.  Kennedy Decl. ¶ 4 (Dkt. No. 293-1).

Plaintiff filed several motions seeking leave for permission to test the phone, and an extension of

time to file her opposition.  Dkt. Nos. 290, 293, 295, 296, 299.  On October 24, 2016, I extended

her deadline by four days (Dkt. No. 300), and she filed her opposition on October 28, 2016.

Opp'n (Dkt. No. 305[redacted], Dkt. No. 304-3[under seal]).  On October 31, 2016, I denied her

request to test the phone, in part because plaintiff had not:

---

[5] Since English does not allege that she ever purchased the APP service plan, it is no longer at
issue in this case.

> specifically respond[ed] to defendants' arguments that testing the iPhone now will not prove that it was new or refurbished when plaintiff received it from Apple in 2013, that the testing is not proportionate to the needs of the case, that plaintiff has not provided sufficient detail regarding the tests she proposes to run, and that she has not provided a written description of the proposed testing protocol.

Dkt. No. 307. But I also left open the possibility that briefing and evidence concerning the motion for summary judgment might establish the need for such testing. I heard argument from the parties on December 14, 2016.

## III. BACKGROUND OF 56(D) MOTION

Relevant to English's request for additional discovery, she proffered two affidavits that identify three categories of discovery: additional information to determine whether or not her replacement unit was new; "testing" of the recently found 2013 replacement unit; and an additional deposition of Apple employee "Ryan." English Decl. 56(d) ¶ 5 (Dkt. No. 304-15); English 2nd Decl. ¶¶ 10–13, 16. She submits that (1) "fingerprints, scratches and stickers on the internal parts are evidence that the phone is refurbished;" (2) "[e]xperts can tell if the phone has been opened before;" and (3) "[t]here are diagnostic, software and application tests that can be run." English Decl. ¶ 5 (citing Dixon Decl., Ex. M; and Huynh Decl., Ex. R).

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

United States District Court
Northern District of California

1    On summary judgment, the Court draws all reasonable factual inferences in favor of the

2  non-movant.  *Id.* at 255.  In deciding a motion for summary judgment, "[c]redibility

3  determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

4  facts are jury functions, not those of a judge."  *Id.*  However, conclusory and speculative testimony

5  does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill*

6  *Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

7    Under Federal Rule of Civil Procedure 56(d),

8         If a nonmovant shows by affidavit or declaration that, for specified
         reasons, it cannot present facts essential to justify its opposition, the
9         court may:
         (1) defer considering the motion or deny it;
10        (2) allow time to obtain affidavits or declarations or to take
         discovery; or
11        (3) issue any other appropriate order.

12  Fed. R. Civ. P. 56(d).

13    "[A] district court should continue a summary judgment motion upon a good faith showing

14  by affidavit that the continuance is needed to obtain facts essential to preclude summary

15  judgment."  *State of Cal., on Behalf of California Dep't of Toxic Substances Control v. Campbell*,

16  138 F.3d 772, 779 (9th Cir. 1998).  The party seeking to continue the motion "must show (1) that

17  they have set forth in affidavit form the specific facts that they hope to elicit from further

18  discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to

19  resist the summary judgment motion."  *Id.*

20                            **DISCUSSION**

21    All five of English's claims stem from her allegation that Apple misrepresented or omitted

22  the fact that she might not obtain a new replacement unit when receiving service under AC+.  *See*

23  TAC ¶¶ 73–127.  Apple argues that, since she did in fact receive new phones on both occasions,

24  all of her claims must fail.  Mot. at 1.  First, Apple states that English has suffered no injury since

25  she received new phones, and so Apple is entitled to summary judgment because English lacks

26  Article III standing for all five claims.  Mot. at 9.  Next, Apple contends that it did not

27  "misrepresent" that English would receive a new phone, because she did in fact receive a new

28  phone.  *Id.* at 11.  In the absence of any misrepresentation, her claims under the UCL, FAL, CLRA

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and for fraud must fail.  *Id*.  And, since she received a new phone, her Secondhand Merchandising

2    Labeling Law claim must fail.  *Id*. at 12.

3          In the alternative, Apple argues for partial summary judgment to the extent her claims

4    under the UCL, FAL, CLRA and for fraud depend on English's reliance on the AC+ terms and

5    conditions, because the undisputed evidence establishes that she never viewed the terms and

6    conditions prior to purchasing the plan.  *Id*. at 13.  Additionally, Apple argues for partial summary

7    judgment to the extent her claims depend on a theory that Apple's use of a plain white box

8    misrepresents that replacement phones are new because using a plain white box is not an

9    affirmative representation at all and plaintiff cannot meet the reasonable consumer standard.  *Id*. at

10   15.  Lastly, Apple argues for summary judgment on English's claim that she was denied a second

11   incident because the undisputed facts prove that she was not denied a second incident.  *Id*. at 17.

12         English asserts the following genuine issues of material fact: whether the service units

13   were in fact new; whether she was denied a second incident under AC+; and whether Apple

14   properly discloses the plan's length of time.  Opp'n 8–15.  English contends that she still suffered

15   an injury, even if the iPhones she received as replacement units were new, but she admits that

16   "[t]he main fact in contention is whether Plaintiff's replacement iPhones ["service units"] are new

17   rather than used or refurbished."  *Id*. at 6.

18   **I.   PLAINTIFF'S 56(D) APPLICATION IS DENIED**

19   **A.   English's Delay in Conducting Discovery**

20         On September 9, 2015, Apple filed a declaration with its opposition to class certification

21   from Michael Lanigan, who "reviewed Apple's database containing information regarding the

22   source of iPhones used as replacement devices under AC+[,]" and discovered "the two

23   replacement iPhones that Plaintiff received were 'new'—meaning they were 'made of entirely

24   new parts, and therefore are exactly the same as the iPhones Apples sells as new in Apple-branded

25   boxes in its retail stores.'"  *Id*. at 10:1–6 (quoting Lanigan Decl. ¶¶ 1, 4).  As discussed during the

26   hearing on class certification, English had three weeks to pursue discovery on the issue prior to

27   filing her reply to Apple's opposition to class certification.  Class Certification Hr'g Tr. at 6:14–

28

19.  She did none.  One of her former co-counsels, Mr. Cutter,[6] who ably argued her motion for class certification, accepted the evidence that English received a new rather than refurbished phone: "[y]ou know, I have no reason not to take Ms. Preovolos, who's distinguished counsel, lot of experience, that she—likely it's true… ."  Hr'g Tr. at 9:6–9.  I understood that representation as a waiver of English's claim to additional discovery on Lanigan's testimony.[7]  Apple correctly states that the undisputed evidence at class certification established, and I concluded, that the replacement iPhones were new.  Mot. for Summ. J. at 1:7–8; *id.* at 8–11 (Dkt. No. 288).

I denied class certification in January, 2016, denied English's motion for reconsideration in March, and the Ninth Circuit denied her petition for review in June.  Nonetheless, English waited until the last day of August to seek any discovery related to her individual claims, even though she knew since a Case Management Conference on July 9, 2016 that her opposition to summary judgment would be due on October 24, 2016.  Dkt. No. 289 at 3–4; Minute Entry (Dkt. No. 275).  All in all, she waited nearly an entire year to seek discovery on the Lanigan testimony that she now seeks to question.  *See* Reply at 3 (Dkt. No. 320); Defs.' Opp'n to Pl.'s Administrative Mot. to Extend Time at 1–3 (Dkt. No. 292); Patel Decl. (Dkt. No. 292-2).

There have been many requests for extensions in this case.  English apparently feels aggrieved—in her administrative motion for an extension of time (Dkt. No. 290), she states, "please note that this Court has granted at least seven of Defendants' motions for extension of time if not more, but has never granted one of Plaintiff's motions as to extension of time."  10/10/16 Admin. Mot. at 6:7–10.  Reality is much different, as shown below:

| DATE | ECF NO. | REQUESTED BY | FOR FILING | RESOLUTION | REASON |
|---|---|---|---|---|---|
| 4/29/15 | 67 | Apple | Declaration ISO Sealing | Granted | Unopposed |
| 2/9/15 | 134 | Apple | Response to Second Amended Complaint | Granted | Stayed until after Court rules on Plaintiffs' pending motion for leave to |

---

[6] Two California law firms and four solo practioners at different times have represented English in addition to her lead lawyer, Renee Kennedy.

[7] I noted in the Order Denying Class Certification that "English withdrew her request for further discovery on this issue."  Dkt. No. 225 at 14:1–2.

United States District Court
Northern District of California

| | | | | | file Third Amended Complaint |
|---|---|---|---|---|---|
| 4/1/15 | 149 | Apple, with contingent request by plaintiffs | 30(b)(6) depositions | Granted as to both | Due to the number and variety of disputes over the appropriate scope

Extended plaintiffs' deadline to file motion for class certification given the extended deposition deadline |
| 7/6/15 | 185 | Apple | Declaration ISO Sealing | Granted | Unopposed |
| 7/16/15 | 194 | Apple | Opposition to Class Certification | Granted, including an extension for English to file her Reply | In support of class certification, English filed a substantially revised memorandum of points and authorities *more than one week after the filing deadline*, including declarations from seven previously undisclosed fact and expert witnesses |
| 10/2/15 | 216 | Apple | Declaration ISO Sealing | Granted | Unopposed |
| 2/17/16 | 243 | English | Reply to Motion for Reconsideration | Granted in Part | Stipulation for 7 day extension granted, but request for 14 day extension denied |
| 3/18/16 | 260 | Apple | Declaration ISO Sealing | Granted | Unopposed |
| 10/24/16 | 300 | English | Opposition to SJ | Granted in part | No reason |

As evidenced by this chart, the only instances of extensions for *substantive* motions or responses granted to Apple were prompted by English's own actions. Moreover, when Apple was granted an extension, a corresponding extension was given to English. The docket is rife with the Court's leniency in overlooking English's failure to follow the Federal Rules of Civil Procedure, the Civil Local Rules and my Standing Orders during the pendency of this action. There is no good cause for English's delay in conducting discovery.

12

**B.  Evidence Regarding the Phone**

The bulk of English's claims stem from her belief that the replacement phones she received from Apple through AC+ were not new.  *See* Opp'n at 6:5–6 (Dkt. No. 304-3).  While that may be her belief, I have already concluded in the Order Denying Class Certification that the phones she received were new, and she has offered no evidence to shake my determination of that fact.

English now challenges the evidence that the phones were new by pointing to (1) her phone's malfunctions, (2) the presumed proportion of remanufactured phones versus new phones in the supply channel for service units, and (3) the fact that it took Apple two years to uncover the evidence that her iPhones were in fact new at the time she received them as service units.  Opp'n at 8–9.  In the absence of actual evidence concerning the phones she received, none of these suppositions holds water.

Apple counters the first point by arguing that "brand new devices can on occasion malfunction," and "[p]laintiff's allegations and speculation 'do not create a factual dispute for purposes of summary judgment.'"  Reply at 8 (citing *Nelson v. Pima Cmty. College Dist.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996))(Dkt. No. 320).  Apple points out that English "never sought repairs or any other assistance from Apple regarding the issues, nor did she research how to address the freezing issue… ."  *Id.* (citing TAC ¶ 40 and English Dep.).  I agree that English's "conclusory allegations unsupported by factual data are insufficient… ."  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001), especially considering the variability with which electronic devices malfunction.  *See, e.g.*, Pecht Report ¶ 23–26 (Dkt. No. 189-1[sealed]; Lall Report ¶16c (Dkt. No. 208-25[sealed], 209-39[redacted]).

As to the second point, Apple highlights a previous order in which I found "evidence regarding the *theoretical likelihood* that English's replacement iPhones would be refurbished does little to counter evidence that the replacement devices she *actually received were in fact new*."  Class Certification Order at 13:13–15 (emphasis in original) (Dkt. No. 225).  The final point is immaterial—the issue is whether there is a genuine dispute about its accuracy.  None has been raised.

13

### 1. Additional Discovery Related to the Phone

English claims that summary judgment is improper because "necessary facts in existence are pending discovery." Opp'n at 1. The parties submitted two Joint Letters regarding discovery disputes—one on October 6 and one on October 20, 2016. Dkt. Nos. 289, 297. In the former, plaintiff mentioned "discovery that Apple refuses to answer although served on 09.02.16," as well as an outstanding RFA and RFPs served on 10.04.16. Dkt. No. 289 at 1. In the latter letter, Apple clarifies that it made its "last document production over a year ago, on July 1, 2015[,]" and that "Plaintiff waited until Sept. 28 [2016] (less than a month before her opposition brief [was] due) to raise any issues with respect to 'updating' the RFPs… ." Dkt. No. 297 at 3–4. Apple stated that "[t]here is nothing for the Court to compel" because "Defendants have produced all responsive, non-privileged documents for several of the RFPs[,]" and "[t]he remainder do not seek information that is relevant or likely to lead to the discovery of admissible evidence, and are disproportional to the nature of Plaintiff's individual claims." *Id*. at 4:11–14.

"Plaintiff has not adequately demonstrated that the request to postpone summary judgment and extend discovery is not due to a lack of diligence, nor what specific facts would be shown by additional discovery." *Thommeny v. Paramount Pictures Corp.*, 2011 U.S. Dist. LEXIS 80291, at *6 (C.D. Cal. July 13, 2011). Given plaintiff's own delay, the waiver by her prior counsel, and the likelihood that additional discovery will fail to prove anything—let alone a fact "essential" to resist summary judgment—English's request for additional discovery is denied. *See Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987)("The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists.")

### 2. Testing the Phone

English states that "if the Court were to force us to pick [between additional discovery and testing the phone], we would rather be allowed to test, inspect, and open the iPhone." Pl.'s Opposed Admin. Mot. for Leave to File Pl.'s Supp. Mot. to Extend Time to File an Opp'n Brief to Defs.'Mot. for Summ. J. at 2:25–27 (Dkt. No. 295). Apple opposed plaintiff's initial motion to test the phone because "such 'testing' would prove nothing regarding whether [the phone] was new or 'refurbished' at the time Plaintiff received it from Apple[,]" and "would be especially futile

United States District Court
Northern District of California

given that the iPhone (i) has been subjected to normal wear and tear since Plaintiff received it on July 22, 2013, (ii) has been damaged (cracked screen) by Plaintiff, (iii) may have been subject to unknown third-party repairs, and (iv) has been stored in unknown conditions by Plaintiff's former counsel." Defs.' Opp'n to Pl.'s Second Admin. Mot. Re Extension of Time to Oppose MSJ at 1–2 (Dkt. No. 294).

English owns the phone, so the "testing" I am asked to authorize is in actuality a command that Apple and its experts monitor whatever English wants to do with her phone. I will not order that because I do not see how any "testing" now will show whether the phone was new in *2013*. She has had the phone for almost four years, although it was apparently misplaced by her lawyers for one of those years. There is no chain of custody for the phone. It is not at all clear how the "testing" that English discusses would prove that her phone was not new when she received it in 2013.[8]

The only "testing" that English proposes is akin to a visual examination, which I address below.[9] Dkt. No. 298 at 2:7. In addition, she claims that "Thang Huynh also told Kennedy that there is a way to tell if the phone has been opened previously." *Id*. Whether the device has been opened before is one thing, but whether the phone was new three years ago is something entirely different.

English beseeches the Court to allow her to open up the phone, "take the parts out, test the phone, and run standard industry tests on it." Pl.'s Statement Regarding Testing Pl.'s iPhone at 1:15–16 (Dkt. No. 298). She states that "the parts are coded and numbers and letters can help identify whether the phones are refurbished or used." *Id*. at 2:5–6. English submits a declaration

---

[8] Plaintiff's own expert report submitted in support of class certification confirms this conclusion: "Electronic parts and products (devices, equipment) are known to wear-out with time, usage conditions and environmental conditions." Kennedy Decl. in support of Class Certification, Ex. 1 (Pecht Report) (Dkt. No. 189-1) ¶ 23.

[9] She also mentions "diagnostic, software and application tests that can be run," English Decl. ¶ 5 (Dkt. No. 305-15), but never elaborates on this testing. *See* Dkt. No. 299 at 4:20–22. She references "step-by-step testing instructions." *Id*. at 3: 7–8 (citing Dkt. No. 213-13). I do not see, and English does not explain, how the referenced procedures, entitled "iPhone Finished Goods Reclamation Process," Dkt. No. 213-13, would be used to identify whether the phones English received as replacement units in 2013 were new at the time she received them.

United States District Court
Northern District of California

from her telecommunications expert, Dr. Nettleton, describing the various identifying numbers on which she sought discovery: IMEI, MEID, IMSI, ICCID, HEX, DEC, and serial numbers. Nettleton Decl. ¶¶ 3–15 (Dkt. No. 304-12). But nowhere does she explain how she will use these numbers to prove whether or not her phone was new.[10] Apple has stated that "the replacement iPhones and their component parts have no 'service history' because they are brand new." Dkt. No. 289 at 5:7–8. Apple argues that "neither Plaintiff nor her telecommunications expert … provides any basis as to *why* these numbers are relevant to whether Plaintiff's replacement iPhones were new." Reply at 2 n.5 (emphasis in original). In the absence of an explanation of *how* she would use the numbers to determine whether the phones were new or used, she has not met her burden to show that this information is "essential."

Plaintiff proffers "expert" declarations stating that phones can be disassembled and visually inspected for fingerprints, scratches and other marks. Dixon Decl. ¶¶ 9–10 (Dkt. No. 304-16);[11] Tapia Decl. ¶ 25 (Dkt. No. 304-17); Huynh Decl. ¶ 5 (Dkt. No. 304-21);[12] *see also* Dalrymple Decl. (Dkt. No. 310-6).[13] Apple contends that an iPhone 4 cannot be taken apart

---

[10] As an aside, Lanigan testified that "most IMEI numbers are produced later in the process. The serial number is produced in the beginning of the process." Lanigan Depo. 226:6–9. In light of this information, I do not see, and English does not explain, how an IMEI number would provide a different or more thorough history than a serial number.

[11] Apple moves to strike the Dixon Decl. (Dkt. No. 304-16) and corrected Dixon Decl. (Dkt. No. 310-3) because she is not an expert and has no basis for her testimony. Reply at 4–6 (Dkt. No. 320 [redacted]; 319-3 [under seal]. According to Apple, the Elk Grove facility where Dixon ████████████████████████████, and the "sole basis for her purported 'expert' opinion is the five hours of training she claims she received from Apple and her 'experience' during her time at Apple." Reply at 5; *see* Lanigan Decl. ¶ 7 (Dkt. No. 208-17[under seal])(noting the type of work done at the Elk Grove facility). Apple also notes that workers at the Elk Grove facility do not open or take apart iPhones. Garbutt Decl. ¶ 5 (Dkt. No. 319-8). Since the evidence indicates that English's replacement units were new, I find the Dixon declaration minimally relevant and hardly probative, and give it little weight. She is not an expert. I do not, however, find it necessary to strike the declaration. Apple's motion is DENIED.

[12] Apple moves to strike the Huynh Declaration because he is not an expert and his opinion lacks foundation. Reply at 6. As discussed, I agree that Huynh does not provide sufficient details regarding the "testing" or visual examinations he proposes. His declaration need not be stricken, but I consider its deficiencies in deciding whether testing is warranted.

[13] English filed a declaration from a "fingerprint expert" expounding on the process of "fingerprinting." Dalrymple Decl. (Dkt. No. 310-6). Apple moves to strike the Dalrymple declaration as untimely because plaintiff filed it five days after her deadline to oppose summary judgment. *See* Order at Dkt. No. 300. Plaintiff does not dispute that the declaration was untimely.

completely and put back together without compromising the iPhone. Schaeffer Decl. ¶ 3 (Dkt. No. 320-9). I will address each declaration in turn.

The Dixon declaration is of little to no value since she ████████████████████, and there is no evidence or argument relating her work to a disposition of whether English's phone was new when she received it in 2013. Huynh himself states that he "*may* be able to tell if Ms. English's phone contains refurbished or used parts." Huynh Decl. ¶ 4. But an unsupported declaration that he *may* be able to tell if the phone contains refurbished or used parts is not enough to show "that the facts sought exist." *Campbell*, 138 F.3d at 779. And the Tapia declaration, discussed in greater detail in Section III, below, confuses the matter even further, as he states that "Apple also frequently put used or refurbished parts in even their brand new devices." Tapia Decl. ¶ 25. If that is true, and the phone—whether new, used, or remanufactured/refurbished—might contain used or refurbished parts, there would be no purpose in "testing" it.

There are several problems with the reliability of any evidence ascertained as a result of a visual inspection. First, the presence of fingerprints (or any other marks) would not mean that the phone was not new when English received it in 2013. Counsel for English avers that she "does not *believe* that Ms. English's phone has even been opened." *Id*. (emphasis added). Counsel's "belief" does not establish a foundation. And even if Huynh can determine that the phone has been opened previously, there is not enough evidence to even begin to posit when it may have been opened or by whom. Because a chain of custody has not been established, the origin of any fingerprints (or any other markings) cannot be determined.

English's declaration stating that she, her family members, and third parties have never opened the phone is hardly sufficient to establish a reliable chain of custody either. English 2nd Decl. ¶ 6 (Dkt. No. 304-15). She cannot speak for others, nor does she indicate that the phone was always in her possession (as opposed, for example, to being in her son's possession). She states that on September 24, 2015, she placed the phone in a plastic bag, handed it to Ms. Kennedy (her lead lawyer) and the next day viewed a photograph emailed by Mr. Parker (one of her other

*See* Mot. for Leave to File a Supplemental Mot. ¶ 8 (Dkt. No. 310). Because the declaration was untimely (and is of no value), it is STRICKEN.

lawyers) to Ms. Kennedy and confirmed that the photograph appeared to be of the same phone that she had handed over to Ms. Kennedy the previous day. *Id*. ¶¶ 4–5.  Then she says that the phone photographed by Mr. Parker on October 15, 2016, more than a year later, appears to be the same phone that she handed to Ms. Kennedy on September 24, 2015. *Id*. ¶ 6.  This is not persuasive. But even if I accept that the phone is the same phone and that the phone has never been opened or tampered with, English *still* has not demonstrated that there is a way to test the phone to determine whether or not it was new when she received it in 2013.

While English submits declarations proposing her "fingerprint" theory, she offers no corroborating evidence, such as a refurbished phone containing fingerprints, to bolster its reliability.  According to Lanigan, the service units that are remanufactured (as opposed to new buy units) come from service factories with few differences from those factories that ship only the latest device.  Lanigan Dep. 95–97 (Dkt. No. 304-5); *see also* Lanigan Decl. ¶ 5 ("Remanufactured iPhones are assembled using the same manufacturing process as new iPhones, and could contain both new parts and recovered parts that have been extensively tested. … These iPhones are manufactured by the same contract manufacturers that manufacture the new iPhones Apple sells in its stores, and the production lines on which these iPhones are manufactured are identical to those for new iPhones Apple sells in its stores, and the production lines on which these iPhones are manufactured are identical to those for new iPhones.")  There is no reason to believe that a phone processed in a service factory would contain fingerprints, while a phone processed in another factory would not.

Plaintiff insists that "the device may contain the very answers and evidence Plaintiff needs to prove her case." *Id*. at 4:16–17.  But she never explains how such "answers and evidence" will prove that her phone was refurbished in 2013.  Apple has repeatedly opposed plaintiff's requests for additional time and discovery on the basis that the amount of discovery is grossly disproportionate to plaintiff's claim, since out of pocket expenses relating to her claim are less than $300.  *See, e.g.*, Defs.'s Opp'n to Plaintiff's Mot. to Extend Time at 1:5-10 (Dkt. No. 292). Because of the implausibility of her theory, the burden on Apple, and the lack of good cause as a result of her delay in seeking this discovery, English is not entitled to additional discovery or an

18

opportunity to test the phone under the Court's auspices.  *See Garrett v. San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987)(In seeking additional discovery under Rule 56, "an opposing party must make clear what information is sought and how it would preclude summary judgment.")

**C.   Additional Discovery Related to English's Claim that she was Denied a Second Incident**

Apple moved for summary judgment on the issue of whether English was denied a second incident under AC+.  *See* Mot. at 17.  English visited the Apple store on February 28, 2014 because her iPhone had a cracked screen.  TAC ¶ 38.  She asserts that when she attempted to use her second incident under AC+, an employee named Ryan told her she had used up both accidental damage incidents under her plan.  English 2nd Decl. ¶¶ 10–11.  Apple maintains that its business records demonstrate that an employee named Morrison assisted English, and that the records indicate that she was not denied an incident, but rather elected to wait for an upgrade opportunity.  Mot. at 17.

The parties have twice briefed the issue of the employee named "Ryan."  Dkt. Nos. 118, 297.  Although Morrison admits that there was a male employee by the name of Ryan matching the description provided by English, Morrison Dep. at 196:20 (Dkt. No. 310-10), Apple insists that this employee has no recollection of assisting English.  Dkt. No. 118 at 3:18-4:4; Dkt. No. 297 at 5:15-22.  This does not justify Apple's withholding Ryan's identity given that Morrison did not remember assisting English.  *See* Morrison Dep. at 155:25 (Dkt. No. 288-2).  But the question is whether Ryan's deposition is important or necessary to oppose Apple's motion for summary judgment.  Because I find that English fails to state a claim for relief, even assuming she was denied a second incident under AC+, a deposition of Apple employee "Ryan" is unnecessary.  *See* III, below.

**II.   UNDISPUTED EVIDENCE ESTABLISHES APPLE'S MOTION**

**A.   Standing**

**1.   Injury**

Apple argues that since English received two new phones under AC+ she has not suffered an injury in fact necessary to satisfy Article III standing for her claims under the CLRA, FAL, UCL, Secondhand Merchandizing Labeling law, and for fraud.  Mot. at 9.  To have standing, a

plaintiff must show: (1) an injury-in-fact, i.e., an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) causation, which means her injury is fairly traceable to the challenged conduct of the defendant; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992).

English claims that her replacement phones were not new, but rather were refurbished, and that she suffered injury by overpaying for AC+ and the replacement iPhones, and losing the iPhone she owned and turned in at the time she purchased AC+. TAC ¶ 30, 57. She contends that, even if the phones she received were new, she suffered an injury because she would not have bought AC+, a replacement device, or turned in her original phone if she knew that there was a chance she would receive a used or refurbished phone as a replacement unit. Opp'n 16 (Dkt. No. 304-3). She claims the following damages: "the improper denial of an incident under AC+, the loss of a new replacement phone with new parts due to the denied incident, the loss of an extended warranty contract that afforded for only new replacements, the loss of new phones with new parts, the value of her original phone …, her original replacement cost for the first device purchased, the cost of AC+, the cost of the replacement devices ("service fees"), the phones that she had to turn in each time, and attorneys' fees, costs, and expenses." *Id*. at 17.

Apple disputes English's alleged injury because (1) she could not have purchased the Best Buy plan she claims she would have purchased; (2) the Best Buy plan was more expensive; and (3) the Best Buy plan called for refurbished replacement devices. Reply at 14–15.

While it may be true that "[a] service that can provide either new or used replacement phones is worth less than a service that provides only new replacement phones[,]" Opp'n at 16, the fact remains that plaintiff received only new replacement phones. She therefore was not "deprived of an agreed-upon benefit … ." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009). But English maintains that she "would not have purchased the AC+ plan had she been made aware of its policies, including the nature of replacement devices, the loss of an incident at enrollment, and the fact that she would not receive a full 2-years on her plan." *Id*. at 16–17. While issues remain regarding causation, *see* below, it is at least disputed whether English's injury-in-fact is the price she paid for AC+ and her replacement units, and whether she would not

20

have purchased AC+ if she knew she *could* receive used or refurbished phones.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) (finding an injury-in-fact where consumers purchased a product or paid more for it than they otherwise would have paid).

### 2.   Causation/Actual Reliance

Even if English suffered an injury-in-fact, she must allege causation and redressability for Article III standing.  To establish causation, she contends that her injury is "traceable to Defendants' conduct (i.e., misrepresentations and omissions)… ." Opp'n at 17.  Plaintiff faces three problems here.  First, she fails to proffer specific evidence of an oral misrepresentation.  Second, the undisputed facts prove that she did not read the AC+ terms and conditions, and therefore, could not have relied on them in making her purchase decisions.[14]  If she did not view or rely on the AC+ terms and conditions, then Apple's alleged written misrepresentations could not have caused her injury.  And third, as discussed later, I do not find that Apple's written representations would be misleading to a reasonable consumer.

### a.   Oral Misrepresentation

English contends that the Apple employee who helped her told her that replacement devices would be new. TAC ¶ 36. In her opposition to summary judgment, English fails to directly raise her oral misrepresentation theory and does not offer evidence in support of it.  She merely mentions it in passing.  Opp'n at 3 ("Apple associates also use the word 'new' to describe the devices… .).  Although evidence supporting this theory was submitted during the class certification briefing, it hardly helps English here.  *See* Kennedy Decl. in support of Pl.'s Mot. for Class Certification, Ex. 9 (Pozderac Depo.)(Dkt. No. 180-14[sealed]).  Nicholas Pozderac, the employee who sold English AC+ in February 2013, testified that—prior to 2012—when customers asked if their replacement devices were refurbished, he told them "[i]t would have been a new device."  Pozderac Dep. at 103:22–104:2.  But sometime in early 2012, an interaction with a customer prompted him to look up the AC+ terms and conditions, where he discovered the "new

---

[14] Plaintiff's argument that she read the Repair terms and conditions, which reference the AC+ terms and conditions, is not helpful.  Reading a reference to the AC+ terms and conditions is not equivalent to reading the AC+ terms and conditions.  *See* II.A.1, below.

United States District Court
Northern District of California

and functionally equivalent to new" language.  *Id*. at 101:4–23.  English does not submit evidence

of the precise language Pozderac used in his interaction with her in February 2013, but one can

infer that he may have revised his wording in 2012, after reading Apple's "official" terminology as

documented in the AC+ terms and conditions.  *Id*. at 104:10.  Even without giving weight to this

reasonable inference that contravenes English's theory, she fails to meet her burden to proffer the

evidence to support her allegations of an oral misrepresentation.  *In re iPhone Application Litig.*, 6

F. Supp. 3d 1004, 1012 (N.D. Cal. 2013)("[A]t summary judgment, a plaintiff may no longer rely

on 'mere allegations,' but rather must set forth 'specific facts' supporting standing.")

Accordingly, her allegations of misrepresentation must depend on either the AC+ terms

and conditions, which she did not read, or her "unbranded white box" theory.  With either theory,

she must proffer evidence of actual reliance to  satisfy standing requirements under the CLRA and

UCL, *In re iPhone Application Litig.*, 6 F. Supp. 3d at 1012 – 13, and the FAL, *Pfizer Inc. v.

Superior Court*, 182 Cal. App. 4th 622, 633, 105 Cal. Rptr. 3d 795, 804 (2010), and to state a

claim for common law fraud, *Lazar v. Super. Ct*, 12 Cal. 4th 631, 638 (1996).

b.   Never Viewed or Relied on AC+ Terms and Conditions

In the order denying class certification, I found "it is undisputed that English did not view

or rely on the AC+ terms and conditions in making her purchase," and so "cannot bring claims

under the CLRA, FAL, or UCL, or for fraud, based on misrepresentations she was not exposed to

and did not rely on in making her purchase."  Class Certification Order at 20:10–13 (Dkt. No.

225)(citing *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (2009); *Pfizer Inc. v. Superior

Court*, 182 Cal. App. 4th 622, 634 (2010)).  Plaintiff admits she never read the AC+ terms and

conditions.   Opp'n at 19; English 2nd Decl. ¶ 14.  But she argues that she did not have to view the

AC+ terms and conditions because the Repair terms and conditions reference the AC+ terms and

conditions, and this is not the only basis of misrepresentation.[15]  Opp'n at 19.  Lastly, she argues

misrepresentation in "Apple's overall sales strategy and its failure to adequately disclose its

---

[15] She also asserts oral misrepresentations, which I addressed above, and misrepresentations in the
"plain white box" theory, which I address below.

United States District Court
Northern District of California

replacement policy." *Id.* "To survive a standing challenge at summary judgment, Plaintiffs must be able to provide *some* evidence that they saw one or more of Apple's alleged misrepresentations, that they actually relied on those misrepresentations, and that they were harmed thereby." *In re iPhone Application Litig.*, 6 F. Supp. 3d at 1027.

The Repair terms and conditions state:

> When the product is covered by warranty or an extended service contract, such as AppleCare Protection Plan, Apple will perform repairs under the terms of the warranty or the extended service contract, provided that you have presented satisfactory proof of the product's eligibility for such repairs.

English 2nd Decl. ¶ 14 (Dkt. No. 304-15). I do not see how reading the above cited language establishes that the AC+ terms and conditions included a representation that consumers would only receive new phones under the terms of the extended service contract. Since English is unable to meet this "far from unreasonable" burden, *In re iPhone Application Litig.*, 6 F. Supp. 3d at 1027, to demonstrate that she saw and relied on an alleged misrepresentation in the AC+ terms and conditions, she lacks standing under this theory, and Apple is entitled to summary judgment of those claims that depend on an affirmative misrepresentation. *See id.* at 1013 ("California courts have held that when the 'unfair competition' underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, in order to have standing to sue.")

To the extent English claims that her injury was caused by an omission on Apple's part, she fares no better. I previously rejected her omission theory in part because she "did not view or rely on the terms and conditions in making her purchase… ." Class Certification Order at 22. Moreover, "to be actionable the omission must be contrary to a representation actually made by the defendant… ." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006). The AC+ terms and conditions state that the phones would be "new or equivalent to new in performance and reliability." TAC Ex. B (Dkt. No. 139-2); TAC Ex. C (Dkt. No. 139-3). English cannot show any omission that is contrary to this representation.[16]

---

[16] English's argument that "Apple's misrepresentations and omissions … fail[] to make consumers aware of the [AC+] plan's true length calculated by the personal device brought in by the consmer

c.   Plain White Box Theory

Plaintiff also asserts a theory of misrepresentation that depends on the context of Apple's entire sales strategy.[17]  She points to the presentation of the replacement unit in a sealed plain white box and a plastic film on the device as creating "an overall impression on a consumer that the device is new."  Opp'n at 20.  Apple argues that a plain white box is not a representation because "[w]hen a customer purchases a new iPhone, it comes in an Apple-branded box that contains the iPhone itself, along with accessories including an iPhone charger and headphones."  Mot. 15; Healy Decl. 13 (Dkt. No. 209-32).  In an AC+ transaction, the iPhone does not come in an Apple-branded box, the consumer does not receive any accessories, and the consumer does not keep the box.  Mot. at 15–16.

English acknowledges these differences, although she claims they are minor.  Opp'n at 21; Dkt. No. 213-14 at 14-15; 233-43 at 3.  She even points out additional differences—there is more color on new boxes and one is slightly larger.  Opp'n at 21.  Given the numerous differences, which she acknowledges, plaintiff's plain white box theory is unconvincing.  Even if the plain white box was a representation, English still presents no evidence that she relied on it.[18]

_____

[sic] at the initial purchase of AC+" suffers from the same deficiency.  Opp'n at iii; *see also id.* at 15.  The AppleCare+ Certificate emailed to her son at the time she purchased AC+ explicitly states "AppleCare+ extends service coverage to 24 months from the purchase date of your Apple product… ."  Patel Decl. ISO Defs.' Opp'n to Class Certification Ex. C (Dkt. Nos. 209-4, 208-8[redacted]; Dkt. No. 208-7[under seal]).  And further, "[i]f you purchased AppleCare+ in conjunction with a service transaction, your coverage end date remains 24 months from the date you purchased your Apple product."  *Id.*  Moreover, the certificate clearly discloses the "Coverage Period End Date" as September 25, 2014—two years from the date she purchased the original phone, *not* the AC+ service plan.  *Id.*  I find these disclosures adequate to put a reasonable consumer on notice of the coverage period end date.  Therefore, Apple's training materials stating "two replacements are available for *up to* 2 years," Kennedy Decl. Ex. 14 (Dkt. No. 180-19)(emphasis added), would not be misleading to a reasonable consumer given Apple's affirmative representations.  Further, the same training materials explicitly state, "[b]ecause [AC+] protects the device for two years from the original purchase date, customers get the most out of [AC+] when they buy it with their device."  *Id.* at 5.  All of the evidence demonstrates that this theory of misrepresentation is baseless.

[17] It is worth noting that her arguments surrounding the plain white box theory have been inconsistent.  *See* Reply at 10.

[18] In this vein, English identifies the Smart Signs and claims that "[t]he box that represents what an iPhone 4s a [sic] service unit ("replacement device") looks like on a Smart Sign depicts a service unit box as a branded box with a logo."  Opp'n at 21.  She then states, "[w]hen Ms. English purchased she would have seen a logo branded box."  *Id.*  This allegation comes closer to an actual misrepresentation.  But, even still, English has not demonstrated that she actually relied

1    Moreover, the fact remains that her replacement phones were new.  As I stated in denying class

2    certification, "English does not explain how she can establish standing with respect to a theory

3    based on Apple's allegedly improper packaging of refurbished replacement iPhones if she

4    received only new replacement iPhones."  Order Denying Motion for Class Certification at 14

5    (Dkt. No. 226).

6    **B.   Even if Plaintiff Adequately Alleged Reliance, She Can Not Meet the Reasonable
          Consumer Standard**

7

8           For plaintiff to assert claims under the CLRA, FAL, UCL and for common law fraud, she

9    must meet the "reasonable consumer standard," which requires a "show[ing] that members of the

10   public are likely to be deceived."  *Freeman v. Time, Inc.*, 68 F.3d 285, 288 (9th Cir. 1995)(internal

11   quotation marks and citation omitted).  "The California Supreme Court has recognized that these

12   laws prohibit not only advertising which is false, but also advertising which [,] although true, is

13   either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse

14   the public."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  "Surveys and

15   expert testimony regarding consumer assumptions and expectations may be offered but are not

16   required; anecdotal evidence may suffice, although 'a few isolated examples' of actual deception

17   are insufficient."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008).

18          English points to "[a] plethora of call logs" that "show that many reasonable consumers

19   were deceived."  Opp'n at 22; *see* Kennedy Decl. Ex. B (Dkt. No. 180).  She also recites Apple's

20   terminology to refer to this "ceremonious presentation of the service units," as "polishing the

21   Apple."  Opp'n at 22 (citing Williams Dep. 215:22-216:1 (Dkt. No. 180-16)).  At least some of the

22   call logs provide proof that some consumers believed that they would receive new iPhones under

23   AC+.  *See* Call Logs (Dkt. Nos. 304-6–304-8).  But there is no evidence that these consumers'

24   expectations under AC+ was in any way connected to receiving their replacement units in a plain

25   white box.  Even if I simply accepted English's theory, she still has not alleged that she—nor any

26

27   _____

28   on the Smart Sign images.  Moreover, Apple explains that the photos English identifies as
     misleading are actually of Apple-branded boxes for new iPhones.  Reply at 11 (citing Dkt. No.
     233-43 at 3, 18).

United States District Court
Northern District of California

of the customers in the call logs—relied on the plain white box as an affirmative misrepresentation.  Her claims still fail on this ground.

In the absence of any evidence that English relied on any misrepresentations by Apple, she has not shown that her injury of purchasing AC+ was caused by Apple.  She received a new phone.  And her omission theory fails because Apple adequately discloses the terms of AC+, she just failed to read them.  "AC+ terms and conditions clearly state that replacement iPhones will be 'new or equivalent to new in performance and reliability,' and therefore not necessarily new." Mot. at 12 n.4.   A plaintiff asserting claims for fraudulent misrepresentation must show a specific misrepresentation that she actually relied on.  *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209, at *3 (N.D. Cal. Feb. 10, 2011).  Under any theory supported by evidence, English's injury was not caused by Apple, and she therefore lacks standing to pursue her misrepresentation claims.

## C.  Secondhand Merchandise Labeling Law Claim

The Secondhand Merchandise Labeling Law states:

> It is unlawful for any person, firm, or corporation ... to advertise, call attention to or give publicity to the sale of any merchandise, which merchandise is secondhand or used merchandise, or which merchandise is defective in any manner, or which merchandise consists of articles or units or parts known as "seconds," ... unless there is conspicuously displayed directly in connection with the name and description of that merchandise and each specified article, unit, or part thereof, a direct and unequivocal statement, phrase, or word which will clearly indicate that the merchandise or each article, unit, or part thereof so advertised is secondhand, used, defective[.]

Cal. Bus. & Prof. Code § 17531.  There is no genuine issue whether the phones English received were new.  The Secondhand Merchandise Labeling Law does not apply.  Apple's motion for summary judgment of this claim is GRANTED.

## III. THE DENIAL OF A SECOND INCIDENT, IF IT OCCURRED, FAILS TO CREATE A MATERIAL DISPUTE BECAUSE THERE IS NO EVIDENCE OF FRAUDULENT INTENT

Let's assume, as English hopes, that the Apple employee named Ryan would remember her, their conversation nearly three years ago, and that when he looked up her information, it showed that she didn't have any incidents left, despite the note to the contrary written by

United States District Court
Northern District of California

26

United States District Court
Northern District of California

Morrison.[19]  That might establish a breach of contract claim if Apple failed to provide English with two incidents, in addition to the "incident" at the time she purchased AC+.  But English does not assert that claim.  Instead, she alleges claims based on fraud under the UCL, CLRA, FAL and common law, none of which reference the purported denial of a second incident.  *See* TAC ¶¶ 73–127.  Both parties dedicated significant portions of their briefing to the issue of whether plaintiff was denied a second incident, and yet neither party has identified to which claims the issue relates.  *See* Mot. at 17–19; Opp'n at 10–15; Reply at 12–13.  Rather than supporting an element of her fraud-based claims, the denial of a second incident seems to go towards English's purported damages.  *See* Opp'n at 17.  Although this case has been pending since 2014, English has proffered no evidence of fraud.

Apple's records, prepared by employee Morrison, state that English: "decided to wait for an upgrade in may [sic][20] before getting a new phone[.]  Resolution: Ownership Opportunity[.]  Reason: Future Purchase[.]"  O'Neil Decl., Dkt. No. 208-23 at APL00000597 [sealed]; Dkt. No. 209-37 at APL00000597 [redacted].  Morrison testified that his notes from the transaction meant English "ha[d] the option of purchasing another product as opposed to doing a service transaction through the Genius Bar," and she "chose not to use the Genius Bar to get another phone, but, instead, to wait for her upgrade, which, to me, I would describe as an ownership opportunity."  Patel MSJ Decl. Ex. 1 (Morrison Dep.) at 166:5–9, 14–17.

English counters with a declaration from former Apple employee Gabriel Tapia, who has no personal knowledge about the way Apple responded to her second incident.  But he interprets Apple's records to conclude that they "validate that Ms. English indeed lost an incident."  I do not

---

[19] This is the evidence Ms. Kennedy suggested Ryan might provide when I asked for an offer of proof at the hearing on this motion.  It seems unlikely that Ryan would testify in this way.

[20] Both parties accept that "may" does not accurately reflect when English would be eligible for an upgrade, as she was not eligible for an upgrade until around September 26, 2014 (two years following the purchase of her "original" device).  But neither party discusses whether the employee who took the notes (whether it was Morrison or Ryan) mistakenly wrote "may" or was told by English that she would be eligible in May.  If it was a mistake, that's one thing, but if English represented *and believed* that she would be eligible for an upgrade in May, then the theory of her waiting eight weeks and foregoing the $49 service fee is more plausible than her deciding to wait eight months for an upgrade.

1   think that the records require "expert" interpretation—the author of the note has explained what he

2   meant.  *See id*.  Tapia, who worked at Apple for seven years and helped work on the

3   MobileGenius, an application used by Apple employees on the floor to assist customers, said that

4   the loss of an incident happened at all the New York stores where he worked.  Opp'n at 10

5   (quoting Tapia Decl. at Dkt. No. 304-17[under seal]);[21] Tapia Decl. ¶ 4 (Dkt. No. 304-17).  He

6   states, "[w]hen processing a repair in MobileGenius or iRepair, an icon would appear if the phone

7   was purchased with AppleCare+.  When all AppleCare incidents were consumed, the plus sign

8   would turn to a red logo."  *Id*. ¶ 10.  Tapia reviewed the records from English's February 28, 2014

9   interaction and reported that "███████████████████████████" meant that the phone

10  did not have AppleCare+ coverage available.  *Id*. ¶ 14.

11         English highlights the record notes to bolster her position: ████████████████

12  ████████████████████████████████████████████████████████████████████

13  ████████████████████"  Opp'n at 10 (quoting Dkt. No. 232-12)[22].  Apple counters that this

14  description "mean[t] that there [was] accidental damage, and does not provide any information

15  regarding whether the iPhone is covered under AC+."  Reply at 13.  Apple contends that "███████

16  ████████████████ could fall under AC+, or it could fall outside AC+[,]" and that English's

17  "interpretation of [the] records … does not create a genuine dispute of material fact."  *Id*. at 12–

18  13.  English claims that the interpretation that she elected to forego an incident under AC+ to wait

19  for her upcoming upgrade does not make sense since she did not upgrade until eight months later

20  on October 18, 2014 and had to operate with a cracked screen until then.[23]  *Id*. at 11.  She also

21  highlights Apple's own evidence that "this AC+ program [allowing enrollment 'at time of

---

[21] Numerous Tapia declarations have been filed in this case.  *See* Dkt. Nos. 233-29[redacted], 265-4[sealed] (mistakenly labeled as 265-5), 180-7[sealed], 214-26[sealed].  A version of this declaration was previously sealed by the court.  Dkt. No. 285.  Defendants filed a redacted version at Dkt. No. 286.  In the Order Denying Motion for Reconsideration, I found that the declaration labeled as exhibit 13N was "too conclusory and speculative to materially impact the analysis in the Class Certification Order."  Dkt. No. 263 at 7 n.7.  In this Order, I consider his declaration only as it relates to English and Apple's records of English's transaction.

[22] This exhibit was previously sealed by the court.  Dkt. No. 285.

[23] *See supra* note 9.

United States District Court
Northern District of California

incident'] had the highest number of incidents utilized compared with any other AC+ program." *Id*. at 12 (citing Healy Decl. (Dkt. No. 209-32 at 22:27)). And lastly, she points to Apple's own training material in an unsuccessful attempt to bolster her position. *See* Opp'n at 10. The training material states that sometimes an "ownership opportunity," i.e., an opportunity to buy a new phone, is a better option for a customer than receiving a replacement unit through AC+. Opp'n at 10 (citing Dkt. No. 180-19 at 9[under seal]). None of this is relevant to whether English was denied a second incident.

If there is a genuine dispute whether English was denied a second incident, it does not create a dispute regarding any fraud or misrepresentation, both of which require intent. According to Apple, its policy, training materials, and customer records "establish that customers who, like Plaintiff, purchased AC+ at the time of an out-of-warranty repair did in fact receive coverage for two incidents of accidental damage in addition to the initial out-of-date warranty repair." Mot. at 18. To counter Apple's contentions, English points to the name of the program ("AppleCare+ Enroll at Time of Incident"), the same training materials, and the statistics behind the number of customers who purchased AC+ at the time of incident and allegedly used both incidents. She does not suggest how Ryan's alleged failure to provide a second incident was fraudulent, and she therefore has not shown how the issue of whether she was denied a second incident is material to any of her claims in this case.

## IV. ADMINISTRATIVE MOTIONS[24]

On January 27, 2015, this court signed a stipulated Protective Order in this case. Dkt. No. 127. To abide by this protective order, plaintiff filed an administrative motion to file certain documents under seal, Dkt. No. 304, and "corrected" exhibits, Dkt. No. 306. Plaintiff also introduces some exhibits via declaration at Dkt. No. 310. "Plaintiff takes no position … but wishes to give defendants every opportunity to request that the documents be sealed." Admin. Mot. ¶ 3, *see also* Kennedy Decl. ¶ 5 (Dkt. No. 304-1). Given that plaintiff seeks only to abide by the protective order, I will focus on defendants' responses to plaintiff's motions.

---

[24] Plaintiff's motions at 304 and 310 are addressed in the table. Plaintiff's motion at 314 is TERMINATED AS MOOT. Defendants' motion at 319 is addressed in the table.

Some documents filed by plaintiff were previously sealed, which is indicated in the table below. For ease of reference, documents are ordered by ECF number. Apple submitted the declaration of Pami Vyas in support of sealing, which states that plaintiff's opposition and supporting exhibits contains: "(i) confidential information regarding Apple's testing processes, (ii) confidential information regarding Apple's sales and service numbers, and (iii) confidential information regarding Apple's databases and data capabilities." Vyas Decl. ¶ 2 (Dkt. No. 315-1).

Apple filed a motion to seal portions of its reply, Dkt. No. 319, supported by the Vyas declaration at Dkt. No. 319-1. For the most part, I find Apple's requests specific and narrowly tailored to cover only highly confidential information. Apple's specific and narrowly tailored requests to seal information pertaining to its testing processes and procedures, sales and services numbers, and databases are GRANTED as indicated in the table below.

However, I am unsealing a portion of Apple's business records pertaining to English that I previously sealed because I do not find that Apple has established compelling reasons to seal the text entry. The request to seal all references ███████████████████████████████ ████████████████████████████████████████████████████████████████ ██████." is DENIED. In addition, I plan to unredact this Order in its entirety and to unseal all general information related to the type of devices used as replacement units. There is no compelling reason to redact any of it. But because I previously granted requests to seal this information, if Apple disagrees it should respond within seven days with compelling reasons why any reference in this Order should remain under seal.

I otherwise rule on the motions as follows:

| Dkt. No. 315 Defs.' Response to Pl.'s Administrative Mot. to File Certain Documents Under Seal | | | | |
|---|---|---|---|---|
| ECF No. | Ex. No. | ECF No. of Previously Sealed Ex. | Document | Court's Ruling |
| 304-3 | N/A | N/A | Pl.'s Opp'n to Defs.' Mot. for Summ. J.<br><br>Portions to be sealed: 9:11–13; 10:23.5; | GRANTED IN PART DENIED AS TO 10:23.5 |

|  |  |  | 11:24; 22:16–17 |  |
|---|---|---|---|---|
| 304-4 | N/A | N/A | Renee Kennedy Decl. | DENIED |
| 304-5 | Ex. A | 256-7 | Michael Lanigan Dep. excerpts | GRANTED (previously sealed) |
| 304-6 | Ex. B-1 | N/A | GCRM records | DENIED |
| 304-7 | Ex. B-2 | N/A | GCRM records | DENIED |
| 304-8 | Ex. B-3 | N/A | GCRM records | DENIED |
| 304-9 306-1 | Ex. C | 256-28 | Training – Enrolling in AC+ at the Time of Incident on an iPad | GRANTED (previously sealed) |
| 304-10 306-2 | Ex. D | 256-30 | Training – Enrolling in AC+ at the Time of Incident on an iPod | GRANTED (previously sealed) |
| 304-13 | Ex. G | N/A | Apple's Highly Confidential Responses to ROG Nos. 3, 5, 10-12, 18-24, 29(a), 30-34, 39 in Pl.'s First Am. Interrogatories, Set Six

Portions to be sealed: 5:4–7; 6:8–11; 14:21; 18:13–16; 19:14–19, 21–25, 27–28; 20:1–4 | GRANTED |
| 304-15 | Ex. J | N/A | Fabrienne English Decls. | DENIED |
| 304-16 | Ex. M | N/A | Bathena Dixon Decl. | DENIED |
| 304-17 | Ex. N | Same information sealed in previous versions of Tapia Declarations (Dkt. Nos. 223-21, 225, 253-3, 285). | Gabriel Tapia Decl.

Portions to be sealed: 5:11, 15.5; 7:9.5–12 | GRANTED IN PART; DENIED IN PART (5:11, 15.5) |
| 304-18 | Ex. ) | N/A | Salvador Toledo Depo. Excerpts | DENIED |
| 304-19 | Ex. P | 256-32 | Training – AC+ within 30 days | GRANTED (previously sealed) |

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| 304-20 | Ex. Q | 256-36 | Training – AC+ Processing an AppleCare+ Repair | GRANTED (previously sealed) |
| --- | --- | --- | --- | --- |
| 304-21 | Ex. R | N/A | Thang Huynh Decl. | DENIED |
| 310-2 | "Ex. A"[25] | N/A | Bathena Dixon "Corrected" Decl. | DENIED |
| 310-9 | Ex. L | N/A | Kenneth Morrison Depo. Excerpts | DENIED |
| **Dkt. No. 319** **Defs.' Mot. to Seal Portions of Their Reply Filings in support of Summ. J.** | | | | |
| 320 | N/A | N/A | Apple's Reply  Portions to be sealed: 4:16; 5:3–6, 8, 23–24; 13:4–6, 8 | DENIED |
| 320-8 | N/A | N/A | Mitch Garbutt Decl.  Portions to be sealed: 1:10 | GRANTED |
| 320-5 | Ex. D | | Kenneth Morrison Dep. excerpts  167:11, 18, 21, 23; 168:8, 16–21 | GRANTED IN PART DENIED AS TO 167:11, 18, 21, 23 |

## CONCLUSION

I GRANT Apple's motion for summary judgment in full and will enter judgment accordingly.  English has failed to raise a disputed issue whether she relied on an affirmative misrepresentation made by defendants, dooming her CLRA, FAL, UCL, and common law fraud claims.  Her claim under Secondhand Merchandise Labeling Law claim fails because there is no dispute that she received new phones.  Her request for further discovery lacks good cause and is DENIED.

**IT IS SO ORDERED**.

Dated: January 11, 2017

WILLIAM H. ORRICK
United States District Judge

---

[25] This declaration is labeled as Exhibit A to a different Kennedy declaration entitled, "Declaration in Support of Plaintiff's Motion for Leave to File a Supplemental Motion to Seal and Also Leave to File Bathena Dixon's Corrected Declaration, Brian Dalrymple's Declaration, and Ex. L ISO Opposition to Summary Judgment." Dkt. No. 310-1.