# EXHIBIT 1

1   RENEE KENNEDY (SBN 24012954)
    Lead Counsel
2   Federal Bar No.: 2129107
    (admitted *pro hac vice*)
3   1620 S. Friendswood Dr., Ste. Apple
    Friendswood, Texas 77546
4   Telephone: 832.428.1552
    reneekennedy.esq@gmail.com
5
6   PETER KAFIN (SBN 301886)
    law@kafin.name
7   P.O. Box 748
    Fort Bragg, California 95437
8   Telephone: 707.357.2973
9
    Attorneys for Plaintiff
10  FABRIENNE ENGLISH
11
                    **UNITED STATES DISTRICT COURT**
12
            **NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO**
13

14  FABRIENNE ENGLISH                   )   Case No. 3:14-cv-01619-WHO
                                        )
15              Plaintiff,              )   RELATED CASE:  *Maldonado, et al. v. Apple
                                        )   Inc. et al.*, Case No. 5:16-cv-04067-WHO
16      v.                              )
                                        )   **NOTICE OF MOTION AND MOTION FOR**
17  APPLE INC., APPLECARE SERVICE       )   **RECUSAL OR DISQUALIFICATION OF**
    COMPANY, INC., and APPLE CSC INC.,  )   **DISTRICT COURT JUDGE WILLIAM H.**
18                                      )   **ORRICK; MEMORANDUM IN SUPPORT;**
                Defendants.             )   **REQUEST FOR JUDICIAL NOTICE**
19                                      )   **[28 U.S.C. § 455(b)(1), 28 U.S.C. § 144, 28**
                                        )   **U.S.C. § 455(a); L.R. 3-14; L.R. 7-2]**
20                                      )
21                                      )   Judge: William H. Orrick
                                        )   Courtroom: 2, 17th Floor
22                                      )   Hearing Date:
                                        )   Hearing Time:
23                                      )   Trial Date:
                                        )
24
25
26
27
28

**TO THE COURT ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on _____, or as soon thereafter as the matter may be heard in Room 2 on the 17th floor of the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Fabrienne English will and hereby does move the Court for an Order of recusal or disqualification of the Honorable Judge William H. Orrick on the basis of actual bias and prejudice against the plaintiff and the appearance of lack of impartiality concerning judicial actions undertaken by the Court.

The motion will be based on 28 U.S.C. § 455 and 28 U.S.C. § 144 and Plaintiff seeks relief that the Honorable Judge William H. Orrick currently presiding on the case recuse himself or be determined as disqualified with the case to be re-assigned to a different District Court Judge.

Dated:  February 8, 2017                    Respectfully submitted,

                                            */s/ Renee Kennedy*
                                            Renee Kennedy
                                            Lead Counsel

                                            */s/ Peter Kafin*
                                            Peter Kafin

                                            Attorneys for Plaintiff Fabrienne English

## TABLE OF CONTENTS

I.    STATEMENT OF ISSUES TO BE DECIDED ...................................................1

II.   STATEMENT OF FACTS ...................................................................................1

III.  LEGAL STANDARD ..........................................................................................1

      A.  Introduction to the Statutory Provisions ..................................................1

      B.  Disqualification for Actual Bias or Prejudice ..........................................2

      C.  Disqualification for Appearance of Impartiality .....................................3

IV.   JUDGE ORRICK HAS DEMONSTRATED ACTUAL BIAS AND
      PREJUDICE AGAINST PLAINTIFF AND ATTORNEY RENEE
      KENNEDY ..........................................................................................................3

V.    JUDGE ORRICK HAS DEMONSTRATED ACTUAL BIAS AND
      PREJUDICE AGAINST PLAINTIFF BECAUSE SHE USED
      SUBCONTRACTOR ATTORNEYS .................................................................6

VI.   JUDGE ORRICK DEMONSTRATED BIAS IN PRECLUDING THE
      PLAINTIFF FROM OBTAINING RELEVANT AND NECESSARY
      EVIDENCE ..........................................................................................................9

      A.    THE COURT PRECLUDED PLAINTIFF FROM OBTAINING
            VITAL EVIDENCE CONCERNING HER CELL PHONE ...................9

            1.    Requests Concerning Testing Protocols ......................................10

            2.    Requests for Physical Examination and Inspection of the
                  Phone ..............................................................................................11

      B.    THE COURT DEMONSTRATED BIAS IN OTHER DISCOVERY
            RELATED MATTERS ......................................................................12

            1.    The Judge Demonstrated Bias in Authorizing Court
                  Sanctioned Document Dumping .................................................12

            2.    The Judge Demonstrated Bias in Denying Plaintiff Merit-
                  Based Discovery due to Alleged Waiver by Class Counsel
                  Concerning Certification Discovery ...........................................13

            3.    The Judge Demonstrated Bias in *Sua Sponte* Limiting the
                  Scope of Plaintiff's Action ..........................................................14

**VII.   JUDGE ORRICK DEMONSTRATED BIAS THROUGH COURT SANCTIONED ABUSE OF THE LITIGATION PROCESS** ...........................................14

    **A.   THE COURT ACTED IN DERROGATION OF PLAINTIFF'S RIGHTS** ...........................................................................................14

        **1.   The Judge Demonstrated Bias at the Hearing on the Summary Judgment Motion** ...........................................................14

        **2.   The Judge Demonstrated Bias in Denying Addition of New Plaintiffs in the Suit** .....................................................................14

        **3.   The Judge Demonstrated Bias in Complaining about the Sufficiency of Papers while Denying Requests for Time and Additional Pages** ...............................................................................15

        **4.   The Judge Demonstrated Bias in Denying Amendment of Pleadings** .....................................................................................15

        **5.   The Judge Demonstrated Bias in Demonstrated Hostility towards Plaintiff's Claims in Litigation** ................................15

        **6.   The Judge Demonstrated Bias in Exceeding Jurisdiction by Unilaterally Wiping Out the Litigation Claims** ...................15

        **7.   The Judge Demonstrated Bias in Disparate and Unequal Treatment of Plaintiff's Counsel** .....................................15

        **8.   The Judge Demonstrated Bias in Denying Due Process of Law** ...............16

    **B.   THE COURT DEMONSTRATED BIAS BY PROVIDING FAVORTISM TO DEFENDANT APPLE** ...........................................17

        **1.   The Judge Demonstrated Bias in Preferential Treatment to Apple with Extensions of Time** ...........................................17

        **2.   The Judge Demonstrated Bias in Pre-Trial Scheduling of Discovery** ............................................................................18

        **3.   The Judge Demonstrated Bias in Excluding Apple's Bad Faith Discovery Conduct** ..........................................................18

        **4.   The Judge Demonstrated Bias in Issuing Rulings Based upon Convenience of Apple** ..........................................................18

        **5.   The Judge Demonstrated Bias in Disparate Allotment of Time on the Motion for Reconsideration** .........................18

        **6.   The Judge Demonstrated Bias in Sealing Non-Confidential Information** ...........................................................................19

**VIII.   JUDGE ORRICK DEMONSTRATED BIAS BY IGNORING PLAINTIFF'S EVIDENCE** ..................................................................................19

    **A.   THE JUDGE DEMONSTRATED BIAS CONCERNING TAPIA'S DECLARATIONS** ................................................................19

    **B.   THE JUDGE DEMONSTRATED BIAS CONCERNING PLAINTIFF'S EXPERT WITNESS LAUREL PALLOCK** .................19

    **C.   THE JUDGE DEMONSTRATED BIAS IN IGNORING RELEVANT EVIDENCE CONCERNING APPLE'S IPHONE MISREPRESENTATIONS** ...........................................................20

    **D.   THE JUDGE DEMONSTRATED BIAS IN IGNORING NETTLETON'S EXPERT DECLARATION** .........................20

**IX.   JUDGE ORRICK DEMONSTRATED BIAS THROUGH *EX PARTE* COMMUNICATIONS WITH MAGISTRATE JUDGE LAPORTE** ..............21

**X.   EVEN IF THE COURT DISAGREES THAT ACTUAL BIAS AND PREJUDICE IS ESTABLISHED, DISQUALIFICATON IS NONETHELESS REQUIRED BASED UPON THE APPEARANCE OF JUDGE ORRICK'S LACK OF IMPARTIALITY** ................................22

**XI.   DUE PROCESS HAS BEEN OFFENDED AND WILL CONTINUE TO BE VIOLATED IF JUDGE ORRICK CONTINUES TO PRESIDE OVER THE CASE** ..................................................................................23

**XII.   THE MOTION IS TIMELY** ..............................................23

**XIII.   POST-JUDGMENT BIAS AND PREJUDICE** …………………………24

**XIV.   CONCLUSION** .................................................................25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                          **<u>Page</u>**

*U.S. v. Brice*,
   748 F.3d 1288 (D.C. Cir. 2014) ............................................................................ 24

*Brokaw v. Mercer County*,
   235 F.3d 1000 (7th Cir. 2000) ............................................................................. 2

*Chitacha v. Harry L. Laws Co.*,
   690 F.2d 1157 (5th Cir. 1982) ............................................................................ 23

*Dembowski v. New Jersey Transit Rail Operations*,
   221 F. Supp. 2d 504 (D.C. N.J. 2002) ............................................................... 17

*Edgar v. K.L.*,
   93 F.3d 256 (7th Cir. 1996) ............................................................................... 3

*Gardiner v. A.H. Robins Co.*,
   747 F.2d 1180 (8th Cir. 1984) ........................................................................... 24

*In re Antar*,
   71 F.3d 97 (3d Cir. 1995) .................................................................................. 24

*Klapper-Barrett v. Nurell*
   742 So. 2d 851, 852–53 (Fla. Dist. Ct. App. 1999)…………….........................25

*Liljeberg v. Health Services Acquisition Corp*,
   486 U.S. 847 (1988)........................................................................................... 23

*Liteky v. United States*,
   510 U.S. 540 (1994)........................................................................................... 23

*LoCascio v. United States*,
   73 F.3d 493 (2d Cir. 2007)................................................................................. 17

*Preston v. United States*,
   923 F.2d 731 (9th Cir. 1991) ....................................................................... 23, 24

*Trinity Christian Center of Santa Ana, Inc., v. Macleod*
   2014 WL 4112936 at *31 (Cal.App. 2014)…………………………………..25

*United States v. Alabama*,
   828 F.2d 1532 (11th Cir. 2007) ................................................................... 23, 24

1

2

*United States v. Holland,*
   519 F.3d 909 (9th Cir. 2008) ............................................................................. 23

3

*United States v. Int'l Bus. Machines Corp.*
   539 F. Supp. 473, 477–78 (S.D.N.Y. 1982) …...……………………………………..25

4

5

*United States v. Studley*
   783 F.2d 934 (9th Cir. 1986) ............................................................................. 24

6

*United States v. Wilensky*
   757 F.2d 74 (4th Cir. 1983) ............................................................................. 24

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Motion for Recusal – Case No. 3:14-cv-01619-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Federal Statutes**                                                                 **Page**

28 U.S.C. § 144 ............................................................................ 1, 2, 6, 24

28 U.S.C. § 455(a) ............................................................................ 6, 23

28 U.S.C. § 455(b)(1) ........................................................................ 1, 2, 3


**Constitutional Provisions**                                                        **Page**

U.S. Const. Amend. V ....................................................................... 9, 23

U.S. Const. Amend. VII ....................................................................... 23

U.S. Const. Amend. XIV ..................................................................... 9, 23


**Federal Rules of Civil Procedure**                                                 **Page**

Rule 56(d) ......................................................................................... 10


**Federal Rules of Evidence**                                                        **Page**

Rule 408 ........................................................................................... 6, 22


**Judicial Code of Conduct**                                                         **Page**

Cannon 2 ............................................................................................. 3

Plaintiff's Motion for Recusal – Case No. 3:14-cv-01619-WHO

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2 **I.      STATEMENT OF ISSUES TO BE DECIDED**

3            The issue to be decided by this motion is whether the Honorable Judge William H. Orrick is

4 biased or prejudicial against the Plaintiff or has demonstrated a lack of impartiality with regards to the

5 adjudication of matters in this current case such that recusal is warranted or has the appearance of being

6 biased or prejudicial against the Plaintiff, or Plaintiff through her counsel.

7 **II.     STATEMENT OF FACTS**

8            This action was commenced on November 4, 2013 with the desire and intention that the case

9 would be a class action.  The action included claims under California law for violations of the Consumer

10 Legal Remedies Act ("CLRA"), the False Advertising Law ("FAL"), the Unfair Competition Law

11 ("UCL"), the Secondhand Merchandise Labeling Law, Cal. Bus. & Prof. Code § 17531, and fraud.

12 Plaintiff sought pre-certification discovery on class members, though that motion was denied.  (ECF 104

13 3:15-17).  Plaintiff then sought certification to have the case proceed as a class action, but that motion

14 was denied.  (ECF 225).  Plaintiff eventually filed a motion seeking reconsideration of the prior order

15 denying certification, but that motion was also denied.  (ECF 263).  Defendants filed a Motion for

16 Summary Judgment that was heard on Dec. 14, 2016 and disposed of on Jan. 11, 2017 against Plaintiff.

17 Plaintiff files this instant motion asserting actual bias and prejudice against Plaintiff and her attorney,

18 Renee Kennedy, and the appearance of partiality by the Judge William H. Orrick, which forms the basis

19 of the relief requested in conjunction with this motion.

20 **III.    LEGAL STANDARD**

21            **A.  Introduction to the Statutory Provisions**

22            Federal law recognizes two separate and legally distinct bases commonly employed for requiring

23 the removal of a presiding judicial officer from a case.  Respectively, those statutes deal with

24 disqualification based upon actual bias and prejudice, 28 U.S.C. § 144; 28 U.S.C. § 455(b)(1), and an

25 appearance of impartiality regardless of whether impartiality in fact exists, 28 U.S.C. § 455(a). The first

26 referenced provisions deal with a judicial officer's bias or prejudice against a party and, while similar,

27 have some procedural distinctions.  As relevant here, section 455(b)(1) provides that "[a judge] shall

28 also disqualify himself.  .  .  [w]here he has a personal bias or prejudice concerning a party, or personal

knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Section 144 states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. There are two critical procedural differences between section 455(b)(1) and section 144. First, section 455(b)(1) is a self-enforcing disqualification provision requiring the court to recuse itself even in the absence of a party seeking recusal; while section 144 requires a formal submission of papers, including an affidavit, to raise the issue of bias. Second, by its language, the requirements of section 455(b)(1) specify the moving party meets its burden by showing bias against him or her or, alternatively, favoritism to an adverse party while a motion under section 144 must necessarily be decided by a judicial officer other that the one to whom the motion relates. 28 U.S.C. § 144 ("such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding").

The second independent statutory basis for removal of a presiding judicial officer provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

## B. Disqualification for Actual Bias or Prejudice

A judge is to disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). The standard for determining disqualification is "whether a reasonable person would be convinced the judge was biased." *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000). Upon compelling evidence of actual bias or prejudice, recusal is required under Section 455(b)(1). *Id.* at 1025. Relevant here, the Seventh Circuit Court of Appeals held that section 455(b)(1) required recusal where a judge who was briefed privately by a panel of experts declined to inform the parties about the briefing's

contents.  The court acknowledged that section 455 is primarily concerned with knowledge gained "outside a courthouse"; however, knowledge acquired in a judicial capacity typically "enters the record and may be controverted or tested by the tools of the adversary process. . . . Off-the-record briefings in chambers, by contrast, leave no trace in the record—and in this case the judge has forbidden any attempt at reconstruction. . . . This is 'personal' knowledge . . . ."  *Edgar v. K.L.*, 93 F.3d 256, 259 (7th Cir. 1996).  Such is relevant to the issue of communications between Judge Orrick and Magistrate Laporte.

### C.  Disqualification for Appearance of Lack of Impartiality

Notwithstanding the existence of actual bias and prejudice, the mere appearance of a lack of impartiality necessitates disqualification.  A judge contemplating recusal should not ask whether he or she believes he or she is capable of impartially presiding over the case. The statute **requires** recusal in any case "in which [the judge's] impartiality might reasonably be questioned."  28 U.S.C. § 455(a); s*ee also* Code of Conduct for U.S. Judges, Cannon 2 ("A judge should avoid impropriety and the **appearance of impropriety** in all activities"). (emphasis added)

## IV.   JUDGE ORRICK HAS DEMONSTRATED ACTUAL BIAS AND PREJUDICE AGAINST PLAINTIFF AND ATTORNEY RENEE KENNEDY

The Court did not hide its disdain, bias and prejudice throughout the course of this litigation impugning and berating Plaintiff's counsel, Kennedy and therefore, hurt Plaintiff and her case. Examples of the demonstrated actual bias include:

- "I agree with Apple that class counsel's 'pattern of improper litigation conduct throughout the life of this case has caused unending and unnecessary distractions and delays in this litigation,' Opp. at 34, prejudicing the putative class and unduly burdening Apple, its attorneys, and the Court."  (English Decl. ¶¶ 1-2; ECF 225 24:24-25:3).

- .   .   .   "neither the dubious manner in which this litigation commenced nor the manifestly incompetent manner in which it has been conducted are cured at this juncture by yet another new co-counsel."  (English Decl. ¶ 2, ECF 225 25:15-16).

- The Court commented at the Certification Hearing that "*the way this case has been litigated from the get go has been very troublesome.*" (Kennedy Decl., Ex. A at 11:20-21) (emphasis

added). In particular, "Kennedy's *substantial involvement* with buying Apple products." (*Id.* at 11:23-24) (emphasis added).[1]

Although this was Kennedy's first federal case, in actuality, the burdens in the litigation are the result of Apple's court-sanctioned conduct. The Court's sanctioning of the following litigation tactics demonstrate the court's bias in favor of Apple because these are not examples of conduct that would reasonably be permitted by an unbiased court conducting the litigation in a case such as this.  Such examples include document dumping on the eve of depositions (allowing approximately 25,000 pages of document production 90% of the total discovery at that point only one full business day prior to the start of the week's 30(b)(6) depositions)[2] (ECF 240-1; 238 at 3:21-4:14); allowing Defendants to produce discovery late and incomplete as a routine matter (*see e.g.,* ECF 300, despite going through Court's hoops outlined in 7/19/16 hearing to obtaining discovery to no avail); allowing Apple to fail to meet and confer without repercussion (ECF 290-9); and failing to allow Plaintiff to open and/or test and/or inspect her own iPhone to prove her case (ECF 307; English Decl. ¶ 3).  The Court's bias and prejudice against Plaintiff and her counsel has been apparent in his rulings and comments over the course of the case, and this bias has been repeatedly demonstrated by the Court accepting Defendants' characterizations of events over descriptions provided by Plaintiff and her counsel. For example:

- "I agree with Apple that class counsel's 'pattern of improper litigation conduct throughout the life of this case has caused unending and unnecessary distractions and delays in this litigation,' Opp. at 34, prejudicing the putative class and unduly burdening Apple, its attorneys, and the Court." (English Decl. ¶ 4; ECF 225 at 24:24-25:1).

- "I accept defendants' characterization regarding matters that have been resolved in the meet and confer process, and order that production occur in accordance with these agreements." (English Decl. ¶ 4; ECF 138 at 4:11-12).

- "Apple made the representation that it wasn't him.  I accepted that." (Kennedy Decl. Ex. B, MSJ Hearing Tr. 31:18-19).

- ".  .  .  I agree with Apple that, on this record, none of these theories provides a viable basis for a certifiable class." (English Decl. ¶ 4; ECF 225 at 11:4-5).

---

[1] Apple asserted that Kennedy purchased 12 iPhones, but such an assertion fails to consider than the phones were purchased for herself and family members as opposed for litigation purposes.
[2] Kennedy received hundreds of pages hours before the deposition as well.

- "I agree with Apple that certification under Rule 23(b)(2) is not appropriate here." (English Decl. ¶ 4; ECF 225 at 20:25-26).

- "In any event, I agree with Apple that the "correct" Tapia declaration is too conclusory and speculative to materially impact the analysis in the Class Certification Order." (English Decl. ¶ 4; ECF 263 at 7:25-26). (Even though Tapia's declaration provides key evidence, Orrick ignores it.)

The Order Denying Motion for Class Certification strongly condemns Plaintiff's attorney, Renee Kennedy. (ECF 225) The Court commented that "[c]lass counsel's prior relationship with Adkins and Galindo and her involvement in their purchase of AC+ continue to *taint this case*". (ECF 225 23:13-14) (emphasis added) The Court stated that [a]n additional reason for denying English's motion has to do with *the way in which this lawsuit originated and has been litigated.*" (Id. at 23:3-4) (emphasis added). The Court suggested that the case is not Plaintiff's, but rather her attorney's and then harshly judged her attorney on that basis. The Court stated specifically, "[m]oreover, *this case has always been and continues to be class counsel's; she is its source and its driver, and neither the dubious manner in which this litigation commenced nor the manifestly incompetent manner in which it has been conducted* are cured at this juncture by yet another new co-counsel. English has not established adequacy of counsel under Rule 23(a)(4)." (English Decl. ¶ 5; ECF 225 at 25:13-17) (emphasis added) Plaintiff is not alone in believing that certain of the Court's comments have been improper. On March 22, 2016, the Court acknowledged that two pages of its prior written order regarding the inadequacy of Plaintiff's attorney "was unnecessary" and the Court went on to withdraw it. (ECF 263 at 12:17). The Court's characterizations concerning counsel in ECF 225 were embarrassing and disparaging attacks. Despite the Court's acknowledgement that they were unnecessary and he admits he went too far, it is helpful in revealing his true bias, prejudice and seeming outrage.[3] Just as Judge Orrick went too far in that Order, he has gone too far throughout the entire course of this case and litigation, and needs to remove himself. He has clearly demonstrated in his conduct, words both written and oral, and rulings that he is unable to perform his duties and his oath of office with respect to this case, the plaintiff and counsel. This conduct more than qualifies for recusal under either 28 U.S.C. § 144 and/or 28 U.S.C. § 455(a) and/or (b)(1).

---

[3] Although two pages of the Court's tirade against Kennedy were withdrawn in ECF 263, the Court has yet to seal them.

(English Decl. ¶ 6). Further, there is minimally an appearance that there may have been a violation by the Court's Magistrate Judge with respect to Rule 408 of the Federal Rules of Evidence and/or the Northern District of California's Local Rule 7-4 and/or other laws, rules, codes and statutes, which in turn has tainted the Court. Further inquiry is necessitated to determine whether and to what extent the Magistrate Judge improperly involved the Court in communications intended to be sequestered to the Magistrate Judge's purview. Specifically, Plaintiff is concerned that the Court was given confidential *ex parte* communication and information with respect to a settlement conference in this case. Needless to say, there is minimally the appearance of bias, prejudice, and taint, even without the current looming possibility that there has been a violation of law, rule, and/or statute. Recusal by Judge Orrick is warranted, necessary, and safest for all.[4]  (English Decl. ¶ 6).

The Court disparaged Kennedy at length, stating "Class counsel's *total lack of experience* with class action litigation, and her *pervasive failure* to comply with *basic* federal and local rules and with my standing orders throughout the course of this litigation, further undermine English's request for class certification.  (ECF 225 at 24).   I agree with Apple that class counsel's '*pattern of improper litigation conduct throughout* the life of this case has caused *unending and unnecessary distractions and delays* in this litigation,' Opp. at 34, *prejudicing* the putative class and *unduly burdening* Apple, its attorneys, and the Court.  As with class counsel's *involvement* in the inception of this case, her *inexperience and poor performance* to date are not adequately addressed by the recent appearance of KCR as co-counsel." (English Decl. ¶ 7; ECF 225 at 24:20 – 25:5) (emphasis added).

## V.   JUDGE ORRICK HAS DEMONSTRATED ACTUAL BIAS AND PREJUDICE AGAINST PLAINTIFF BECAUSE SHE USED SUBCONTRACTOR ATTORNEYS

On March 22, 2016, the Court stated, "[i]n ruling on adequacy of counsel, I found that the introduction of Kershaw Cutter & Ratinoff LLP ("KCR") as co-counsel shortly after English moved for class certification alleviated my adequacy concerns to some degree, but not enough to preclude those concerns from weighing against class certification, in particular in light of the three sets of co-counsel that had previously made appearances in the case only to withdraw within, at most, two-and-a-half months."   The Court ignores the fact that two of the three referenced "sets of counsel" (Steven

---

[4] Newhopechurch.tv 01/01/17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Weinmann and Mark Meuser) were actually subcontractor attorneys.  (ECF 233-4; ECF 163 at 2:1-4; ECF 146 at 2:2-6; ECF 233-5; ECF 233-3; 257-15; ECF 233-15; ECF 257-36).  Apple forced Renee Kennedy's subcontractor attorneys to make formal appearances in order to attend depositions, even if they sat silently next to her. (ECF 233-4).  Kennedy had begged defense counsel not to force her subcontractors to formally appear. Then Orrick held it against Kennedy after all.  At the certification hearing, Orrick said that there were five or six other prior lawyers.[5]  (Kennedy Decl., Ex. A at 21:1-2). The irony of the Court's "issue" with using sub-contractor attorneys and counting their use against Kennedy in determining her adequacy is that it is really no different than the Court's use of rotational law clerks to assist with the Court's legal work and briefing, or subcontractors who do work around his house. The faces of Judge Orrick's clerks keep changing, so is that somehow a negative reflection on him? The Court is also failing to consider the **strong possibility** of a pre-existing co-counsel agreement that contemplated KCR's departure in the absence of certification.  (English Decl. ¶ 9). Orrick states in the Order Denying Reconsideration (ECF 263), "For all the reasons stated in the Class Certification Order, and in particular in light of the recent withdrawal of KCR, the addition of yet another co-counsel (who has not yet made an appearance and states that he is only willing to serve as co-counsel if the class is certified and other preconditions are met, see id. ¶ 4 does not make class certification appropriate in this case."  (ECF 263 at 12:5-8). The Court acknowledged that "KCR certainly has sufficient experience and ability to serve as class counsel, and Mr. Cutter represented at the class certification hearing that his firm would be in the case for the duration."  (ECF 225 at 25:5-7) Thus, in refusing to certify the class, Judge Orrick brought about the condition that caused KCR to leave the case.  This resulted in KCR's departure from the case. The Court's argument is circular because, had the Court certified the case at that time, KCR would not have left the case. Likewise, the Court disregarded class action attorney Saltzman's offer to litigate the case as well as a viable option.  (ECF 263 fn. 12) However, in Footnote 12, the Court persisted in focusing on *adequacy of counsel* as a reason to deny class certification:

[5] The only co-counsel agreements Kennedy ever signed that were not subcontractor agreements were Thomas Brandi's firm and KCR (a/k/a "Cutter Law"). Brandi's firm literally did nothing in the two week period it was actually "co-counsel" and left two weeks before the certification brief deadline. Kennedy doesn't blame them as the learning curve of a complex case such as this with a certification brief deadline of just two weeks away would be a factor for any firm (ECF 233-15). KCR would have remained on the case if it had been certified originally so their departure is a condition created by the Court. KCR *never* represented English on her individual case.

"English asks that class counsel be allowed to continue litigating this case along with Saltzman as co-counsel, but she also states that "[i]f the only way for the case to be certified is for [class counsel] to withdraw, she will." Reply at 12 fn. 12. It is unclear how this offer could provide grounds for reconsideration. *Class counsel was inadequate* to represent the putative class at the time of the Class Certification Order. *She remains so now*. The offer for her to withdraw from the case does not change this, and English cites no authority for the proposition that adequacy of counsel may be established by merit of a hitherto absent attorney who promises to make an appearance once the class is certified. If there is another attorney who wishes to litigate class claims similar to those brought in this case, he or she can do so in a different lawsuit. In any event, *even assuming that class counsel's withdrawal from the case would cure the adequacy of counsel issues*, reconsideration would remain unwarranted given the other grounds for denying certification." (English Decl. ¶ 10; ECF 263, fn. 12). The reason(s) that bias and prejudice exists is because Plaintiff's attorney had located and associated competent class counsel, regardless of the Court's opinion of counsel. Focusing on the alleged inadequacy of counsel deprived Plaintiff of fully litigating her claim because KCR was available to assist as needed as class counsel and Saltzman was willing to take over the case as well, even without Kennedy, had the Court wanted even though that would have been grossly unfair to Plaintiff and Kennedy. (ECF 225). Ms. English deserves her day in Court and Judge Orrick has made it clear that neither she, her case, nor her attorney are welcome in his Court and justice will be denied at all costs even in her individual case, which is very unfair.[6] Orrick is denying Ms. English of her Constitutional Fifth and Fourteenth Amendment constitutional rights not to be deprived of due process of law and equal protection because of his personal biases and prejudices. (English Decl. ¶ 11). Even though the case law that the Court cited supporting its position involved situations where questionable class plaintiffs were still participants in the litigation, such was not the situation in this case because Adkins and Galindo were no longer Plaintiffs in the case at the time of the Court's decision. (ECF 225 at 7:8-9). The Court accused Plaintiff's attorney of creating the claims that rightfully belong to Plaintiff in order to undermine and diminish their legitimacy. Further, the Court was improperly imposing California legal standards to the audio recordings of Defendant's employees when those recordings were created in a state that does not

---

[6] Ms. English should be allowed to select the attorney she wants to represent her and not suffer prejudiced by the Court for it. (ECF 263 12:23 of fn 12)

require "dual-party consent" for recordings and those recordings were made prior to the commencement of the litigation in any event.  (ECF 233-19; 233-20; 233-23; 233-26). The Court did this in order to ignore the substance of those recordings and the misrepresentations made by Defendants' employees and, instead, redirects the outrage at Kennedy.  (English Decl. ¶ 12).

## VI.   JUDGE ORRICK DEMONSTRATED BIAS IN PRECLUDING THE PLAINTIFF FROM OBTAINING RELEVANT AND NECESSARY EVIDENCE

### A.   THE COURT PRECLUDED PLAINTIFF FROM OBTAINING VITAL EVIDENCE CONCERNING HER CELL PHONE

Plaintiff was unable to acquire the evidence that she needed to establish the key evidentiary fact at issue in this case, which is whether the phone actually provided to her was refurbished or, if as Defendant suddenly maintains after two years of litigation, was new.  This information is easily established according to experts by examining the parts of the iPhone to ascertain the presence of refurbished sticker labels, sticker residue, fingerprints, and scratches.  (English Decl. ¶ 13; ECF 304-21; ECF 304-16).  Plaintiff couldn't get the evidence she needed because Judge Orrick wouldn't let the Plaintiff perform testing on her own phone and would not even provide guidance for creating a testing protocol, despite her numerous requests.  (ECF 295; ECF 296-3 at 2, bottom; ECF 298; ECF 299; 299-3; ECF 300 at 1:24-25; 10/25/16 Conf. Tr.; ECF 307.  Even the Defendants' counsel responded when Kennedy requested a meet and confer on testing Ms. English's iPhone that she did "not see any purpose to be served by a meet and confer until the parties receive **additional guidance** from the Court."  (ECF 299-3 at 2). (emphasis added) The Court should have given guidance on testing protocol as Kennedy had requested numerous times. (ECF 295); (ECF 296-3 at 2, bottom); (ECF 298); (ECF 299; 299-3); (ECF 300 at 1:24-25); (ECF 307); 10/25/16 Meet and Confer Conference Transcript.  Furthermore, expert declarations from Thang Huynh and Bathena Dixon do provide a protocol.  (ECF 304-21 at 4); (ECF 304-16 at 3-4).    Plaintiff preserved this issue in several ways including a declaration filed pursuant to Fed. R. Civ. Proc. Rule 56(d) in conjunction with the Motion for Summary Judgment. (English Decl. ¶ 13; ECF 304-15).  During the entire duration of the case, Plaintiff only had three weeks to do any type of testing on the phone and this three-week period coincided with the time that Plaintiff was writing her Reply to Apple's Opposition to the Motion for Class Certification.  (ECF 335 at 10:25-27).  The Court's Order on the MSJ falsely claims that Plaintiff had one year to conduct discovery on

Lanigan's testimony, which is untrue. The Court also mischaracterizes Mr. Cutter's statements at the Certification Hearing misinterpreting his comment concerning opposing counsel as a waiver of the Plaintiff's right of discovery.  (Id. at 11:4-5).  There was no waiver.  For discovery, Plaintiff was instructed to serve discovery and, if there was a dispute, meet and confer with Defendants, submit a joint letter to the court if unresolved, and the Court would handle it from there.  (7/19/16 CMC Hearing Tr. 11:12-15).  Plaintiff did just that submitting two joint letters (ECF 289; 297; 298), but the court did absolutely nothing and then mischaracterizes the situation as a year-long delay in discovery.[7]  Despite the numerous declarations that were submitted by the Plaintiff showing that the phone could be assessed as new or comprised of used parts (ECF 335 at 16:11-12), Judge Orrick nonetheless disregarded all of those declarations.  (ECF 335 at 18:5-7; English Decl. ¶ 14).

### 1.   Requests Concerning Testing Protocols

However, "Defendants [did] not agree to Plaintiff opening the iPhone." (English Decl. ¶ 15; ECF 296-3 at 2, bottom).   Plaintiff contacted Mr. Thang Huynh, an expert witness with specialized knowledge and eight years of experience in the repair of iPhones.  (ECF 304-21 at 4).  Mr. Huynh testified he is capable of performing a non-destructive physical inspection of the interior components of the phone to determine if the parts and components are new or used. (Id; English Decl. ¶ 16.).

Third, and similarly, Plaintiff submitted a declaration by Bathena Dixon establishing her unique and specialized training by Defendant Apple where she trains others "to assemble, task, troubleshoot, repair, quality assurance, and visually inspect [Apple devices].  .   .   and specifically knows how to "take apart iPhones and put them back together as well as train others how to do it because, for example, [they] would have to take some parts out in order to access other parts for repair or replacement.  There were times that [she] had to gut an entire phone and then put it back together.  This would happen when [they] would have multiple testing failures."   (ECF 304-16 at 3, ¶¶ 3-4). Contrary to Apple's unsubstantiated assertions, iPhones can be taken apart for inspection and testing and then put back together without complication or damage to phones such as that owned by the Plaintiff.  (Id. at ¶¶ 6-10).  Thus, if Plaintiff were afforded the opportunity, non-destructive inspection of the phone's components

---

[7] In actuality the phone was found by former counsel on October 15, 2016 and Kennedy immediately sought testing of the phone with a motion filed two days later on October 17, 2016.  (ECF 295 and additional requests: ECF 296; 298; 299; 303; 304).

would have yielded relevant and germane evidence that was critical to Plaintiff's claims, Defendants'

defenses, and – consequently – the Summary Judgment Motion.  (English Decl. ¶ 17).

### 2.  Requests for Physical Examination and Inspection of the Phone

Because the Defendants were uncooperative concerning the inspection of the phone, on October 22,

2016, Plaintiff filed what was essentially a notice of intention to file a motion.  (ECF 298).  On that

same date, Plaintiff filed motion for leave to perform testing and for guidance on testing protocol.  (ECF

299, ECF 299-1).   The Court was informed of the significance of the requested testing and the

identification of experts Huynh and Dixon who were capable of performing the non-destructive testing

for which leave of court was being sought.  (ECF 298). Thereafter, the Court referenced the parties were

in the process of meeting and conferring yet provided no guidance as to testing despite repeated requests

by Plaintiff for testing and guidance. (ECF 300 at 1:24-25, ECF 290, ECF 293, ECF 295, ECF 296, ECF

298, ECF 299, ECF 303, ECF 304, ECF 310) (English Decl. ¶ 18). Apple's own attorney recognized the

need for Court guidance prior to the meet and confer (ECF 299-3 at 2); however, the Court remained

silent despite Plaintiff's numerous pleas for guidance on testing. Apple concocted a story that opening

the phone would result in its destruction; an argument that the Defendant would later advance in

conjunction with the Motion for Summary Judgment.  (Kennedy Decl. Ex. B, MSJ Hearing Tr. 39:25-

40:9; English Decl. ¶ 19). Apple should not be heard to assert that the opening of the phone and the

removal of the parts constitutes "destruction" of the phone as they contend when, contrary to that

assertion, they routinely open phones, remove and replace the parts and nonetheless call them "new" or

"the equivalent to new." (English Decl. ¶ 20). Ultimately, the Motion to perform non-destructive

inspection and testing on Plaintiff's phone was decided by the Court and, on October 31, 2016, the

Court denied Plaintiff's motion to conduct this discovery while imposing upon Plaintiff the most

exacting issues concerning how testing would now establish that the phone's components were new or

refurbished when the phone was purchased in 2013.  (ECF 307).  Notwithstanding, there was testimony

explaining the presence or absence of labeling stickers and fingerprints attributable to manual parts

replacement (as compared to machined assembly) that was just one method of establishing the relevant

evidentiary facts. Likewise, it is possible that software diagnostics could reveal information about the

ages or run history of the components since, like desktop computers, modern day smart phones are

essentially computers with components and software programs.  Just as this information is readily

ascertainable from computers, there is no reason that this statistical information would not be available from the Plaintiff's phone. Indeed, the testimony of Dixon firmly establishes both the method and the conclusions to be drawn from it. (ECF 304-16, although Judge Orrick would not allow the filing of Dixon's corrected declaration even though it was referenced in Kennedy's Declaration to Summary Judgment Opposition and an explanation of the issue with DocuSign with proof was explained in ECF 310). (ECF 304-4 at 4 ¶ 4, ECF 310 (English Decl. ¶ 21).   In summary, Plaintiff's attorney was precluded from presenting relevant evidence that was related to the issues under review in conjunction with the Motion for Summary Judgment. Likewise, most of the information sealed by the Court to date at the request of the Defendant did not meet the standards to be sealed. In restricting Plaintiff's ability to discover and put forward material evidence, the Court demonstrated bias and prejudice against Plaintiff. The Court would not let Kennedy even utter in open court the very words that he wrongfully sealed that proved Plaintiff's case and that she had indeed lost an incident even though he unsealed the words in his Summary Judgment Order Plaintiff contends in an effort to muddy the record for the appeal. (ECF 232-12, ECF 329-4, ECF 329-6; English Decl. ¶ 22).

## B.   THE COURT DEMONSTRATED BIAS IN OTHER DISCOVERY RELATED MATTERS

### 1.   The Judge Demonstrated Bias in Authorizing Court Sanctioned Document Dumping

With respect to deadlines concerning discovery, the Court set firm deadlines for Plaintiff while allowing Apple to act "as expeditiously as is practical" (ECF 120 at 1:22-23), to "make every effort" (ECF 155), or "to use its best efforts" (ECF 156 at 3:23-26) after merely "encourag[ing]" Apple to produce documents.  (ECF 149 at 2:16-18).  The Court refused to extend the July 1, 2015 due date for the certification motion (ECF 148; ECF 149 at 1:20-22, 2:6-10) even though discovery extended through June.  (ECF 264 at 2:22-24).  For example, Defendant Apple did not even produce the bulk of the documents produced in this litigation until right before the deposition of Ms. Healy.  That document dump was an astounding 25,000+ pages for attorney Kennedy to review making it impossible for her to review this production and make any effective use of the production prior to the deposition.  (ECF 240-1 at 9-10; ECF 238 at 4:3-9; ECF 240-1).  This was followed by yet a few hundred additional pages in the middle of the night on the eve of the deposition itself. This is the type of bad-faith litigation conduct undertaken by the Defendants that the Court has essentially sanctioned and, additionally, tacitly

approved in precluding Plaintiff from making reference to this conduct in the event the action proceeds to trial.  Of course, this late date document production, coupled with depositions occurring in late June, provided no benefit to the certification brief that was coming due a mere weeks later. The court made Plaintiff's burden unreasonably difficult to meet by imposing stringent deadlines upon Plaintiff while failing to impose stringent deadlines upon Defendant Apple that caused repeated document dumps, demonstrating bias against Plaintiff.  (English Decl. ¶ 23).

2.     **The Judge Demonstrated Bias in Denying Plaintiff Merit-Based Discovery due to Alleged Waiver by Class Counsel Concerning Certification Discovery**

On December 14, 2016, the Court effectively denied Plaintiff the opportunity to conduct merit based discovery because of an alleged prior waiver by class counsel concerning a waiver related to class discovery.  (Kennedy Decl. Ex. B, MSJ Hearing Tr. 35:9-24; ECF 263 fn. 11). However, class counsel did not waive any discovery rights and, assuming there was a waiver concerning class discovery, such a waiver could not operate as a bar to discovery on the merits of the substantive litigation issues.  More specifically, Plaintiff was never able and was not permitted to perform an inspection on her phone to ascertain whether it was new or contained used parts to enable her to prove the misrepresentations at issue in this case.  (English Decl. ¶ 24; ECF 304-12, 304-16, 310-3, 310-6, leave was not granted by Orrick to file Dixon's corrected expert declaration or the declaration by fingerprint expert, Brian Dalrymple).

Although the Court stated that prior class counsel had withdrawn the request to conduct discovery on the new or used status of the phone (ECF 263 at 11 fn. 11), such cannot be the case.  First, Plaintiff never had the opportunity to test it because it was lost by former counsel and remained lost after he was no longer her attorney thereby negating any assertion that the phone had always been in the possession of the Plaintiff and her attorneys. Second, former counsel could not waive such a waiver because any purported waiver was self-serving since he was the one that had lost the phone.  Third, even if such discovery could arguably be waived, such only extended to the class action case and not to the individual one as representation was limited to the class and no agreement reached on KCR (or "Cutter Law") representing Plaintiff on any of her individual claims.  Fourth, any withdrawal of the inspection request was not authorized by the Plaintiff thereby making it invalid.  (Kennedy Decl. Ex. B, MSJ Hearing Tr. 35:9-24).  In that regard, the Court demonstrated bias and prejudice in denying the right to

conduct the discovery she needs to prove her case, especially when it costs little, is quick and easy to do, and the potential gain outweighs any supposed burden on defendants.  (English Decl. ¶ 25).

### 3.   The Judge Demonstrated Bias in *Sua Sponte* Limiting the Scope of Plaintiff's Action

On April 10, 2015, the Court *sua sponte* limited the scope of the case and excluded all devices except iPhones: "[t]he Court directs that discovery should be limited to iPhones and should not extend to iPads, iPods, or other devices." (ECF 155). However, the Complaint identified the claim and warranty issues as affecting Apple Iphones, Ipods, Ipads, and other devices.  The Court's *sua sponte* limitation of the scope of Plaintiff's case demonstrates bias.  (English Decl. ¶ 26).

## VII.   JUDGE ORRICK DEMONSTRATED BIAS THROUGH COURT SANCTIONED ABUSE OF THE LITIGATION PROCESS

### A.   THE COURT ACTED IN DERROGATION OF PLAINTIFF'S RIGHTS

**1.   The Judge Demonstrated Bias at the Hearing on the Summary Judgment Motion**

On December 14, 2016 at the hearing on the motion for summary judgment that was on the record, the Court precluded Plaintiff from adequately representing her client by cutting her short on arguments, not allowing her to put objections on the record, and sealing evidence relevant to the motion concerning the trigger notes. The sealing of these notes mean that material arguments could not be freely made.  (English Decl. ¶ 27; Kennedy Decl. Ex. B, MSJ Tr. 10:21-11:2, 13:8-17:10; ECF 232-12).

**2.   The Judge Demonstrated Bias in Denying Addition of New Plaintiffs in the Suit**

In Court filings dated January 5, 2016 and March 22, 2016, the Court denied requests for adding new additional Plaintiffs to the lawsuit based upon inconvenience to Defendant Apple.  (ECF 225).  For example, the Court stated, "the prejudice to Apple in essentially starting over with a new named Plaintiff precludes English from adding another one now."  (ECF 263 at 11 fn. 11).  The Court's disparate treatment of Plaintiff and of Defendants is manifest in that the Court did not consider the prejudice to Plaintiff in relation to pursuing the merits of her claims and in establishing a class for purposes of class certification. (English Decl. ¶ 28).

**3.   The Judge Demonstrated Bias in Complaining about the Sufficiency of Papers while Denying Requests for Time and Additional Pages**

On March 22, 2016, the Court criticized Plaintiff and her attorney concerning the exhibits submitted in conjunction with the Motion for Reconsideration (ECF 263 at 4:5-6), but Judge Orrick had

denied a request to submit motion papers in excess of the page limits.  (ECF 238).  Therefore, the Court imputed a fault in the submission of the papers that Plaintiff's attorney sought to address through the request to submit papers in excess of the page limits. (English Decl. ¶ 29).

**4.    The Judge Demonstrated Bias in Denying Amendment of Pleadings**

In addition, the Court denied any further amendments to the pleadings on the basis that the Complaint had been amended four times and further amendments were beyond the deadline previously set by the court.  (ECF 138; ECF 263 fn. 11 at line 11). The amendment of pleadings has never been determined based upon the number of amendments, but rather on the ability to cure the pleading defect and, in the context of complex business litigation, amendments occur with much greater frequency than cases that are not complex business litigation cases.  For the Court to deny such amendments constitutes a showing of bias and prejudice against Plaintiff.  (English Decl. ¶ 30).

**5.    The Judge Demonstrated Bias in Overt Hostility towards Plaintiff's Claims in Litigation**

On July 16, 2015, the Court granted Defendants' request that Plaintiff be prohibited from making any further supplemental filings in support of Plaintiff's motion for class certification without prior leave of the Court. The Court also *sua sponte* applied this prohibition to Plaintiff's reply brief. (ECF 194 at 2:7-11, ECF 234). This demonstrates the continued pattern of the Court's unwillingness to accept evidence in this case concerning both the claims and matters related to certification and partiality to Apple and following its requests.  (English Decl. ¶ 31).

**6.    The Judge Demonstrated Bias in Exceeding Jurisdiction by Unilaterally Wiping Out the Litigation Claims**

On April 4, 2010, the Court's Civil Minutes after hearing that defense counsel elected not to argue initially after a tentative ruling before the telephone conference.  Then the Court "direct[ed] that discovery should be limited to iPhones and should not extend to iPads, iPods, or other devices."  The Court issued a ruling wiping out the bulk of the litigation claims *sua sponte* without notice, without any additional briefing a to devices in the litigation and without notice or hearing as those matters were not even verbally opposed or argued by Defendant Apple at the hearing.  Such an act displays bias against Plaintiff.  (English Decl. ¶ 32).

**7.    The Judge Demonstrated Bias in Disparate and Unequal Treatment of Plaintiff's Counsel**

The Court denied a request for immediate telephone conference and rejected Statement to the Court Regarding Defendants' Proposed Violation of ESI Guidelines and Request for Telephone

- 15 -

Conference.  The Court used strong language and threatened sanctions: "Plaintiffs' assertion that 'such a meet and confer is highly unlikely to occur' between now and November 20, 2014, one week from today, is both incredible and insufficient to excuse plaintiffs' failure to make any attempt to meet and confer with defendants. This is the second time in less than one month that I have issued an order admonishing plaintiffs' counsel for attempting to raise a discovery issue in violation of the Court's Standing Order.  (ECF 101 at 4-5).  I find it troubling, to say the least, that the previous order appears to have had no effect on plaintiffs' conduct except to compel her to acknowledge that she is failing to comply with the Standing Order as she fails to comply with it.  (English Decl. ¶ 33). Plaintiff's attorney made countless attempts to meet and confer during the course of this litigation.  For example, on numerous occasions Defendants stonewalled requests to meet and confer concerning their document productions for discovery (ECF 290-9, pgs. 2-5, 7-9, 12-13, 18-20) and offered boilerplate objections in response to Plaintiff's Document Production Requests (ECF 297-1; English Decl. ¶ 34).

Further, on April 10, 2015, the Court showed lenience to Apple regarding the scheduling of depositions, accepting that Apple would "use its best efforts" to meet discovery obligations, all the while  the Court limited discovery to iPhones and denied discovery as to iPods, iPads and other devices.  (ECF 155).  Threatening sanction against Plaintiff while nothing happens to Defendant Apple for failing to meet and confer establishes the biased treatment of Plaintiff and her attorney by the Court.  (English Decl. ¶ 35).

**8.      The Judge Demonstrated Bias in Denying Due Process of Law**

In conjunction with filing the Motion for Reconsideration, Plaintiff was permitted to submit papers, but was denied the opportunity to argue at the hearing.  The reason(s) that bias and prejudice exist is because the court created the situation that denied Plaintiff due process rights of the opportunity to be heard.  (English Decl. ¶ 36).  In summary, the record of facts establishing actual bias and prejudice in this case is well documented and prolific.  Because bias against an attorney is enough to require disqualification under the applicable statutes when it is so extreme that it engenders bias against a party and the party's claim, *see LoCascio v. United States*, 73 F.3d 493, 496-497 (2d Cir. 2007)*; Dembowski v. New Jersey Transit Rail Operations*, 221 F. Supp. 2d 504, 511 (D.C. N.J. 2002), Judge Orrick must be recused and/or disqualified from further participation in these proceedings. (English Decl. ¶ 37).

**B.      THE COURT DEMONSTRATED BIAS BY PROVIDING FAVORTISM TO DEFENDANT APPLE**

**1.      The Judge Demonstrated Bias in Preferential Treatment to Apple with Extensions of Time**

The Court repeatedly granted Defendants' requests for extension of time in conjunction with various filings made by them while denying all but two of Plaintiff's requests for extensions of time.[8] E.g.

**11/18/2013:** Defendant's Motion for Extension of Time to file Answer was granted. (ECF 18); **4/29/2014:** Defendants' Motion for Extension of Time to Answer was granted by this Court. (ECF 67); **02/09/2015:** Defendants' Motion for Extension of Time to File Answer was granted by this Court. (ECF 134); **07/06/2015:** Defendants' Motion for Extension of Time to File Declaration in Support of Filing under Seal was granted by this Court. (ECF 185); **07/16/2015:** Defendant's Motion for Extension of Time to File Opposition to Motion to Certify Class was granted by this Court. (ECF 194).  While Plaintiff was also given an extension of time at the request of Defendant Apple's attorney, the Court gave the Plaintiff one week less time than the time suggested by Defendant Apple; **10/02/2015:** Defendants' Motion for Extension of Time to File Declaration in Support of Sealing was granted by this Court. (ECF 216); **10/23/16:** Order granting only 4 day extension of Opposition to Summary Judgment. (ECF 300); **11/4/16:**  Order granting Apple's Motion to Extend Time for Defendants to File Declaration ISO Sealing.  (ECF 312); **11/21/16:** Orrick through the Magistrate (ECF 329-4, 329-6) denied Plaintiff's Motion to Continue the Settlement Conference.  (ECF 318).

The reason(s) that bias and prejudice exists is because the Court has favored Defendant Apple giving them unfair advantage as compared to the Plaintiff.  (English Decl. ¶ 38).

**2.      The Judge Demonstrated Bias in Pre-Trial Scheduling of Discovery**

On April 10, 2015, the Court issued Further Rulings Regarding Discovery Dispute. (ECF 156).  In its "further rulings," Court showed lenience to Apple regarding the scheduling of depositions: "Apple has agreed to use its *best efforts* to produce all documents and to respond to the interrogatories propounded recently by plaintiffs by **April 24, 2015**. It is scheduling depositions of its witnesses during the week of **May 4, 2015**, and *will tie down* the date for the deposition of the currently vacationing witness *as soon as practicable*" (ECF 156 at 3:23-26) (emphasis added). However, in the same "further rulings," the Court dealt with Plaintiff's claim by limiting discovery to iPhones and denying discovery as to iPods and iPads.  (ECF 155; English Decl. ¶ 39). The complaint specifically alleged that Defendants' actions included Apple's iPhones, iPods, and iPads thereby making those electronic devices relevant to the matters in the litigation and for which discovery should have been allowed.  Even when Plaintiff complied with the Court's required discovery procedures of meeting and conferring, and preparation of a joint letter, the Court still denied discovery.  (Kennedy Decl. Ex. C, July 19, 2016 CMC Hearing Tr. 2:25 - 3:21).  From the very onset of this case, Judge Orrick's primary concern was and continues to be

---

[8] Both were insufficient lengths of time as only 4 days for one extension, and 1 week for the other, which were nothing compared to the extensions he was giving Apple even when their delays created the need for extensions.

the burdens on Defendant Apple with respect to any discovery requests that the Plaintiff might make. (English Decl. ¶ 40; ECF 104 at 8:21-22).

**3.      The Judge Demonstrated Bias in Excluding Apple's Bad Faith Discovery Conduct**

On July 19, 2016, during a hearing on a Joint Status Report (ECF 282), the Court stated that it would not allow the Plaintiff to disclose to the fact finder at trial that Apple delayed for two years before it disclosed that Plaintiff's iPhones were allegedly new rather than used. (ECF 282 11:8-12:12).  The Court considered such evidence to be litigation conduct that did not go to the merits of the case. However, this information is highly relevant to the merits of the case based upon the two-year delay that not only worked a prejudice to Plaintiff concerning the claims, but also unnecessarily increased litigation costs and was relevant to Apple's credibility and the issue of damages.  (English Decl. ¶ 41).

**4.      The Judge Demonstrated Bias in Issuing Rulings Based upon Convenience of Apple**

At various times, the Court referenced its decision as being based upon the convenience of Apple. (English Decl. ¶ 41; ECF 225, ECF 263 at 11, fn. 11; ECF 104, at 8:21-22) ("I am very concerned about burden issues when it comes to discovery for Defendants").  Convenience to Apple is not a superior consideration to the matters Plaintiff needed to establish in the litigation of her asserted claims.  The Court's prioritization of Apple's comfort over the merits of Plaintiff's case exhibits bias and prejudice against Plaintiff.  (English Decl. ¶ 42).

**5.      The Judge Demonstrated Bias in Disparate Allotment of Time on the Motion for Reconsideration and Reply to Opposition of Certification**

On February 9, 2016, Judge Orrick set briefing deadlines on Plaintiff's motion for reconsideration that afforded her attorney five business days while at the same time affording Defendants three entire weeks. The Court set the deadline for Defendant's opposition brief for March 2, 2016 while the deadline for Plaintiff's reply brief was set for March 9, 2016.  (ECF 235).  At the same time, Plaintiff's attorney had filed a declaration showing that Defendants had agreed to give her until March 16, 2016.  (ECF 240; ECF 240-1).  The Court has shown a marked favoritism towards Defendant Apple with, in comparison, a bias against Plaintiff and her attorney.  (English Decl. ¶ 43). Defendants gave themselves a proposed deadline extension of September 9, 2015 to file their Opposition to the Motion for Certification. Similarly, Apple proposed to the Court an extension of Plaintiff's Reply deadline to October 7, 2016. However, while the Court granted Apple's request for an extension in full, Judge Orrick cut the extension deadline short that Apple proposed for Plaintiff by one week. (ECF 194; English Decl. ¶ 44).

6.    **The Judge Demonstrated Bias in Sealing Non-Confidential Information**

During the entire course of this litigation, consistent with the Court's favoritism of Defendant Apple, Judge Orrick routinely sealed documents in a blanket fashion and permitted portions of records to be sealed that were not properly the subject of a sealing order.   For example, despite the glaringly obvious nature that the fact of a cracked glass screen on Plaintiff English's cell phone is not a trade secret, the Court nonetheless sealed documents containing information unrelated to concerns of confidentiality and in the absence of any existing trade secret.  (ECF 232-12).  Apple argued that the document contained propriety information, but – in actuality – it contained nothing more than "incidents" of phone damage for which Plaintiff was entitled to coverage under Apple's AC+ program and, in that regard, was important to Plaintiff's claim in the litigation while proving that she lost an "incident."  (English Decl. ¶ 45).

VIII.   **JUDGE ORRICK DEMONSTRATED BIAS BY IGNORING PLAINTIFF'S EVIDENCE**

A.    **THE JUDGE WAS BIAS CONCERNING THE DECLARATIONS OF TAPIA AND DIXON**

The Court found any excuse to find fault with Tapia's declarations. Judge Orrick discounted Tapia's description of the loss of incidents claim in the Reconsideration Declaration and ultimately struck Tapia's Reply declaration. (ECF 232-12; ECF 256-5; ECF 263).  The Court also characterized Plaintiff counsel's explanation of the Tapia declaration as "dubious."  The Court disbelieved the legitimate explanation of mistake provided by counsel Kennedy and Kafin to the detriment and prejudice of Plaintiff.  (ECF 263; ECF 290-1 for Kennedy's explanation; ECF 233-6; English Decl. ¶ 46).  The Court also ignored the Dixon declaration discounting her status as an expert.  In the Order granting summary judgment for Apple, the Court stated, "I find the Dixon declaration minimally relevant and hardly probative, and give it little weight.  She is not an expert."  (ECF 335 at 16:22-24).

B.    **THE JUDGE DEMONSTRATED BIAS CONCERNING PLAINTIFF'S EXPERT WITNESS LAUREL PALLOCK**

On March 22, 2016, the Court discredited the expert declaration of Plaintiff's then-newly retained expert witness, Laurel Pallock.  (ECF 263 at 5:5-6).  The Court also failed to consider this evidence despite the Court having acknowledged that this expert witness had just been recently located only a week prior to the filing of the motion, and had just retired after 38 years as the lead investigator of the

Consumer Fraud Unit of the San Francisco District Attorney's office and wouldn't be an expert easily identifiable or attainable even with diligent search.  (English Decl. ¶ 47; ECF 263 at 5:11-12).

### C.   THE JUDGE DEMONSTRATED BIAS IN IGNORING RELEVANT EVIDENCE CONCERNING IPHONE MISREPRESENTATIONS

The 30(b)(6) witness testimony of Eileen Hughes-Grant (AppleCare), Rebecca John (Apple Online Store), and David Williams (Apple retail store), all of whom state that employees are trained and are supposed to use the exact verbiage in the terms and conditions i.e. "new or equivalent to new" when selling AC+, the replacement devices, or describing AC+.  Some of this evidence was given to the Court earlier in the litigation as well as part of the Motion for Reconsideration. (ECF 232-15; 233-31; 233-32, ECF 250). Apple employees such as Ned Pozderac, Austin Miller, Ben Bunn, Gabriel Tapia and others established that they and other Apple employees repeatedly used the word "new" in describing and/or selling AC+ and replacement devices provided to customers. (232-20, 233-37, 213-17, 214-19, 232-18, 304-15, 304-17). Salvador Toledo testified that he always pointed out the words "new or equivalent to new" on a computer when selling AC+ or a replacement device. (ECF 233-38).  There was Apple call logs submitted which showed this as well (ECF 213-2). Judge Orrick completely disregarded and actually struck all of the reply to reconsideration evidence. (ECF 285, ECF 263 at 6 fn. 6, 7 fn. 7). Even with a plethora of proof, he **fails to recognize that even if the word "new" is consistently used, that is still enough for a partial misrepresentation.** Ned Pozderac is English's salesperson, and he repeatedly admitted to using the word "new" when selling AC+ and replacement devices. (Kennedy Decl. Ex. D (Pozderac Depo); ECF 183-2, 213-17, 214-19, 232-18, 304-15) The evidence established a genuine dispute of a material misrepresentation that was expressly alleged as one of the bases for the claims involved in the litigation and this evidence resulted in prejudice directly relevant to denial of class certification.  Further, there is plenty of evidence to support that Ms. English, even on an individual basis, was told that she would get new phones under her plan.  (English Decl. ¶ 48).

### D.  JUDGE DEMONSTRATED BIAS IN IGNORING NETTLETON'S DECLARATION

In conjunction with opposing the Motion for Summary Judgment, Plaintiff and her attorney submitted a declaration by telecommunications expert Nettleton. (ECF 304-12).  The declaration supports the need for the additional discovery that Apple was unwilling to produce despite the renewed and updated discovery requests, meet and confer, and joint statement that the judge required in the July 19, 2016 CMC hearing if Plaintiff wanted additional discovery as to whether the phones were new or not.

(Kennedy Decl. Ex. C, July 19, 2016 CMC Hearing Tr. 2:25 - 3:21). Experts hold a unique role in providing information and clarity on unfamiliar and complex matters and expert Nettleton's testimony establishes the significance of various IMEI and other numbers associated with cellular telephones that can possibly assist in determining whether Plaintiff's telephone is actually new or used (or comprised of used parts). (ECF 304-12). The Court ignored this declaration. (English Decl. ¶ 49).

## IX. JUDGE ORRICK DEMONSTRATED BIAS THROUGH *EX PARTE* COMMUNICATIONS WITH MAGISTRATE JUDGE LAPORTE

There has been open disclosure by the Magistrate Judge of actions by the Court which demonstrate bias. On December 5, 2016, during the course of the Settlement Conference call conducted by Magistrate Judge Laporte, Judge Laporte informed attorney Kennedy that Judge Orrick directed her not to grant Plaintiff's request for a continuance of the settlement conference. Further, at the settlement conference on December 16, 2016, Magistrate Judge Laporte orchestrated communications directly with Plaintiff outside the presence of her attorney and even over her attorney's objections, blocking Kennedy's entrance into the room with her body and shutting the door literally in Kennedy's face when she was trying to ascertain whether the Magistrate was in *ex parte* communication with Ms. English, and upon Kennedy finding out that the Magistrate was in fact doing just that, the Magistrate shut the door in Kennedy's face. Further, prior to their separation, Kennedy had sought assurance from the Magistrate that no such private communication would take place between herself and Ms. English. Magistrate Laporte separated Ms. English and Kennedy under the pretense that Ms. English would only be reading without interruption in better lighting, not that she would be speaking with Ms. English in private and without her counsel. (ECF 330-4, ECF 330-6). The Magistrate's line of questioning and comments were inappropriate to coerce and bully Plaintiff into a settlement. After the settlement conference concluded, the Magistrate remained in the courtroom to speak with the defendants. (English Decl. ¶ 50).

Likewise, the Magistrate Judge indicated, through her own statements, that the Plaintiff had no chance of succeeding in the litigation and forecast the Judge's rulings. In essence, the Magistrate's own statements indicated that she already knew what the outcome and disposition of the proceedings would be. In that regard, it would seem that Magistrate Laporte and Judge Orrick necessary engaged in *ex parte* communications as there does not appear to be any means for her to know the outcome of the case if she had not been informed of how Judge Orrick would ultimately rule in favor of the Defendants in the case. (English Decl. ¶ 51; ECF 329-4; 329-6). The reason(s) that bias and prejudice exist is because

Judge Laporte had engaged in *ex parte* communications concerning the settlement conference and all communications related to settlement are confidential under Rule 408 of the Federal Rule of Evidence and ADR L.R. 7-4.   Based on the comments, questions, and conduct of Magistrate Laporte before, during and immediately after the settlement conference, it appears the Court is bias, prejudiced and tainted. Plaintiff believes that Judge Orrick's continued involvement in the case would be a conflict of interest, taints him, and, because Plaintiff and her attorney are fearful of reprisal and retaliation, Judge Orrick should nonetheless step aside.  (English Decl. ¶ 52).

## X. EVEN IF THE COURT DISAGREES THAT ACTUAL BIAS AND PREJUDICE IS ESTABLISHED, DISQUALIFICATON IS NONETHELESS REQUIRED BASED UPON AN APPEARANCE OF JUDGE ORRICK'S LACK OF IMPARTIALITY

The "disqualification statute," 28 U.S.C. § 455(a) requires that" [a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a) requires a judge's disqualification in any proceeding in which his impartiality "might reasonably be questioned." *See Liteky v. United States*, 510 U.S. 540, 548 (1994); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 (1988); *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991); *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). The benefit of the doubt is resolved in favor of recusal. *See United States v. Alabama*, 828 F.2d 1532, 1540 (11th Cir. 2007).   Recusal is mandatory even if the judge in question is unaware of the circumstances that created the appearance of impropriety. *See Liljeberg v. Health Services Acquisition Corp.*, 485 U.S. 8847 (1988). Here, even if the Court should find the evidentiary facts and asserted bias and prejudice by Judge Orrick wanting, the foregoing litany of examples of apparent bias establish the appearance of a lack of impartiality over which reasonable minds would question.  As reasonable minds could question Judge Orrick's lack of impartiality, recusal must be granted. (English  Decl. ¶ 53).

## XI. DUE PROCESS HAS BEEN OFFENDED AND WILL CONTINUE TO BE VIOLATED IF JUDGE ORRICK CONTINUES TO PRESIDE OVER THE CASE

The recusal statutes are based on the principle that a fair trial before an unbiased judge is a basic fundamental right to which all litigants are entitled to a right of jury trial under the Seventh Amendment and a right of Due Process under the Fifth and Fourteenth Amendments to the U.S. Constitution.  *See Chitacha v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir. 1982). The core requirements of due process are notice and a hearing before an impartial tribunal.  The Due Process Clause of the Fourteenth

Amendment of the U.S. Constitution requires an impartial judge acting with the appearance of impartiality.  Numerous federal court decisions have disqualified judges who have demonstrated a lack of impartiality in circumstances such as those present here. It has been decided "litigants are entitled to have their case decided by a judge who can approach the facts in a detached, objective fashion." *Alabama*, 828 F.2d at 1540 (per curiam).  It is clear that [a] trial judge cannot assume the mantle of an advocate." *In re Antar*, 71 F.3d 97, 101-02 (3d Cir. 1995); *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1191-92 (8th Cir. 1984); *United States v. Wilensky*, 757 F.2d 74 (4th Cir. 1983). When such is the case as here, Due Process considerations also mandate recusal. Plaintiff is being deprived of her right to a jury trial.  First, Judge Orrick wiped out a significant part of the litigation by removing all iPod, iPad, and other Apple devices from the litigation, except iPhones without notice, briefing and hearing.  (ECF 155).  Second, while it is apparent that Judge Orrick was cognizant of the fact that the litigation may be appropriate for class action certification, but his bias and prejudice concerning the Plaintiff and her counsel have compromised his objectivity.  To be sure, in the Order denying certification, Judge Orrick was blatant in his animosity towards Plaintiff's attorney.  "If there is ***another attorney*** who wishes to litigate class claims similar to those brought in this case, he or she can do so in a different suit."  (ECF 263 at 12:23-24) (emphasis added).  This bias and animosity towards the Plaintiff directly, and to Plaintiff through her attorney Renee Kennedy, both as to the right of Plaintiff to pursue individual claims and class-related claims, arises to a deprivation of, but not limited to, both Due Process and the right of a jury trial.  (English Decl. ¶ 54).

## XII.    THE MOTION IS TIMELY

Section 28 U.S.C. § 455 does not contain any time limit to bring a motion. Most courts have concluded such a motion must be brought within a reasonable time after grounds for the motion are known. *U.S. v. Brice*, 748 F.3d 1288, 1289 (D.C. Cir. 2014).  Applying the following timeliness rule and standard to sections 455 and 144, "[w]hile no per se rule exists regarding the time frame in which recusal motions should be filed after a case is assigned to a particular judge, if the timeliness requirement is to be equitably applied, recusal motions should be filed with reasonable promptness after the ground for such a motion is ascertained."  *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991).  Although ".   .   . a motion for recusal filed weeks after the conclusion of a trial is presumptively untimely absent a showing of good cause for its tardiness" *U.S. v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986), Plaintiff sets

forth good cause below. Though this recusal motion is being brought after the judgment in the case was received at 8:11 pm Central Time on January 11, 2017, it is nonetheless timely and good cause is established. First, Plaintiff already requested Judge Orrick to recuse himself on January 5, 2017. (ECF 329-4; 329-6). Good cause is established based the fact that the MSJ Hearing was not held until December 14, 2016 and the Settlement Conference was not held until December 16, 2016, and there were intervening holidays of Christmas and New Year's Day. Additionally, Plaintiff and her counsel were working on other case related matters aimed at discovering the nature and extent of communications between Magistrate Laporte and Judge Orrick. (ECF 329-4; 329-6). Further, alternatively, Judge Orrick's post-judgment conduct opened the door to this motion again. In sum, Plaintiff and her attorney, in addition to working on this instant motion, have been working on the aforementioned case matters that establish good cause in bringing the motion as quickly as was reasonably practical under the circumstances. (English Decl. ¶ 55; ECF 329-4; ECF 329-6).

## XIII. POST JUDGMENT BIAS AND PREJUDICE WARRANTS RECUSAL

Finally, the judge has engaged in improper behavior after the rendering of final judgment. In the Order granting summary judgment (ECF 334), the Judge ordered that certain exhibits filed by Plaintiff (ECF 310-2 and 310-9) be unsealed. However, those two documents were actually placeholders and not the actual documents he intended on unsealing. Kennedy inquired of the Deputy Clerk about this apparent mistake, to which the clerk informed her after checking with Chambers that it was a mistake in the MSJ Order. (ECF 334 at 32; 343; 343-1; 343-2). The Deputy Clerk emailed instructions to Kennedy (ECF 343-2) to re-file the documents which the Court meant to unseal i.e. 310-3 and 310-10. Kennedy requested this directive be memorialized on the record given that the documents were under seal and she did not want to re-file them without the directive being on the record. However, according to the Deputy Clerk, Chambers refused to go on the record. When Kennedy insisted and stated that she would put the directive on the record if the Court did not, the Court issued Order (ECF 342) less than an hour later, placing full fault for it's error on Kennedy for filing placeholders. The Court's action in dealing with its simple oversight, and Plaintiff contends attempt to hide it and keep it off the record, is both indicative of its extreme bias against Plaintiff and Kennedy, and is improper behavior lacking transparency that warrants recusal. *See Trinity Christian Center of Santa Ana, Inc., v. Macleod*, 2014 WL 4112936 at \*31 (Cal.App. 2014) ("The purpose of postjudgment correction of clerical errors is to ensure that the court's

records 'speak the truth.'"); *See also Klapper-Barrett v. Nurell*, 742 So. 2d 851, 852–53 (Fla. Dist. Ct. App. 1999) (holding that an untimely motion for recusal post-judgment may be granted in light of extraordinary circumstances); *United States v. Int'l Bus. Machines Corp.*, 539 F. Supp. 473, 477–78 (S.D.N.Y. 1982) (indicating that an untimely motion for recusal may be filed if there is good cause for delay).

       The court gave Kennedy informal off the record instructions to publicly file documents that the court had previously designated as being placed under seal when the effect of this would make it appear as though Kennedy had deliberately filed documents in contravention to the court's orders.  (English Decl ¶ 56).  Rather than simply electronically unseal the records as the duty clerk has done in the past, the Court imposed additional burdens on the plaintiff by requesting additional filings that would have the effect of making the citation in the MSJ motion no longer correlate that further convolutes the record.  (English Decl. ¶ 57).  The Court's prejudice concerning the sealing of records is evident in its failure to permit Kennedy to reference the sealed materials at the hearing on the motion for summary judgment and then, in conjunction with the Order on the motion for summary judgment, unsealing the very records that Kennedy was not permitted to reference, which muddied the record yet again. (English Decl. ¶ 58).  The Court has overzealously sealed records in this case favoring Apple's interests above those of the Plaintiff and even the general public's right to know.  (English Decl. ¶ 59).

## XIV.   CONCLUSION

For these above-listed reasons, Plaintiff respectfully requests that (1) Judge Orrick recuse himself from these proceedings and (2) if Judge Orrick declines to recuse himself, then Plaintiff moves that this Motion be assigned to another U.S. District Court judge for immediate consideration.

<u>**REQUEST FOR JUDICIAL NOTICE**</u>

       Plaintiff, Fabrienne English, hereby requests this Court to take judicial notice of all ECF filed documents referenced in this Motion, the corresponding declarations submitted in support of the motion, and the hearing transcripts submitted in conjunction with this motion.

Dated:  February 8, 2017           Respectfully submitted,

                          */s/ Renee Kennedy*
                          Renee Kennedy
                          Lead Counsel

1

2

**<u>CERTIFICATE OF SERVICE</u>**

3

I HEREBY CERTIFY that on this the 8th day of February, 2018 a true and correct copy of the

4

foregoing has been sent by certified mail/return receipt requested via USPS and email to:

5

PENELOPE A. PREOVOLOS                    PURVI G. PATEL
MARGARET MAYO                            ppatel@mofo.com

6

ppreovolos@mofo.com                      Morrison & Foerster LLP

7

mmayo@mofo.com                           707 Wilshire Blvd.
Morrison & Foerster LLP                  Los Angeles, CA 90017-3543

8

425 Market St.
San Francisco, CA 94105-2482

9

10

___s/ Renee Kennedy_____

11

Renee Kennedy
Lead Counsel for Plaintiff English

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Motion for Recusal – Case No. 3:14-cv-01619-WHO